## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

WILLIAM P. BABBY, III,      )
                            )   **C.A. NO.**    0 6 – 5 5 2
    **Plaintiff,**         )
                            )   **JURY TRIAL DEMANDED**
       v.           )
                            )
**CITY OF WILMINGTON**     )
**DEPARTMENT OF POLICE,**   )
                            )
   **Defendants.**       )

### COMPLAINT

### PARTIES

1. Plaintiff, William P. Babby, III (hereinafter "Plaintiff"), has at all times relevant to this Complaint been a resident of New Castle County, State of Delaware, and currently resides at 1613 N. Jackson Street, Wilmington, Delaware 19806. Plaintiff is of Hispanic descent.

2. Defendant, City of Wilmington Department of Police (hereinafter "Defendant"), is a municipal corporation duly organized and existing under the laws of the State of Delaware, whose registered agent for service of process is the City of Wilmington, Louis L. Redding City/County Building, 800 French Street, 9th Floor, Wilmington, Delaware 19801.

3. Wilmington Police Department is a division of the City of Wilmington's Department of Public Safety, a city agency, and at all times relevant to this Complaint, the employer of Plaintiff.

### JURISDICTION

4.  Jurisdiction is founded on the existence of a question arising under federal statutes. This action for injunctive relief and damages is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 200 e *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, codified as 42 U.S.C. § 2000E-(5)(f)(1) and (g). An additional jurisdictional basis for Plaintiff's state law claim exists under the principles of pendant and supplemental jurisdiction and 28 U.S.C. §1367. The state law claim regarding the breach of the implied covenant of good faith and fair dealing is brought pursuant to the pendant jurisdiction of this Court.

## FACTUAL BACKGROUND

5.  Plaintiff was hired as a recruit officer on or about January 9, 1989. Plaintiff has been employed with Defendant, City of Wilmington Department of Police, for over seventeen (17) years.

6.  Plaintiff has consistently received standard to superior performance evaluations during his entire time employed with Defendant, Wilmington Police Department, most recently receiving a superior evaluation on or about September 14, 2004.

7.  In or around the year 2000, Plaintiff began working under the supervision of Lieutenant Bobby Cummings in the Human Resources Division after being placed on light duty while recovering from surgery.

8.  While working in the Human Resources Division, Plaintiff filled in for two (2) different positions that were left vacant by other injured officers: the Extra Duty Officer and the Training Officer. Plaintiff handled both of these positions with virtually no training, and was praised numerous times, sometimes on a daily basis, by

Captain Maggitti and Lieutenant Cummings, for doing an exceptional job fulfilling the duties of these positions. However, when Plaintiff submitted a written request for a permanent transfer to these positions, his request was denied.

9. On or about March 27, 2001, Plaintiff was approached by Cummings who had recently been promoted to Captain and was assigned to the newly-formed Special Operations Division as commander. Cummings asked Plaintiff to put in a transfer request to work in his division as a Crime Free Housing Officer.

10. Plaintiff complied with this request and submitted a one-line transfer request and was accepted into the division without listing any qualifications. Plaintiff was advised that the paperwork was "just a formality" to get him into the division.

11. Plaintiff was transferred into the Special Operations Division along with two (2) junior officers in or around April of 2001.

12. Shortly thereafter, Plaintiff, along with the two (2) junior officers; Officer Izquierdo, an Hispanic officer, and Officer Tshawn Counts, an African-American officer, attended an Equal Housing Conference at the University of Delaware. While at this conference, Sergeant William Wells, a direct supervisor of the three (3) officers, made various racially insensitive and derogatory comments about "Puerto Ricans" and "Mexicans" in the presence of Plaintiff and Officers Izquierdo and Counts.

13. Plaintiff, along with Officers Izquierdo and Counts, approached Captain Cummings about this incident in or about May of 2001 and informed Captain Cummings that Sergeant Wells had made offensive remarks toward Puerto Ricans and Mexicans at the Equal Housing Conference.

3

14.    Cummings attempted to dissuade Plaintiff and Officer Izquierdo from filing a formal complaint against Sergeant Wells and suggested they all meet to discuss an attempt to resolve the issue.

