# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

WILLIAM P. BABBY, III,                     :

                  Plaintiff,          :    C.A. NO.: 06-522 JJF

                       :    TRIAL BY JURY DEMANDED

      v.                                :

CITY OF WILMINGTON                  :
DEPARTMENT OF POLICE,          :

               Defendant.           :

## PLAINTIFF'S ANSWERING BRIEF IN RESPONSE TO DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

MARTIN & WILSON, P.A.

JEFFREY K. MARTIN, ESQUIRE
TIMOTHY J. WILSON, ESQUIRE
DE Bar I.D. Nos. 2407 and 4323
1508 Pennsylvania Avenue
Wilmington, DE 19806
(302) 777-4681
*Attorneys for Plaintiff*

DATED:      November 2, 2007

# TABLE OF CONTENTS

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of the Nature and Stage of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.    Defendant is not Entitled to Summary Judgment on
      Plaintiff's Title VII Claim for Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      B.    Under the McDonald Douglass Burden-Shifting
            Framework Governing Title VII Retaliation Cases,
            Plaintiff Has Met His Burden of Proof.
            Therefore, Defendant's Motion for Summary
            Judgment Should Be Denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      C.    Plaintiff has Demonstrated Adverse Employment Action . . . . . . . . . . . . . . . . .18

      D.    Plaintiff Has Established a Causal Nexus
            Between His Complaint About Sgt. Wells and The
            Resulting Retaliatory Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

II.   The City of Wilmington is Capable of Being Sued as the
      Named Defendant in This Matter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF CITATIONS

**CASES**                                                                 **PAGES**

*Adickes v. S. H. Kress & Co.,*
    398 U.S. 144 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Anderson v. Liberty Lobby Inc.,*
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15, 16

*Burlington Northern & Santa Fe Railway Co. v. White,*
    126 S. Ct. 2405, 2416
    (citing to EEOC 1991 Manual §614.7, pp. 614-31 to 614-32) . . . . . . . . . . . . . . . . . . . .19

*Carpenter v. Gulf States Mfrs., Inc.,*
    764 F. Supp. 427 (N.D. Miss. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cole v. Delaware Technical & Community College,*
    459 F. Supp. 2d 296 (D. Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hampton v. The Borough of Tinton Falls Police Dept.,*
    98 F. 3d 107 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 20

*Horowitz v. Fed. Kemper Life Assurance Co.,*
    57 F. 3d. 300 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lafate v. Chase Manhattan Bank (USA),*
    123 F. Supp. 2d 773 (D. Del. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Login v. Commercial U.N. Ins. Co.,*
    96 F. 3d 971 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574; 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) . . . . . . . . . . . . . . . . . . . . . . . 11

*MacDonald v. Delta Air Lines, Inc.,*
    94 F. 3d 1437 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Oncale v. Sundowner Offshore Servs, Inc.*,
    523 U.S. 75; 140 L. Ed. 2d 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Pa. Cole Ass'n v. Babbitt*,
    63 F. 3d 231 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Robinson v. City of Pittsburgh*,
    120 F. 2d 1286 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Rodgers v. Monumental Life Ins. Co.*,
    289 F. 3d 442 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Torre v. Casio, Inc.*,
    42 F. 3d 825 (3d Cir. 11994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Troy Chemical Corp. v. Teamster's Union Local No. 408*,
    47 F. 3d 123 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Washco v. Federal Express Corp.*,
    401 F. Supp. 2d 547 (E.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Zelinski v. Pennsylvania State Police*,
    108 Fed. Appx. 700 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 20

*Zucherbraun v. General Dynamics Corp.*,
    935 F. 2d 544 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## **UNREPORTED DECISION**

*Boyd v. Wilmington Police Department*,
    C.A. No. 05-178- KAJ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

## **OTHER SOURCES**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 26(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Title VII of the Civil Rights Act of 1991 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

42 U.S.C. §2000e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Moore's Federal Practice, §56.10 (4)(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 13, 17

Black's Law Dictionary 1209 (7th Ed. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

Plaintiff William P. Babby, III ("Cpl. Babby") filed this civil action against the City of Wilmington Department of Police alleging that the Wilmington Police Department ("WPD") retaliated against him for filing a complaint against his supervisor as a result of his supervisor's racially hostile and derogatory language. This claim arises from the anti-retaliation provisions of Title VII of the Civil Rights Act of 1991, 42 U.S.C. §2000e.

Discovery consisted of extensive paper discovery with over 5000 pages of documents exchanged between the parties. In addition, both parties filed and answered Interrogatories and Plaintiff filed Requests for Admissions. Requests for Production were filed and answered by each of the parties. Defendant also briefly deposed Plaintiff.

This is Plaintiff's Answering Brief in Response to Defendant's Opening Brief in Support of Its Motion for Summary Judgment.

# SUMMARY OF ARGUMENT

Defendant is not entitled to summary judgment on Plaintiff's Title VII Claim for retaliation.  There are numerous genuine issues of material facts.

Plaintiff has properly sued the City of Wilmington as Defendant in this matter.