15.    The meeting took place later that month, but Plaintiff and Officer Izquierdo were dissatisfied with the outcome and they requested that charges be filed against Sergeant Wells and that he [Wells] be disciplined for his actions.

16.    Shortly thereafter, Officer Counts informed Plaintiff and Officer Izquierdo without any explanation that he no longer wanted to proceed with the complaint against Sergeant Wells.

17.    Plaintiff and Officer Izquierdo filed the complaint against Sergeant Wells which was assigned to Lieutenant Carolyn Henry, a friend of Wells, to investigate.

18.    The investigation took more than four (4) months to complete, and only after Plaintiff and Izquierdo complained to City Personnel about the delay was the investigation concluded.

19.    Plaintiff and Officer Izquierdo were advised that Sergeant Wells was disciplined for his comments.

20.    Sergeant Wells received only a written reprimand for his comments/actions.

21.    Sergeant Wells was subsequently transferred to a position in the Chief's office as the Department spokesperson, while Plaintiff and Officer Izquierdo were demoted and transferred to the Special Operations Division, F Platoon Squad, and assigned to street patrol duties.  Officer Counts, however, who opted not to file the complaint against Sergeant Wells, remained in his position in the Crime Free Housing Division.

22.    Plaintiff approached Captain Cummings and asked him why Officer Counts was chosen to remain in the Crime Free Housing Division while Plaintiff was assigned to street patrol duty, to which Captain Cummings responded, "Because I am the Captain and he [Counts] is my choice."

23.    In or around June of 2001, Plaintiff was officially assigned to F Platoon under the direction of Captain Marlyn Dietz and Lieutenant Mitchell Rock, both of whom are close friends of Sergeant Wells.

24.    Shortly thereafter, Plaintiff was given an assignment by Lieutenant Rock wherein he was to park his patrol car in the 1200 block of West 6th Street, Wilmington, Delaware, and remain there for eight (8) hours every day with the exception of one (1) break. Plaintiff was advised that the purpose of the assignment was that his presence there would hopefully thwart and/or discourage the sale of drugs in that area by local drug dealers. Plaintiff was also instructed not to enforce any laws or make arrests; that his presence there alone would be enough to curb drug sales in that area. Plaintiff was assigned to this duty for the entire summer of 2001.

25.    Upon his return from vacation in the summer of 2001, Plaintiff was once again assigned to the aforementioned task.

26.    In or around the first week of September of 2001, Plaintiff was called into Lieutenant Rock's office, along with Sergeant Corey Staats. Rock asked Plaintiff what his problem was and why he had not made any arrests or given out any tickets all summer. Plaintiff reminded Rock that he was merely doing as he was instructed by Rock; that he was not to enforce any laws or make any arrests, but was there to curb the drug sales in the area. Rock called Plaintiff a "liar" and told him he had a "bad

attitude." Rock also called Plaintiff "lazy" and told him that if he "didn't start putting out some numbers, [Rock would] transfer [Plaintiff] back to patrol [duty]."

27.  Shortly after this meeting, Plaintiff and Officer Izquierdo were assigned together for street duty. At the end of that month, Plaintiff and Officer Izquierdo were the two (2) top producers of arrests and traffic tickets in their division.

28.  In or about October of 2001, Plaintiff was once again called into Lieutenant Rock's office regarding an incident in the rear parking lot of the Department's gas station. While Plaintiff was fueling his patrol vehicle, Lieutenant Rock walked past him, approximately 50-60 feet away, and entered the police staff garage. Rock said something to Plaintiff, but Plaintiff could not hear him so Plaintiff waved to Rock.

29.  As Plaintiff was pulling out of the lot, Lieutenant Rock summoned him to his office on the police radio. When Plaintiff responded to Rock's office, Rock asked Plaintiff what his problem was and why he "flipped [him] off." Plaintiff told Rock he did not flip him off; that he waved to him to acknowledge that he saw him, and told Rock that he could not hear what Rock had said to him.

30.  Rock began shouting at Plaintiff and told Plaintiff that he (Rock) was his (Plaintiff's) boss and a lieutenant and that he (Rock) was free to discipline Plaintiff as he saw fit. Plaintiff told Rock that he did not have a problem with being disciplined if he did something wrong. Rock then dismissed Plaintiff from his office.