## STATEMENT OF FACTS

William P. Babby, III is a Senior Corporal with the Wilmington Police Department and has served as a sworn officer since 1989. (Compl. at ¶ 5; admitted).[1] Defendant is the City of Wilmington through its police department. During his career as a police officer with the WPD, Cpl. Babby has received standard to superior performance evaluations. (*Id.* at ¶ 6; admitted). WPD Chief Szczerba recognized Cpl. Babby for his superior performance evaluation in September 2004. (B-39).[2]

In March 2001, Captain Cummings asked Cpl. Babby and two other officers, Alfred Izquierdo and Tashawn Counts, whether they would be interested in working in the Special Operations Division as Crime Free Housing Officers. (Compl. at ¶ 9; admitted). Cpl. Babby was very interested and was thereafter reassigned from the Uniformed Services Division (as a patrol officer) to the Special Operations Division in early April 2001 by Chief Szczerba. (*Id.* at ¶ 11; admitted; and B-45).

After Cpl. Babby and Officers Izquierdo and Counts were transferred to the Special Operations Division, they attended an Equal Housing Conference at the University of Delaware. (Compl. at ¶ 12; admitted). Cpl. Babby and Officer Izquierdo are of Hispanic decent and Officer Counts is African American. (*Id.*; and A-30). While at this conference, their direct supervisor, Sgt. William Wells ("Sgt. Wells"), made various racially insensitive and derogatory comments about "Puerto Ricans" and "Mexicans" in the presence of Cpl. Babby and the other officers. (Compl. at ¶ 12).[3] Specifically, Wells stated that, "All Puerto Ricans have low riders and dice

---

[1] References to Plaintiff's Complaint will be made as (Compl. at ¶ XX; admitted). The paragraph of the Complaint will be noted where applicable. The term "admitted" will be used when Defendant admitted to the allegation(s) in its Answer.
[2] Plaintiff's Appendix will be referred to as "(B-   )." Defendant's Appendix is cited as "(A-   )."
[3] Defendant acknowledges only that there was "a singular comment about the habits of Hispanics."

hanging from their mirrors;" and while looking directly at Officer Izquierdo, Wells stated, "Puerto Ricans and Mexicans are all alike." (A-25; B-31). Cpl. Babby filed a "Departmental Information" on August 22, 2001, which served as his Notification of Complaint to the WPD of Sgt. Well's statements. (B-31, 32).

Cpl. Babby and Officers Izquierdo and Counts approached Capt. Cummings in May 2001 and reported that Sgt. Wells had made these racially offensive remarks[4] at the Equal Housing Conference. (Compl. at ¶ 13; admitted). In response, Capt. Cummings attempted to dissuade the officers from filing a formal complaint against Sgt. Wells and instead suggested that they all meet in an attempt to resolve the issue. (*Id.* at ¶ 14).[5]

This meeting occurred in May 2001 but did not resolve the issue. After the meeting, Cpl. Babby and Officer Izquierdo requested that charges be filed against Sgt. Wells and that Sgt. Wells be disciplined for his statements. (*Id.* at ¶ 15; admitted). However, without explanation, Officer Counts stated that he no longer wanted to proceed with a complaint against Sgt Wells. (*Id.* at ¶ 16; admitted).

Cpl. Babby and Officer Izquierdo's complaint against Sgt. Wells was filed on August 22, 2001 and was assigned to Lt. Caroline Henry ("Lt. Henry"), a friend of Wells, to investigate. (*Id.* at ¶ 17; admitted; B-31, 32). Lt. Henry's investigation of the complaint took four months to complete. (Compl. at ¶ 18; admitted).

Upon completion of the investigation, Cpl. Babby and Officer Izquierdo were advised that Sgt. Wells had been disciplined for his comments. (*Id.* at ¶ 19; admitted). However, this discipline consisted of only a written reprimand to Sgt. Wells for his comments/actions. (*Id.* at ¶

---

[4] Although Defendant stated in a prior Answer that there was only one offensive comment issued by Wells, it admitted Paragraph 13 of Plaintiff's Complaint that referred to "offensive remarks."

[5] Defendant denied that Cummings attempted to dissuade anyone from filing a Complaint but acknowledged that Cummings suggested that Babby, Izquierdo and Counts all meet to discuss a resolution of the issue.

20; admitted).    Despite this "discipline," Sgt. Wells' was then transferred to a prestigious position in the Chief's office as the Public Information Officer ("PIO"). (Compl. at ¶ 21; admitted). (B-47). Officer Counts, who had opted not to file a Complaint against Sgt. Wells, was permitted to remain in his position in the Crime Free Housing Division. (Compl. at ¶ 21; admitted).

Prior to filing a written complaint against Sgt. Wells but after voicing his concern to his supervisors regarding Sgt. Wells' inappropriate remarks in June 2001, Cpl. Babby was officially reassigned to F Platoon under the direction of Capt. Marlyn Dietz ("Capt. Deitz") and Lt. Mitchell Rock ("Lt. Rock"), both of whom are close personal friends of Sgt. Wells. (Compl. at ¶ 23; admitted). Shortly after being assigned to F Platoon, Cpl. Babby was given an assignment by Lt. Rock wherein Cpl. Babby was directed to park his patrol car in the 1200 block of West 6th Street in Wilmington and to remain there for eight (8) hours every day with the exception of one break. (Compl. at ¶ 27). Cpl. Babby was advised that his presence there would hopefully thwart and/or discourage the sale of drugs in that area by local drug dealers. (*Id.*). However, Cpl. Babby was further instructed not to enforce any laws or make arrests. (*Id.*). Cpl. Babby was assigned to this duty for the entire summer of 2001. (*Id.*).