31.  In or around October of 2001, Captain Dietz attended the daily roll call to discuss a new work schedule for F Platoon. Later that same day, Plaintiff and a few other officers were standing in the House Sergeant's office discussing the new schedule. Captain Dietz entered the room and joined in the discussion with the officers.

32.  Shortly thereafter, Plaintiff was in the roll call room reviewing the overtime book when he was approached by Captain Dietz. Dietz stated to Plaintiff, "I hear you don't like the new schedule," to which Plaintiff responded in the affirmative, advising Dietz that he and the other officers did not like the new schedule because it was not very convenient to him or the other officers noting that the new schedule severely limited the amount of time they were going to be able to spend with their families. Dietz then left the room without comment.

33.  Later that evening, Plaintiff was called into Lieutenant Rock's office. Rock advised Plaintiff that he was approached by Captain Dietz and was informed that Plaintiff approached Dietz to discuss the new work schedule without going through the proper chain of command. Plaintiff informed Rock that it was actually Dietz who initiated the conversation. Rock informed Plaintiff that the next time he spoke with Captain Dietz without going through the proper chain of command, Rock would write charges up against Plaintiff.

34.  Near the end of October of 2001, Plaintiff was summoned by Captain Cummings and advised that he was being transferred back to the Patrol Division in November. When Plaintiff asked why he was being transferred back to this division, Cummings said that it was out of his hands and that Captain Dietz made the final decision.

35.  Also, in October of 2001, Lieutenant Rock approached Plaintiff's soon-to-be supervisor, Sergeant Morrissey, and advised him that he should watch out for Plaintiff because Plaintiff is a "no good piece of shit."

36.  In or around November of 2001, Plaintiff was transferred back to the Patrol Division and assigned to street duties with E Platoon. While in this division, Plaintiff

submitted a request through the proper chain of command to meet with the Director of Public Safety, James N. Mosely, who maintained an open door policy.

37.  In or around December of 2001, Plaintiff was summoned by Captain Dietz who wanted to know why Plaintiff requested to meet with the Director of Public Safety. Plaintiff informed Captain Dietz that it was a personal matter that he only wanted to discuss with the Director of Public Safety.

38.  Plaintiff was given permission to meet with the Director of Public Safety; the meeting took place in or around mid-December of 2001. In that meeting, Plaintiff informed the Director that he had been retaliated against for making a complaint against a supervisor and was demoted (transferred back to patrol), despite the fact that he was the senior officer, and most qualified officer, in his previous position.

39.  Also during this meeting with the Director, Plaintiff presented a copy of the Department's transfer policy to demonstrate that he was the most qualified individual for the position and, according to policy, should have remained in that position. The Director told Plaintiff that he was not even aware that such a policy existed.

40.  The Director also asked Plaintiff what other information he had to support his allegations. Plaintiff informed the Director that a fellow officer could support his claims.

41.  The Director advised Plaintiff that he would investigate his allegations and get back to him. Plaintiff has yet to receive a response.

42.  Plaintiff submitted a written request for a transfer out of the Patrol Division on or about February 21, 2002 and was once again denied without any supporting explanation.

43.   Concurrently, while in the Patrol Division under the supervision of Sergeant Michael Morrissey, Plaintiff was nominated for the Kiwanis Award for outstanding work in his division (E Platoon). Only one (1) other officer was nominated for this award.

44.   Sergeant Morrissey informed Plaintiff that he did not receive the award and that Inspector Wright told him to tell Plaintiff, "better luck next time."

45.   From the time Plaintiff initially filed his complaint about Sergeant Wells, he began to experience "the cold-shoulder-treatment" from his superiors. Plaintiff soon found himself shut out by his supervisors; he has been virtually ignored on a daily basis. Plaintiff's superiors have continuously refused to even acknowledge that he is in the room or say hello to him in an elevator. In group conversations, Plaintiff is invariably not even recognized by his supervisors/superiors. Plaintiff has been experiencing the "cold-shoulder-treatment" daily throughout the remainder of 2001, all of 2002, 2003, 2004, and 2005 and this practice continues as of the filing of this action.