In early September 2001, Cpl. Babby was called into Lt. Rock's office. (Compl. at ¶ 26; admitted). Lt. Rock asked Cpl. Babby what his problem was and why he had not made any arrests or given out any tickets all summer. (Compl. at ¶ 26; admitted). Lt. Rock questioned Babby about his attitude and advised Cpl. Babby that his statistics (meaning his arrests and tickets) had to improve or he would be transferred out of F Platoon. (Compl. at ¶ 26; admitted). During this conversation, Lt. Rock called Cpl. Babby a "liar;" called him "lazy;" and told Cpl. Babby that he had a "bad attitude." (Compl. at ¶ 26).

While in F Platoon, Cpl. Babby was assigned to community policing rather than doing patrol duties. (A-48). This necessarily hindered Cpl. Babby's ability to improve his "statistics" because community policing does not give an police officer the opportunity to make arrests and hand out tickets to the extent of an officer on patrol. (*Id.*). In addition, Cpl. Babby was required to work a special schedule that allowed him to have off every other weekend. (A-50).

Shortly after Cpl. Babby's meeting with Lt. Rock, he as well as Officer Izquierdo were assigned together for street duty. (Compl. at ¶ 27; admitted). Street duty is much less desired by officers than is an assignment to a special position within the police department (B-46, 47).

In October 2001 while Cpl. Babby was still assigned to F Platoon under Lt. Rock, he was again called into Lt. Rock's office regarding an incident in the rear parking lot by the Department's gas station. Lt. Rock allegedly misinterpreted Babby's wave to him thinking that Babby had "flipped [him] off." (Compl. at ¶ 28; admitted). Cpl. Babby tried to explain to Lt. Rock that he did not flip him off but rather that he waved to him to acknowledge that he saw him. (Compl. at ¶ 28; admitted). Lt. Rock dismissed this explanation and told Cpl. Babby that he was free to discipline in any manner that he saw fit. (Compl. at ¶ 30; admitted). Cpl. Babby told Lt. Rock that he had no problem being disciplined if he did something wrong but in this instance he did nothing wrong. In response, Lt. Rock dismissed Cpl. Babby from his office. (Compl. at ¶ 30; admitted).

Shortly thereafter, again in October 2001, Cpl. Babby was summoned to Lt. Rock's office a second time. At this meeting, Lt. Rock accused Cpl. Babby of speaking to Capt. Dietz and violating the chain of command. Lt. Rock said that he was going to write charges against Cpl. Babby. (Compl. at ¶ 33).

At the end of October 2001, Capt. Cummings advised Cpl. Babby that he was being transferred back to the Patrol Division, E Platoon, in November. (Compl. at ¶ 34; admitted). Capt. Cummings acknowledged to Cpl. Babby that Capt. Dietz made the transfer request. (Compl. at ¶ 34; admitted).

Subsequent to filing his complaint against Sgt Wells, Cpl. Babby began to experience the "cold shoulder treatment" from his superiors. (Compl. at ¶ 45). He was shut out by his superiors and virtually ignored on a daily basis. (Compl. at ¶ 45). Since that time, Cpl. Babby's superiors have continuously refused to even acknowledge that he is in the room or to say hello to him in an elevator. (Compl. at ¶ 45). While participating in group conversations, Cpl. Babby is invariably not recognized by his supervisors/superiors. (Compl. at ¶ 45). This cold shoulder treatment continues through today. (Compl. at ¶ 45). Cpl. Babby did, however, receive a superior performance evaluation in 2004 and received recognition of same from Chief Szczerba. (B-39, B-43).

Shortly before Cpl. Babby was to begin working in E Platoon, Lt. Rock approached Sgt. Michael P. Morrissey ("Sgt. Morrissey"), who was scheduled to become Babby's new supervisor in E Platoon, (Compl. at ¶ 35; and Affidavit of Michael J. Morrissey attached hereto in Plaintiff's Appendix (B-35, 36). Lt. Rock told Sgt. Morrissey on several occasions that Cpl. Babby was "no good," "a piece of shit" and "lazy."[6]

Cpl. Babby was transferred back to the Patrol Division and assigned street duties with E Platoon in or around November 2001, (Compl. at ¶ 36; admitted), and assigned strictly to patrol

---

[6] Plaintiff takes issue with Defendant's answer to Paragraph 35 of the Complaint. Defendant has stated, "**Plaintiff** [perhaps an inadvertent error] **does not have sufficient information to admit or deny this averment.**" Such an answer seems inconsistent with the fact that the allegation referred to a conversation between Lt. Rock and Sgt. Morrissey. Indeed, Sgt. Morrissey has testified in his Affidavit that he had these conversations with Lt. Rock wherein Rock made repeated derogatory comments about Cpl. Babby. (B-35, 36). Plaintiff respectfully submits that in view of Sgt Morrissey's testimony, Defendant's answer to Paragraph 35 professing no knowledge of these conversations is blatantly inaccurate.

duties. (A-50). He also was required to work a rotating shift and only received one or two weekends off every two or three months. (A-50-51).

After this reassignment, Cpl. Babby submitted a request through his chain of command to meet with Director of Public Safety, James N. Mosely ("Mr. Mosely"), to discuss his situation. (Compl. at ¶ 36; admitted). Prior to the meeting, Capt. Dietz asked Cpl. Babby the nature of his meeting and why he wanted to meet with Mr. Mosely. (Compl. at ¶ 37; admitted). Cpl. Babby responded that the subject matter was of a personal nature. (Compl. at ¶ 37; admitted).