46.   On or about May 10, 2004, Plaintiff once again submitted a written request for a transfer out of the Patrol Division. Plaintiff specifically requested to be returned to his day work position in the Special Operations Division. Captain Cummings advised Plaintiff that he was aware of his request and would "see what [he could] do."

47.   Plaintiff requested another transfer in December of 2005 to the position of Sector Specialist in F Platoon. However, his transfer request was subsequently denied.

48.   In total, Plaintiff submitted nine (9) transfer requests since 2002.

49.   Despite a superior evaluation from his immediate supervisor, Plaintiff's request for a transfer has still not been granted as of the filing of this Complaint.

50.    Thereafter, Plaintiff filed a claim of discrimination simultaneously with the Delaware Department of Labor and the Equal Employment Opportunity Commission (EEOC) against the Wilmington Police Department on the basis of retaliation alleging that after he complained about racial discrimination to the Wilmington Police Department in 2001, he was and continues to be denied promotional opportunities, and continuously scrutinized and harassed by his employer.

51.    The Delaware Department of Labor issued a reasonable cause finding in this matter on February 27, 2006. A copy of the DDOL's Investigative Memorandum received by the undersigned counsel on March 3, 2006 is attached hereto as Exhibit "A".

52.    The United States Department of Justice issued a Right to Sue Letter to Plaintiff on June 5, 2006. A copy of this Right to Sue Letter, received first by the undersigned attorney on June 9, 2006, is attached hereto as Exhibit "B".

## COUNT I
### Retaliation

53.    Defendant intentionally retaliated against Plaintiff for his complaints against a supervisor in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 200 e *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, codified as 42 U.S.C. § 2000E-(5)(f)(1) and (g) when it:

   (a) denied Plaintiff promotions and/or transfer requests despite his qualifications;

   (b) demoted Plaintiff from the Equal Housing Division to street patrol duties in F Platoon after filing his complaint against Sergeant Wells, a supervisor;

   (c) forced Plaintiff to work in a hostile work environment;

   (d) demoted Plaintiff once again in November of 2001 back to street patrol duties;

(e) disciplined and/or threatened to discipline Plaintiff for requesting a meeting with the Director of Public Safety; and,

(f) refused to transfer Plaintiff to the position(s) he requested after his meeting with the Director of Public Safety, despite his qualifications and superior performance evaluations.

54.     Defendant acted with retaliatory motive and the reasons provided by Defendants for failing to promote and/or transfer Plaintiff are pretextual.

55.     As a direct and proximate result of Defendant's unlawful retaliation against Plaintiff, Plaintiff has suffered, and continues to suffer, a loss of employment opportunities, loss of considerable pay: past, present, future and prospective, loss of other employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, mental anguish, embarrassment, emotional pain and damages to his reputation.

## COUNT II
## Retaliation – Failure to Promote

56.     Plaintiff repeats, re-alleges and incorporates by reference herein paragraphs 1-55.

57.     Defendant denied Plaintiff numerous opportunities for career advancement despite his qualifications.

58.     Defendant denied Plaintiff career advancement opportunities by denying his requests for transfers in addition to opportunities for promotion in rank.

59.     As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered, and continues to suffer, a loss of employment opportunities, loss of considerable pay: past, present, future and prospective, loss of other employment

benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, mental anguish, embarrassment, emotional pain and damages to his reputation.

60.    Defendant's retaliation was willful, wanton and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

61.    The above-stated damages were not the result of any act or omission on the part of the Plaintiff.

## COUNT III
### Breach of the Covenant of Good Faith and Fair Dealing

62.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 61 of this Complaint by reference as though fully set forth at length herein.

63.    The actions of the Defendant constitute a violation of the Covenant of Good Faith and Fair Dealing implicit in every employment agreement.

64.    Defendant breached the Covenant of Good Faith and Fair Dealing to Plaintiff by failing to promote him and by discriminating against him based upon his race.