The meeting with Mr. Mosely occurred in mid-December 2001. (Compl. at ¶ 38; admitted). During that meeting, Cpl. Babby advised Mr. Mosely that he had been retaliated against for making a complaint against a supervisor which resulted in his transfer to patrol. (Compl. at ¶ 38). Plaintiff has testified in his Affidavit that street patrol is the least desired position within the police department (B-46, 47). He presented Mr. Mosely a copy of the WPD's transfer policy to demonstrate why he was more qualified for the position in the Special Operations Division than was Officer Counts. (Compl. at ¶ 39). Mr. Mosely acknowledged that he was unaware of this policy and the surrounding circumstances. Cpl. Babby expressed to Director Mosely that he should have remained in that position. (Compl. at ¶ 39; A-39). Cpl. Babby requested that Mr. Mosely attempt to have him transferred out of patrol. (Compl. at ¶ 38; admitted; A-40). Mr. Mosely told Cpl. Babby that he would look into this matter and get back to Cpl. Babby. (Complaint at ¶ 41; admitted; A-38). Despite his promise, Mr. Mosely has never responded to Cpl. Babby regarding the issues discussed at that meeting. (A-38).

Cpl. Babby submitted a written request for a transfer out of the Patrol Division on or about February 21, 2002 and was once again denied this transfer with no supporting explanation.

(Compl. at ¶ 42; admitted). Cpl. Babby made numerous subsequent requests for transfers out of patrol since that date and has been denied all such applications. (Compl. at ¶ 48)[7]

In his first full year in the Patrol Division under the supervision of Sgt. Morrissey, Sgt. Morrissey nominated Cpl. Babby for the Kiwanis Award for outstanding work in his division (E Platoon). Sgt. Michael Morrissey's Affidavit is found in Plaintiff's Appendix at B-35, 36.

In March of 2005, Cpl. Babby filed a Charge of Discrimination with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC"). A copy of the Charge of Discrimination wherein Cpl. Babby alleged retaliation is found in Plaintiff's Appendix at B-33. In his Charge of Discrimination, Cpl. Babby stated that, "he was retaliated against when he was transferred from special operations to patrol officer. More So, Charging Party [Cpl. Babby] states that he has been ostracized by the Respondent because of his previous complaints of racial discrimination." [referring to his complaint against Sgt. Wells.]. Defendant's initial response to Cpl. Babby's retaliation charge as stated on the Charge of Discrimination is, "Charging Party [Cpl. Babby] was advised that the Director of Public Safety would look into the matter but no conclusion was ever established." (B-33).

Following the filing of the Charge of Discrimination, Sgt. Morrissey approached Cpl. Babby and advised him that there was "something you should know" in the wake of filing the Charge of Discrimination. (A-70). At that point, Sgt. Morrissey advised Cpl. Babby about the series of derogatory remarks about Cpl. Babby made by Lt. Rock.[8] (A-70).

---

[7] Babby alleged that he made nine transfer requests since 2002. Defendant disputes this number of requests. (Complaint at ¶ 48); Babby has testified that he was well qualified for each of the transfer positions for which he applied.

[8] While Cpl. Babby was questioned by defense counsel during his deposition about his conversation with Sgt. Morrissey, defense counsel appeared to suggest that he had not spoken with Sgt. Morrissey. See Affidavit of undersigned counsel, Jeffrey K. Martin attached to Plaintiff's Appendix at B-48. Indeed, Sgt. Morrissey has so stated in his Affidavit attached here to at B-35, 36, he did meet with Mr. Mili and advised Mr. Mili that the

Cpl. Babby's retaliation charge was investigated by the DDOL, Division of Industrial Affairs – Discrimination Program.    On February 27, 2006, the DDOL issued a Final Determination finding that there was "reasonable cause" to believe that an unlawful employment practice had occurred. (B-16).   Specifically, DDOL found that Babby submitted a written complaint of discrimination "and no immediate action was taken to address and/or eliminate the behavior".   Further, DDOL found that Babby was "reassigned to a much less desirable work assignment with a much less desirable work schedule."   DDOL contrasted Cpl. Babby's treatment with his comparator, Officer Tashawn Counts, who was "assigned to more favorable work assignment and desirable work schedules." (*Id.*).

---

allegations of Paragraph 35 were accurate.  Defense counsel has now agreed to admit to the allegations in Paragraph 35 by way of responding to a Request for Admission that had been not answered. (B-57).

## ARGUMENT

## I.     DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII CLAIM FOR RETALIATION.

### A.     STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered" where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. Civ. P. 56(c). A fact is material if it might affect the outcome under the governing substantive law. See, *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986). A dispute over a material fact must be "genuine," *i.e.*, the evidence is such "that a reasonable jury could return a verdict in favor of the non-moving party." *Id.* Facts that could alter the outcome are "'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on that disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F. 3d. 300, 302 n.1 (3d Cir. 1995).

To survive a motion for summary judgment, a defendant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). The court will "view the underlying facts and all reasonable inferences there from in the light most favorable to the party opposing the motion." *Pa. Cole Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

In the present matter, the current record which includes the pleadings and the discovery to include Answers to Interrogatories and Request for Admissions the as Plaintiff's deposition and the affidavits submitted for the purpose of this briefing, establish that there are several

11

genuine issues of material fact.  Therefore, Defendant is not entitled to summary judgment as a

matter of law.