65.    Defendant's retaliation was willful, wanton, and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

66.    The above-stated damages were not the result of any act or omission on the part of Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a) Issue a judgment against the Defendant, City of Wilmington Department of Police, and in his favor to provide appropriate back pay with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief

necessary for damages suffered by Plaintiff and to eradicate the effects of Defendant's actions and unlawful employment practices;

(b) Issue a judgment against the Defendant, City of Wilmington Department of Police, and in his favor ordering Defendants to provide compensation for non-pecuniary losses, including pain, suffering, and humiliation,  in amounts to be determined at trial, and other affirmative relief necessary for damages suffered by Plaintiff and to eradicate the effects of Defendant's actions and unlawful employment practices;

(c) Issue a judgment against Defendant, City of Wilmington Department of Police, and in his favor ordering Defendant to provide compensation for past and future pecuniary losses, in amounts to be determined at trial;

(d) Issue a judgment against Defendant, City of Wilmington Department of Police , and in his favor ordering Defendant to pay punitive damages for its malicious and/or reckless conduct in amounts to be determined at trial;

(e) Issue a judgment against City of Wilmington Department of Police, and in his favor ordering the Defendant to pay the costs of reasonable attorneys' fees and expenses; and,

(f) Issue a judgment against Defendant, City of Wilmington Department of Police, and in his favor for damages suffered by Plaintiff as a result of Defendant's actions, including, but not limited to, back pay, front pay, benefits (both retroactively and prospectively), advancement in rank, compensatory damages, punitive damages, attorneys' fees, the cost of this litigation, pre-judgment and

post-judgment interest and such other relief as this Honorable Court deems just and proper.

MAROLIS EDELSTEIN

Jeffrey K. Martin, Esquire (#2407)
Lori A. Brewington, Esquire (#4522)
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680 phone
(302) 777-4682 facsimile
Attorneys for Plaintiff William P. Babby, III

Dated:  September 6, 2006

EXHIBIT A

**STATE OF DELAWARE**
**DEPARTMENT OF LABOR**
**DIVISION OF INDUSTRIAL AFFAIRS – DISCRIMINATION PROGRAM**

Mr. William P. Babby III                                          State Case No.:05040145W
1613 N. Jackson Street
Wilmington, DE  19806
vs.
Wilmington Department of Police
800 N. French Street
Wilmington, DE  19801

## FINAL DETERMINATION AND RIGHT TO SUE NOTICE

Pursuant to 19 Del. C. § 710, *et seq.*, the parties in the above-captioned matter are hereby Noticed of the Department's Final Determination and Right to Sue Notice, as follows:

### *Reasonable Cause Determination and Notice of Mandatory Conciliation.*

In this case, the Department has completed its investigation and found that there is reasonable cause to believe that an unlawful employment practice has occurred.  Under the provisions of the law, the parties are now required to engage in mandatory conciliation with Melinda Shelton.  Please be prepared to appear for conciliation on the following date and time Monday, March 20, 2006 @ 10am at the location of 4425 N. Market Street Wilmington, DE  19802.

Your cooperation and good faith effort is anticipated.  Your corresponding Delaware Right to Sue Notice will be effective one day after your compliance with the conciliation effort.

The reasonable cause finding is based primarily on the following facts:
In this discrimination case, Charging Party must show that Respondent discriminated against him by subjecting him to racial harassment because of his association in a protected class.  Charging Party must further show that he filed a formal complaint of discrimination with Respondent and as a result Respondent took adverse employment action against Charging Party.  Charging Party can show this by demonstrating that he was subjected to racial harassment and after reporting the harassment subjected to more severe treatment than his similarly situated coworkers.  The evidence and information obtained during the investigation reveals that Charging Party did submit a written complaint of discrimination to Respondent and no immediate action was taken to address and/or eliminate the behavior.  The evidence reveals that because of this delay in addressing the complaint of discrimination Charging Party felt forced to follow up on this complaint by meeting with a higher official of Respondent's organization.   This resulted in Charging Party being reassigned to a much less desirable work assignment with a much less desirable work schedule.  Finally, the evidence and information obtained reveals that the named comparators were assigned to more favorable work assignment and more desirable work schedules.   Therefore, Charging Party has established that illegal discrimination and retaliation occurred.

This Final Determination is hereby issued on behalf of the Department of Labor, Division of Industrial Affairs, Discrimination Program.  See the attached Notice of Rights.