B.   UNDER   THE   MCDONALD   DOUGLASS   BURDEN-SHIFTING
FRAMEWORK   GOVERNING   TITLE   VII   RETALIATION   CASES,
PLAINTIFF   HAS   MET   HIS   BURDEN   OF   PROOF.   THEREFOR,
DEFENDANT'S   MOTION   FOR   SUMMARY   JUDGMENT   SHOULD   BE
DENIED.

A stated in Moore's Federal Practice:

"The memorandum [supporting the motion for summary judgment] should
be a document of advocacy, but must display candor and fairness in discussing the
materials before the court.  Counsel should pay particular attention to properly
characterizing affidavits and other documents that form the basis for counsel's
contention that no material facts are in dispute.  For example, counsel should not
overstate the evidence in support of its position.  This type of puffing undermines
credibility and prompts many judges to decide that trial is necessary to ensure that
summary judgment is not granted on the basis of exaggerated or misstated
assertions regarding the facts.  Similarly, counsel should not deny the existence of
facts favorable to the other side."

Moore's Federal Practice, §56.10(4)(d).

Contrary to the rule of thumb articulated in Moore's, Defendant's Opening Brief engages

the proscribed "puffing" of the facts, overstates evidence in support of Defendant's position and

denies the existence of facts favorable to Plaintiff.   While Defendant is entitled to zealous

advocacy, Defendant's Opening Brief does not provide an accurate picture of the factual dispute

as it exists at this early stage of litigation.

Indeed, Defendant's Opening Brief does not even acknowledge the basic facts at issue in

this litigation.  Specifically, Defendant has repeatedly throughout its Opening Brief stated that

the retaliatory actions taken against Plaintiff in this matter consisted solely of the denial of

Plaintiff's numerous requests for transfer positions in the Department out of his street patrol

responsibilities. Defendant has missed the boat by misapprehending the very nature of Plaintiff's

claim.  Plaintiff claimed in his Charge of Discrimination that, "he was retaliated against when he

12

was transferred from special operations to patrol officer." (B-33). The Department of Labor in finding reasonable cause to believe that Plaintiff was the subject of retaliation, found that Plaintiff's complaint about his superior's racially hostile statement was that he was "reassigned to a much less desirable work assignment with a much less desirable work schedule." (B-16). That allegation was carried forward in Plaintiff's Complaint wherein he alleged that he was demoted when he was removed from the Equal Housing Division to street patrol in F Platoon and once again demoted in November of 2001 when he was transferred to full-time street patrol duties. (B-10). While Plaintiff also alleged in his Complaint that he was subsequently denied the opportunity to transfer out of street patrol, Defendant's brief virtually ignores Plaintiff's primary allegations of retaliation regarding his transfer into street patrol where he has remained since 2001. Plaintiff respectfully submits that given this lack of recognition by Defendant and corresponding lack of analysis as to Plaintiff's claim of retaliation, Defendant's motion must be dismissed.

As Moore's Federal Practice also counsels, summary judgment should not be granted when there are misstated assertions of the facts. There is a striking set of facts that Defendant ignored or misstated until counsel was confronted by Plaintiff's counsel during the week of the preparation of the Answering Brief. A key allegation in the Complaint is found in Paragraph 35 wherein Lt. Mitchell Rock was alleged to have spoken with Plaintiff's soon-to-be supervisor Sgt. Michael Morrissey. Lt. Rock advised Sgt. Morrissey that he must watch out for Cpl. Babby because Babby is a "no good piece of shit." Defendant's attempt to avoid recognition and therefore admission of this allegation appears to have been well orchestrated as evident by the various pleadings that touched upon this allegation. See Affidavits of Sgt. Michael Morrissey and Jeffrey K. Martin, Esquire found in Plaintiff's Appendix. Initially, Defendant's Answer to

13

Complaint stated, "Plaintiff[9] does not have sufficient information to admit or deny this averment." Plaintiff's counsel, while preparing to file this Answering Brief, was troubled by this Answer because of the availability of the two actors in this paragraph, Lt. Rock and Sgt. Morrissey, who were both employed by the Wilmington Police Department at the time the Answer was filed. Plaintiff's counsel thereupon contacted Sgt. Morrissey and learned that not only were the allegations in Paragraph 35 true but they were more extensive then alleged. Sgt. Morrissey testified that in addition to the grossly derogatory statements of Lt. Rock labeling Cpl. Babby as a "no good piece of shit," Rock also told Morrissey that Cpl. Babby was "lazy." In addition, Sgt. Morrissey testified that these derogatory statement were made by Lt. Rock on a "few occasions" rather than a singular occurrence alleged in Paragraph 35.

Sgt. Morrissey further advised Plaintiff's counsel that he had met with Mr. Mili after the Complaint had been filed and had advised Mr. Mili that the allegations in Paragraph 35 were true. Sgt. Morrissey advised that Mr. Mili response to him was that Sgt. Morrissey would not have any further participation in this litigation.

Plaintiff's counsel contacted defense counsel immediately after speaking with Sgt. Morrissey indicating his concern that Plaintiff's Answer to Paragraph 35 was incorrect. Senior Assistant City Solicitor Alex Mili responded promptly by indicating that Sgt. Morrissey corroborated that Lt. Rock made these derogatory remarks about Cpl. Babby to Sgt. Morrissey. Mr. Mili suggested that he amend the response to Request for Admission No. 23 which restated the allegations of Paragraph 35 of the Complaint. Defendant had not previously filed an answer to Request for Admission No. 23 although responding fully to every other inquiry (there were a total of 35 Request for Admissions).