_____2/27/06_____                                   *Julie K. Cutler*
Date issued                                          Julie Klein Cutler, Administrator

_____3/28/06_____                                   *Julie Klein Cutler*
Date conciliation completed                          Julie Klein Cutler, Administrator

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

DOL Form C-12RC : 01/06

EXHIBIT B



**U.S. Departme    f Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

---

CERTIFIED MAIL
3510  4679

Mr. William P. Babby, III
c/o Lori A. Brewington, Esquire
Law Offices of Margolis & Edelstein
Attorneys at Law
1509 Gilpin Ave.
Wilmington, DE  19806

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

June 5, 2006

RECEIVED

JUN 0 9 2006

BY:

Re:  EEOC Charge Against Wilmington Police Dept.
     No. 170200500306

Dear Mr. Babby, III:

Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since
the date the Commission assumed jurisdiction over the charge, and no
suit based thereon has been filed by this Department, and because
you through your attorney have specifically requested this Notice,
you are hereby notified that you have the right to institute a civil
action under Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

Sincerely,

Wan J. Kim
Assistant Attorney General
Civil Rights Division

by *Karen L. Ferguson*

Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc:  Philadelphia District Office, EEOC
     Wilmington Police Dept.

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

06 - 552

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| William P. Babby, III | City of Wilmington and Wilmington Police Department |
| **(b)** County of Residence of First Listed Plaintiff _New Castle_ <br> (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _New Castle_ <br> (IN U.S. PLAINTIFF CASES ONLY) <br> NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number) <br> Margolis Edelstein <br> 1509 Gilpin Avenue <br> Wilmington DE 19806 | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question <br> (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity <br> (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product Liability <br> ☐ 320 Assault, Libel & Slander <br> ☐ 330 Federal Employers' Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle Product Liability <br> ☐ 360 Other Personal Injury | **PERSONAL INJURY** <br> ☐ 362 Personal Injury - Med. Malpractice <br> ☐ 365 Personal Injury - Product Liability <br> ☐ 368 Asbestos Personal Injury Product Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal Property Damage <br> ☐ 385 Property Damage Product Liability | ☐ 610 Agriculture <br> ☐ 620 Other Food & Drug <br> ☐ 625 Drug Related Seizure of Property 21 USC 881 <br> ☐ 630 Liquor Laws <br> ☐ 640 R.R. & Truck <br> ☐ 650 Airline Regs. <br> ☐ 660 Occupational Safety/Health <br> ☐ 690 Other <br> **LABOR** <br> ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt. Reporting & Disclosure Act <br> ☐ 740 Railway Labor Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal 28 USC 157 <br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 840 Trademark <br> **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) <br> **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff or Defendant) <br> ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 490 Cable/Sat TV <br> ☐ 810 Selective Service <br> ☐ 850 Securities/Commodities/ Exchange <br> ☐ 875 Customer Challenge 12 USC 3410 <br> ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts <br> ☐ 892 Economic Stabilization Act <br> ☐ 893 Environmental Matters <br> ☐ 894 Energy Allocation Act <br> ☐ 895 Freedom of Information Act <br> ☐ 900Appeal of Fee Determination Under Equal Access to Justice <br> ☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** <br> ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | **CIVIL RIGHTS** <br> ☐ 441 Voting <br> ☒ 442 Employment <br> ☐ 443 Housing/ Accommodations <br> ☐ 444 Welfare <br> ☐ 445 Amer. w/Disabilities - Employment <br> ☐ 446 Amer. w/Disabilities - Other <br> ☐ 440 Other Civil Rights | **PRISONER PETITIONS** <br> ☐ 510 Motions to Vacate Sentence <br> **Habeas Corpus:** <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

**VI. CAUSE OF ACTION**    Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
_Title VII of the Civil Rights Act of 1964_
Brief description of cause:
_Discrimination based upon retaliation_

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint: <br> **JURY DEMAND:** ☒ Yes ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | (See instructions): | JUDGE | DOCKET NUMBER |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

JS 44 Reverse (Rev. 11/04)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**      **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**      **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**      **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**      **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**      **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**      **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
                                                       Brief Description: Unauthorized reception of cable service

**VII.**      **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**      **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

0 6 - 5 5 2 -

Civil Action No. _____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____2_____ COPIES OF AO FORM 85.

_____9-6-06_____
(Date forms issued)

_____
(Signature of Party or their Representative)

_____Michael Sanna_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action