---

[9] Plaintiff recognizes that the term "Defendant" should have been used rather than Plaintiff. .

Defendant's Initial Disclosures pursuant to Fed. R. Civ. P. 26(a) do not include the name of Sgt. Michael Morrissey as a person with knowledge although his name was set forth in the Complaint in Paragraphs 35, 43, and 44. Similarly, in response to Plaintiff's Interrogatory No. 6, asking for the names of people contacted with regard to their knowledge of the allegations in the Complaint, Sgt. Morrissey's name does not appear. (B-64).

The importance of Defendant's failure to acknowledge the statements by Lt. Rock to Sgt. Morrissey are that strong feelings that Lt. Rock had toward Cpl. Babby form a factual basis for further retaliatory conduct against Cpl. Babby. The statements made by Lt. Rock are not just derogatory but they indicate a deep-seated animus against Cpl. Babby that was unlikely to have been communicated only to Sgt. Morrissey. Again, we submit that Defendant's apparent attempt to avoid answering truthfully and in good faith the allegations set forth in the Complaint is a reason sufficient unto itself to deny summary judgment. Indeed, such attempts to hide from the truth cast a shadow over all of Defendant's pleadings including its representations and arguments in its Opening Brief.

Summary judgment is governed by Federal Rule 56. "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). In meeting its burden of showing an absence of a genuine issue as to any material fact, "the material it lodge(s) must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[E]vidence of non-movement is to be believed and all reasonable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

15

To properly apply the summary judgment standard in Rule 56, it becomes necessary to unpack the phrase "genuine issue of material fact." A fact is only material is the "establishment thereof might affect the outcome of the lawsuit under governing substantive law." *Rodgers v. Monumental Life Ins. Co.*, 289 F. 3d 442, 448 (6th Cir. 2000); see also, *Login v. Commercial U.N. Ins. Co.*, 96 F. 3d 971, 978 (7th Cir. 1996)("the non-movant must do more...than demonstrate some factual disagreement between the parties; the issue must be 'material;' irrelevant or unnecessary facts do not preclude summary judgment even when they are not in dispute." A material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *MacDonald v. Delta Air Lines, Inc.*, 94 F. 3d 1437, 1440 (10th Cir. 1996); see also, *Troy Chemical Corp. v. Teamster's Union Local No. 408*, 47 F. 3d 123, 126 (3d Cir. 1994)(holding that factual issues are not "genuine" unless a reasonable jury could return a verdict for non-movant based on non-movant's submissions). This is a case of drawing inferences from facts (*i.e.*, the inference that Defendant retaliated against Plaintiff by transferring him back to street duty and failing to allow him to transfer out of street duty). Drawing inferences is typically reserved for a jury at trial. See, *Anderson*, 477 U.S. at 255 (holding that drawing inferences is a jury's function as long as competing inferences under the law).

Defendant inappropriately launches into an analysis of this case under the *McDonnell Douglas* opinion, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). While *McDonnell Douglas* does provide that appropriate law in deciding the charge of retaliation under Title VII, summary judgment motion is not the time- - as Defendant seems to argue- - in which to determine whether Plaintiff will ultimately prevail in its claim.

16

Although the phrase *"prima facia showing"*[10] is usually used in terms of a plaintiff's required showing, the *prima facia* standard has also been used to describe the moving party's burden to obtain summary judgment and, reciprocally, the non-moving party's requisite showing to defeat summary judgment if moving party first meets its burden. See, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-4 (1986)(holding that the party seeking summary judgment has the *prima facia* burden of informing the court of the basis of the motion and identifying portions of the record but foreseeing its motion); see also, *Zucherbraun v. General Dynamics Corp.*, 935 F. 2d 544, 547-58 (2d Cir. 1991)(holding that if plaintiff cannot establish a *prima facia* case for recovery, summary judgment for defendant is the appropriate action); *Carpenter v. Gulf States Mfrs., Inc.*, 764 F. Supp. 427, 432 (N.D. Miss. 1991)(holding that in order to defeat summary judgment motion by Defendant, Title VII plaintiff need not establish *prima facia* elements of discrimination, but must set forth evidence sufficient to show a genuine factual dispute as to whether discrimination occurred). Thus, the question is not-as Defendant frames it-whether Plaintiff will ultimately be able to satisfy his burden of persuasion at trial. Rather, the issue is whether there is a genuine issue of material fact *vis-à-vis* Defendant's retaliation against Plaintiff. This Court must determine whether there is a sufficient factual dispute as to whether Defendant retaliation against Plaintiff to warrant a trial. The issue is no different than the simplest case of a factual dispute:

> "In other words, the court deciding a summary judgment motion is not to make a determination of any specific facts such as whether the stop light was red or green when the defendant drove through the intersection. Rather the Court reviewed the summary judgment motion and response papers and seeks to determine whether the records reveals a disputed factual issue material enough to require a trial and fact finder determination (usually by a jury) of the factual question.

---

[10] Black's Law Dictionary defines prima facia showing as, "a party's production of enough evidence to allow the fact-tryer to infer the fact at issue and rule in the party's favor." Black's Law Dictionary 1209 (7th ed. 1999).

17

Moore's Federal Procedure, §56.11(5)(a).

### C. PLAINTIFF HAS DEMONSTRATED ADVERSE EMPLOYMENT ACTION

Defendant argues that Plaintiff cannot establish his *prima facie* claim because Defendant argues that Cpl. Babby did not experience an adverse employment action. As stated, *supra.*, this argument which Defendant attempts to make on Pages 6 through 10 of the Opening Brief totally ignores Plaintiff's primary claim of retaliation as set forth in his Charge of Discrimination that was found valid by the Delaware Department of Labor. Rather than focusing on Cpl. Babby's transfer to street patrol after he had been transferred to special operations, Defendant states, "the retaliation claim nonetheless fails because denying Babby's eight (8) transfer requests does not constitute an adverse employment action...." While we submit that those denials are indeed also adverse employment actions, we also bring to the Court's attention that Cpl. Babby's initial transfer back to street patrol was an adverse employment action.

Adverse employment action is "conduct other than discharge or refusal to hire [which] alters the employee's 'compensation, terms, conditions or privileges of employment' that 'deprives' him or her of 'employment opportunities,' or 'adversely affects his [ or her] status as an employee.'" *Robinson v. City of Pittsburgh*, 120 F. 2d 1286, 1300 (3d Cir. 1997). The Supreme Court has held that, "this not only covers 'terms' and 'conditions' in the narrow sense, but 'evinces a Congressional intent to strike at the entire spectrum of disparate treatment...in employment.'" In *Oncale v. Sundowner Offshore Servs, Inc.*, 523 U.S. 75, 78, 140 L. Ed. 2d 201, 118, (an action taken by an employer should not be viewed in isolation); *Cole v. Delaware Technical & Community College*, 459 F. Supp. 2d 296, 306 (D. Del. 2006). "Rather, courts should analyze all of the facts collectively." *Id.* (quoting, *Lafate v. Chase Manhattan Bank*

18

*(USA)*, 123 F. Supp. 2d 773, 778 (D. Del. 2000).  The Third Circuit recognizes that "a transfer, even without loss of pay or benefits, in some circumstances, constitutes an adverse job action." *Torre v. Casio, Inc.*, 42 F. 3d 825, 831 n.7 (3d Cir. 11994).

With respect to retaliatory job transfers, the United States Supreme Court has held:

> "Common sense suggests that one good way to discourage an employee such as [plaintiff] from bringing discrimination charges would be to insist that [he] spend more time performing the more arduous duties and less time performing those that are easier or more agreeable.  That is presumably why the EEOC has consistently found retaliatory work assignment to be a classic and widely recognized example of forbidden retaliation."

*Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405, 2416 (citing to EEOC 1991 Manual §614.7, pp. 614-31 to 614-32).  There, an employee was laterally transferred to another position that did not result in a loss of pay.  The Court held that the transfer involved "more arduous and dirtier work" and the previous position "required more qualifications, which is an indication of prestige." *Id.* at 2417.  Furthermore, the previous position "was objectively considered a better job...." *Id.*

In *Hampton v. The Borough of Tinton Falls Police Dept.*, 98 F. 3d 107, 115-16 (3d Cir. 1996), a police officer's reassignment from the detective bureau to road patrol was found to be an adverse employment action even though neither his rank nor his pay were decreased. Significant in the court's holding in that case was the fact that the plaintiff argued that patrol assignment was less desirable than his assignment in the detective bureau.

In *Zelinski v. Pennsylvania State Police*, 108 Fed. Appx. 700 (3d Cir. 2004), the officer was transferred from a specialized drug investigative unit to a patrol unit, but did not lose pay or rank.  The Third Circuit upheld the lower courts denial of defendant's motion for summary judgment. Although the court was unclear on its rationale for its decision, a subsequent opinion, *Washco v. Federal Express Corp.*, 401 F. Supp. 2d 547, 557 n.7 (E.D. Pa. 2005) inferred that the

19

decision was based upon the fact that "the patrol unit position was less prestigious than the specialized drug investigation unit and the plaintiff and her co-workers would have deemed such a move to be a demotion.

In the *Hampton* and the *Zelinski* cases cited *supra.* the Third Circuit has been confronted with facts similar to our case wherein the plaintiffs police officers therein were transferred to road patrol.  The Third Circuit held that this transfer was a sufficient indicia of adverse employment action to preclude summary judgment.  Plaintiff respectfully requests that this Court consider Plaintiff's transfer to street patrol as being a retaliatory adverse employment action. The same analysis arguably extends to Plaintiff's numerous requests for transfers out of street patrol to other positions within the Wilmington Police Department.  However, without any further analysis of each prospective transfer, it is quite apparent that the reasons for denial of transfer to these positions involve factual issues that are not capable of disposition by way of a summary judgment application by Defendant.  Further, the fact that Cpl. Babby was banished to street patrol in 2001 and remains there despite numerous requests for a transfer, is in itself evidence of continuing retaliation.

Plaintiff further submits that in light of Defendant's longstanding attempt to avoid an accurate response to the allegations set forth in Paragraph 35 of the Complaint, any and all statements by Defendant in its Opening Brief with regard to proffered reasons for the denial of any transfer position to Cpl. Babby must be considered suspect and not statement upon which summary judgment may be predicated.

D.    PLAINTIFF HAS ESTABLISHED A CAUSAL NEXUS BETWEEN HIS COMPLAINT ABOUT SGT. WELLS AND THE RESULTING RETALITORY ACTIONS.

Defendant disingenuinely argues that there is a lack of causal nexus between Cpl. Babby's complaint regarding Sgt. Wells' behavior in 2001 and the subsequent retaliatory behavior. Defendant argues that there can be no causal nexus because of a temporal distance wherein some of the transfer requests were submitted at least three or four years after the Complaint. Defendant also argues that Sgt. Wells did not have any hiring authority regarding his transfers. Such arguments ignore the reality that these are factual assertions made by Defendant and that these facts are very much in dispute. Defendant also wants us to believe that if there is no "smoking gun" evidence linking Cpl. Babby's complaint about Wells to the subsequent retaliation, that it must not exist.

Defendant admitted in its Answer that Lt. Rock is a close friend of Sgt. Wells. (Compl. at ¶23). What Defendant avoided acknowledging until the preparation of this Answering Brief is that Lt. Rock made some very damaging remarks about Cpl. Babby to Babby's prospective supervisor, Sgt. Morrissey, in 2001. Given the intensity of the remarks by Lt. Rock, how are we to believe that those remarks were not repeated to other officers within the Wilmington Police Department? How are we to know that Lt. Rock or any of his other close friends were not involved with the assignment of Cpl. Babby to street patrol in E Platoon? How can we know that Lt. Rock's remarks were not a factor in any of the denials of prospective transfers from street patrols that were requested by Cpl. Babby?

The evidence as asserted by Cpl. Babby is that his relationship with Lt. Rock caused him many problems when Cpl. Babby was under Lt. Rock's supervision. Cpl. Babby set forth several incidents involving what he perceived to be unfair treatment by Lt. Rock during these times. Cpl. Babby also alleged that after his complaint against Sgt. Wells, he began to experience the "cold shoulder treatment" from his various superiors. Cpl. Babby found himself

shut out by his superiors and virtually ignored on a daily basis. (Compl. at ¶ 45). Cpl. Babby

has alleged that he is invariably not recognized by his supervisors or superiors although at the

same time he has received a superior performance evaluation and was so recognized by Chief

Szczerba (B-39-43).

There is ample evidence that Cpl. Babby faced a hostile work environment following his

submission of his complaint regarding Sgt. Wells. Although he was most qualified for the

position as a Fair Housing Officer, the less senior officer who chose not to file a complaint

received that position. He began to be ignored by many of his superiors. He was not ignored by

Lt. Rock, however. Instead, he had a number of run-ins with Lt. Rock. Lt. Rock warned Cpl.

Babby's prospective supervisor Sgt. Morrissey about Cpl. Babby and used words and terms to

describe Cpl. Babby that are unacceptable in our culture. A jury is free to make inferences

regarding the result of the conduct of Cpl. Babby's superiors. As such, summary judgment is not

appropriate.

## II.     THE CITY OF WILMINGTON IS CAPABLE OF BEING SUED AS THE NAMED DEFENDANT IN THIS MATTER.

Once again, Defendant has failed to understand the nature of Plaintiff's case. Defendant

argues that this matter must be dismissed because the Wilmington Police Department is the

named Defendant. The caption of our case, however, reveals that the named Defendant is "City

of Wilmington Department of Police." There seems to be no acknowledgment of that by

Defendant. Rather, Defendant has argued that the Wilmington Police Department may not be

sued.

A similar issue was raised and briefed in the matter of *Boyd v.  Wilmington Police

Department*, C.A. No. 05-178- KAJ (Memorandum Order is attached hereto in Plaintiff's

Appendix). In *Boyd*, Plaintiff named the Wilmington Police Department as the sole defendant.

22

Upon request by defendant's counsel, again represented by the City Solicitor's office, Judge Jordan denied defendant's request for dismissal under summary judgment. See, Memorandum Opinion Page 4 at Note 3. (B-81). Judge Jordan held that defendant's application for summary judgment was denied because it was, "clear that the City has been involved in this case from the outset, as evidenced by the fact that the City Solicitor's office is defending the WPD. Judge Jordan allowed plaintiff in that matter leave to amend his Complaint to substitute the proper party and denied WPD's Motion for Summary Judgment on that issue. Thus, even if Plaintiff herein had named Wilmington Police Department as Defendant, dismissal is not proper. However, Plaintiff correctly named City of Wilmington as the Defendant in this matter.

Plaintiff respectfully requests that summary judgment not be granted on the basis of the name of the Defendant. Although Plaintiff submits that the proper name of the Defendant was used in the Complaint, Plaintiff stands ready to make any amendment to the name of the party as directed by the Court.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's

Motion For Summary Judgment.


**MARTIN & WILSON, P.A.**


**JEFFREY K. MARTIN, ESQUIRE**
**TIMOTHY J. WILSON, ESQUIRE**
DE Bar I.D. No. 2407
1508 Pennsylvania Avenue
Wilmington, DE 19806
(302) 777-4681
*Attorneys for Plaintiff*


DATED:      November 2, 2007

24

## CERTIFICATE OF SERVICE

I, Jeffrey K. Martin, the undersigned counsel for Plaintiff in the above-captioned case, hereby certify that the foregoing *Plaintiff's Answering Brief in Response to Defendant's Opening Brief in Support of Its Motion for Summary Judgment* was filed via CM/EMF on November 2, 2007 to the following:

Alex Mili, Esquire
Assistant City Solicitor
City of Wilmington
City/County Building
800 North French Street
Wilmington, DE 19801

MARTIN & WILSON, P.A.

JEFFREY K. MARTIN, ESQUIRE
DE Bar I.D. No. 2407
1508 Pennsylvania Avenue
Wilmington, DE 19806
(302) 777-4681
*Attorneys for Plaintiff*

DATED:    October 29, 2007