# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

WILLIAM P. BABBY, III,                  :
                                        :
                  Plaintiff,            :          C.A. NO.: 06-522 JJF
                                        :
                                        :          TRIAL BY JURY DEMANDED
       v.                               :
                                        :
CITY OF WILMINGTON                      :
DEPARTMENT OF POLICE,                   :
                                        :
                  Defendant.            :

**APPENDIX TO PLAINTIFF'S ANSWERING BRIEF IN RESPONSE TO
DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT**

MARTIN & WILSON, P.A.

JEFFREY K. MARTIN, ESQUIRE
TIMOTHY J. WILSON, ESQUIRE
DE Bar I.D. No.  2407
DE Bar I.D. No.  4323
1508 Pennsylvania Avenue
Wilmington, DE  19806
(302)  777-4681
*Attorneys for Plaintiff*

DATED:      November 2, 2007

## TABLE OF CONTENTS

Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    Exhibit A to Complaint – Final Determination and Right to Sue Notice
    Issued by Delaware Department of Labor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    Exhibit B to Complaint – Right to Sue Notice Issued by U.S.
    Department of Justice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

Answer to Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Departmental Information: Notification of Complaint filed by
Cpl. William P. Babby, III dated August 22, 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

Charge of Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Affidavit of Sgt. Michael J. Morrissey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

    Exhibit 1 – Kiwanis Award Nomination of Cpl. William P. Babby, III
    By Sgt. Michael J. Morrissey dated September 4, 2002 . . . . . . . . . . . . . . . . . . . . . . . .37

Chief Michael J. Szczerba Memo of Congratulations to Cpl.
William P. Babby, III dated September 17, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

Cpl. William P. Babby's Employment Performance Evaluation for Year 2003 . . . . . . . . . . . . 40

Chief Szczerba's Transfers & Assignments dated April 3, 2001 . . . . . . . . . . . . . . . . . . . . . .44

Affidavit of Cpl. William P. Babby, III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Affidavit of Jeffrey K. Martin, Esquire . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

    Exhibit 1 – Defendant's Answers to Plaintiff's First
    Request for Admissions Directed to Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

    Exhibit 2 – Defendant's Supplemental Answer to Plaintiff's
    First Request for Admissions Directed to Defendant . . . . . . . . . . . . . . . . . . . . . . . . . .60

    Exhibit 3 – Defendant's Answers to Plaintiff's First Set of
    Interrogatories Directed to Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

Defendant's Disclosures Pursuant to Federal Rule of Civil Procedure 26 . . . . . . . . . . . . . . . .74

Memorandum Order in the matter of
Boyd v. Wilmington Police Department dated July 27, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . 78

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

WILLIAM P. BABBY, III,                    )
                                          )    C.A. NO.    06 - 552
          Plaintiff,                      )
                                          )    JURY TRIAL DEMANDED
     v.                                   )
                                          )
CITY OF WILMINGTON                        )
DEPARTMENT OF POLICE,                     )
                                          )
          Defendants.                     )

## COMPLAINT

### PARTIES

1.  Plaintiff, William P. Babby, III (hereinafter "Plaintiff"), has at all times relevant to this Complaint been a resident of New Castle County, State of Delaware, and currently resides at 1613 N. Jackson Street, Wilmington, Delaware 19806. Plaintiff is of Hispanic descent.

2.  Defendant, City of Wilmington Department of Police (hereinafter "Defendant"), is a municipal corporation duly organized and existing under the laws of the State of Delaware, whose registered agent for service of process is the City of Wilmington, Louis L. Redding City/County Building, 800 French Street, 9th Floor, Wilmington, Delaware 19801.

3.  Wilmington Police Department is a division of the City of Wilmington's Department of Public Safety, a city agency, and at all times relevant to this Complaint, the employer of Plaintiff.

### JURISDICTION

B-1

1

4.    Jurisdiction is founded on the existence of a question arising under federal statutes. This action for injunctive relief and damages is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 200 e *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, codified as 42 U.S.C. § 2000E-(5)(f)(1) and (g). An additional jurisdictional basis for Plaintiff's state law claim exists under the principles of pendant and supplemental jurisdiction and 28 U.S.C. §1367. The state law claim regarding the breach of the implied covenant of good faith and fair dealing is brought pursuant to the pendant jurisdiction of this Court.

## FACTUAL BACKGROUND

5.    Plaintiff was hired as a recruit officer on or about January 9, 1989. Plaintiff has been employed with Defendant, City of Wilmington Department of Police, for over seventeen (17) years.

6.    Plaintiff has consistently received standard to superior performance evaluations during his entire time employed with Defendant, Wilmington Police Department, most recently receiving a superior evaluation on or about September 14, 2004.

7.    In or around the year 2000, Plaintiff began working under the supervision of Lieutenant Bobby Cummings in the Human Resources Division after being placed on light duty while recovering from surgery.

8.    While working in the Human Resources Division, Plaintiff filled in for two (2) different positions that were left vacant by other injured officers: the Extra Duty Officer and the Training Officer. Plaintiff handled both of these positions with virtually no training, and was praised numerous times, sometimes on a daily basis, by

# B-2

Captain Maggitti and Lieutenant Cummings, for doing an exceptional job fulfilling the duties of these positions. However, when Plaintiff submitted a written request for a permanent transfer to these positions, his request was denied.

9. On or about March 27, 2001, Plaintiff was approached by Cummings who had recently been promoted to Captain and was assigned to the newly-formed Special Operations Division as commander. Cummings asked Plaintiff to put in a transfer request to work in his division as a Crime Free Housing Officer.

10. Plaintiff complied with this request and submitted a one-line transfer request and was accepted into the division without listing any qualifications. Plaintiff was advised that the paperwork was "just a formality" to get him into the division.

11. Plaintiff was transferred into the Special Operations Division along with two (2) junior officers in or around April of 2001.

12. Shortly thereafter, Plaintiff, along with the two (2) junior officers; Officer Izquierdo, an Hispanic officer, and Officer Tshawn Counts, an African-American officer, attended an Equal Housing Conference at the University of Delaware. While at this conference, Sergeant William Wells, a direct supervisor of the three (3) officers, made various racially insensitive and derogatory comments about "Puerto Ricans" and "Mexicans" in the presence of Plaintiff and Officers Izquierdo and Counts.

13. Plaintiff, along with Officers Izquierdo and Counts, approached Captain Cummings about this incident in or about May of 2001 and informed Captain Cummings that Sergeant Wells had made offensive remarks toward Puerto Ricans and Mexicans at the Equal Housing Conference.

B-3

3

14. Cummings attempted to dissuade Plaintiff and Officer Izquierdo from filing a formal complaint against Sergeant Wells and suggested they all meet to discuss an attempt to resolve the issue.

15. The meeting took place later that month, but Plaintiff and Officer Izquierdo were dissatisfied with the outcome and they requested that charges be filed against Sergeant Wells and that he [Wells] be disciplined for his actions.

16. Shortly thereafter, Officer Counts informed Plaintiff and Officer Izquierdo without any explanation that he no longer wanted to proceed with the complaint against Sergeant Wells.

17. Plaintiff and Officer Izquierdo filed the complaint against Sergeant Wells which was assigned to Lieutenant Carolyn Henry, a friend of Wells, to investigate.

18. The investigation took more than four (4) months to complete, and only after Plaintiff and Izquierdo complained to City Personnel about the delay was the investigation concluded.

19. Plaintiff and Officer Izquierdo were advised that Sergeant Wells was disciplined for his comments.

20. Sergeant Wells received only a written reprimand for his comments/actions.

21. Sergeant Wells was subsequently transferred to a position in the Chief's office as the Department spokesperson, while Plaintiff and Officer Izquierdo were demoted and transferred to the Special Operations Division, F Platoon Squad, and assigned to street patrol duties. Officer Counts, however, who opted not to file the complaint against Sergeant Wells, remained in his position in the Crime Free Housing Division.

B-4

22.    Plaintiff approached Captain Cummings and asked him why Officer Counts was chosen to remain in the Crime Free Housing Division while Plaintiff was assigned to street patrol duty, to which Captain Cummings responded, "Because I am the Captain and he [Counts] is my choice."

23.    In or around June of 2001, Plaintiff was officially assigned to F Platoon under the direction of Captain Marlyn Dietz and Lieutenant Mitchell Rock, both of whom are close friends of Sergeant Wells.

24.    Shortly thereafter, Plaintiff was given an assignment by Lieutenant Rock wherein he was to park his patrol car in the 1200 block of West 6th Street, Wilmington, Delaware, and remain there for eight (8) hours every day with the exception of one (1) break. Plaintiff was advised that the purpose of the assignment was that his presence there would hopefully thwart and/or discourage the sale of drugs in that area by local drug dealers. Plaintiff was also instructed not to enforce any laws or make arrests; that his presence there alone would be enough to curb drug sales in that area. Plaintiff was assigned to this duty for the entire summer of 2001.

25.    Upon his return from vacation in the summer of 2001, Plaintiff was once again assigned to the aforementioned task.

26.    In or around the first week of September of 2001, Plaintiff was called into Lieutenant Rock's office, along with Sergeant Corey Staats. Rock asked Plaintiff what his problem was and why he had not made any arrests or given out any tickets all summer. Plaintiff reminded Rock that he was merely doing as he was instructed by Rock; that he was not to enforce any laws or make any arrests, but was there to curb the drug sales in the area. Rock called Plaintiff a "liar" and told him he had a "bad

B-5

5

attitude." Rock also called Plaintiff "lazy" and told him that if he "didn't start putting out some numbers, [Rock would] transfer [Plaintiff] back to patrol [duty]."

27. Shortly after this meeting, Plaintiff and Officer Izquierdo were assigned together for street duty. At the end of that month, Plaintiff and Officer Izquierdo were the two (2) top producers of arrests and traffic tickets in their division.

28. In or about October of 2001, Plaintiff was once again called into Lieutenant Rock's office regarding an incident in the rear parking lot of the Department's gas station. While Plaintiff was fueling his patrol vehicle, Lieutenant Rock walked past him, approximately 50-60 feet away, and entered the police staff garage. Rock said something to Plaintiff, but Plaintiff could not hear him so Plaintiff waved to Rock.

29. As Plaintiff was pulling out of the lot, Lieutenant Rock summoned him to his office on the police radio. When Plaintiff responded to Rock's office, Rock asked Plaintiff what his problem was and why he "flipped [him] off." Plaintiff told Rock he did not flip him off; that he waved to him to acknowledge that he saw him, and told Rock that he could not hear what Rock had said to him.

30. Rock began shouting at Plaintiff and told Plaintiff that he (Rock) was his (Plaintiff's) boss and a lieutenant and that he (Rock) was free to discipline Plaintiff as he saw fit. Plaintiff told Rock that he did not have a problem with being disciplined if he did something wrong. Rock then dismissed Plaintiff from his office.

31. In or around October of 2001, Captain Dietz attended the daily roll call to discuss a new work schedule for F Platoon. Later that same day, Plaintiff and a few other officers were standing in the House Sergeant's office discussing the new schedule. Captain Dietz entered the room and joined in the discussion with the officers.

## B-6

32.    Shortly thereafter, Plaintiff was in the roll call room reviewing the overtime book when he was approached by Captain Dietz. Dietz stated to Plaintiff, "I hear you don't like the new schedule," to which Plaintiff responded in the affirmative, advising Dietz that he and the other officers did not like the new schedule because it was not very convenient to him or the other officers noting that the new schedule severely limited the amount of time they were going to be able to spend with their families. Dietz then left the room without comment.

33.    Later that evening, Plaintiff was called into Lieutenant Rock's office. Rock advised Plaintiff that he was approached by Captain Dietz and was informed that Plaintiff approached Dietz to discuss the new work schedule without going through the proper chain of command. Plaintiff informed Rock that it was actually Dietz who initiated the conversation. Rock informed Plaintiff that the next time he spoke with Captain Dietz without going through the proper chain of command, Rock would write charges up against Plaintiff.

34.    Near the end of October of 2001, Plaintiff was summoned by Captain Cummings and advised that he was being transferred back to the Patrol Division in November. When Plaintiff asked why he was being transferred back to this division, Cummings said that it was out of his hands and that Captain Dietz made the final decision.

35.    Also, in October of 2001, Lieutenant Rock approached Plaintiff's soon-to-be supervisor, Sergeant Morrissey, and advised him that he should watch out for Plaintiff because Plaintiff is a "no good piece of shit."

36.    In or around November of 2001, Plaintiff was transferred back to the Patrol Division and assigned to street duties with E Platoon. While in this division, Plaintiff

B-7

7

submitted a request through the proper chain of command to meet with the Director of Public Safety, James N. Mosely, who maintained an open door policy.

37. In or around December of 2001, Plaintiff was summoned by Captain Dietz who wanted to know why Plaintiff requested to meet with the Director of Public Safety. Plaintiff informed Captain Dietz that it was a personal matter that he only wanted to discuss with the Director of Public Safety.

38. Plaintiff was given permission to meet with the Director of Public Safety; the meeting took place in or around mid-December of 2001. In that meeting, Plaintiff informed the Director that he had been retaliated against for making a complaint against a supervisor and was demoted (transferred back to patrol), despite the fact that he was the senior officer, and most qualified officer, in his previous position.

39. Also during this meeting with the Director, Plaintiff presented a copy of the Department's transfer policy to demonstrate that he was the most qualified individual for the position and, according to policy, should have remained in that position. The Director told Plaintiff that he was not even aware that such a policy existed.

40. The Director also asked Plaintiff what other information he had to support his allegations. Plaintiff informed the Director that a fellow officer could support his claims.

41. The Director advised Plaintiff that he would investigate his allegations and get back to him. Plaintiff has yet to receive a response.

42. Plaintiff submitted a written request for a transfer out of the Patrol Division on or about February 21, 2002 and was once again denied without any supporting explanation.

B-8

43. Concurrently, while in the Patrol Division under the supervision of Sergeant Michael Morrissey, Plaintiff was nominated for the Kiwanis Award for outstanding work in his division (E Platoon). Only one (1) other officer was nominated for this award.

44. Sergeant Morrissey informed Plaintiff that he did not receive the award and that Inspector Wright told him to tell Plaintiff, "better luck next time."

45. From the time Plaintiff initially filed his complaint about Sergeant Wells, he began to experience "the cold-shoulder-treatment" from his superiors. Plaintiff soon found himself shut out by his supervisors; he has been virtually ignored on a daily basis. Plaintiff's superiors have continuously refused to even acknowledge that he is in the room or say hello to him in an elevator. In group conversations, Plaintiff is invariably not even recognized by his supervisors/superiors. Plaintiff has been experiencing the "cold-shoulder-treatment" daily throughout the remainder of 2001, all of 2002, 2003, 2004, and 2005 and this practice continues as of the filing of this action.

46. On or about May 10, 2004, Plaintiff once again submitted a written request for a transfer out of the Patrol Division. Plaintiff specifically requested to be returned to his day work position in the Special Operations Division. Captain Cummings advised Plaintiff that he was aware of his request and would "see what [he could] do."

47. Plaintiff requested another transfer in December of 2005 to the position of Sector Specialist in F Platoon. However, his transfer request was subsequently denied.

48. In total, Plaintiff submitted nine (9) transfer requests since 2002.

49. Despite a superior evaluation from his immediate supervisor, Plaintiff's request for a transfer has still not been granted as of the filing of this Complaint.

B-9

9

50. Thereafter, Plaintiff filed a claim of discrimination simultaneously with the Delaware Department of Labor and the Equal Employment Opportunity Commission (EEOC) against the Wilmington Police Department on the basis of retaliation alleging that after he complained about racial discrimination to the Wilmington Police Department in 2001, he was and continues to be denied promotional opportunities, and continuously scrutinized and harassed by his employer.

51. The Delaware Department of Labor issued a reasonable cause finding in this matter on February 27, 2006. A copy of the DDOL's Investigative Memorandum received by the undersigned counsel on March 3, 2006 is attached hereto as Exhibit "A".

52. The United States Department of Justice issued a Right to Sue Letter to Plaintiff on June 5, 2006. A copy of this Right to Sue Letter, received first by the undersigned attorney on June 9, 2006, is attached hereto as Exhibit "B".

## COUNT I
### Retaliation

53. Defendant intentionally retaliated against Plaintiff for his complaints against a supervisor in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 200 e *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, codified as 42 U.S.C. § 2000E-(5)(f)(1) and (g) when it:

(a) denied Plaintiff promotions and/or transfer requests despite his qualifications;

(b) demoted Plaintiff from the Equal Housing Division to street patrol duties in F Platoon after filing his complaint against Sergeant Wells, a supervisor;

(c) forced Plaintiff to work in a hostile work environment;

(d) demoted Plaintiff once again in November of 2001 back to street patrol duties;

B-10

(e) disciplined and/or threatened to discipline Plaintiff for requesting a meeting with the Director of Public Safety; and,

(f) refused to transfer Plaintiff to the position(s) he requested after his meeting with the Director of Public Safety, despite his qualifications and superior performance evaluations.

54. Defendant acted with retaliatory motive and the reasons provided by Defendants for failing to promote and/or transfer Plaintiff are pretextual.

55. As a direct and proximate result of Defendant's unlawful retaliation against Plaintiff, Plaintiff has suffered, and continues to suffer, a loss of employment opportunities, loss of considerable pay: past, present, future and prospective, loss of other employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, mental anguish, embarrassment, emotional pain and damages to his reputation.

## COUNT II
### Retaliation – Failure to Promote

56. Plaintiff repeats, re-alleges and incorporates by reference herein paragraphs 1-55.

57. Defendant denied Plaintiff numerous opportunities for career advancement despite his qualifications.

58. Defendant denied Plaintiff career advancement opportunities by denying his requests for transfers in addition to opportunities for promotion in rank.

59. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered, and continues to suffer, a loss of employment opportunities, loss of considerable pay: past, present, future and prospective, loss of other employment

## B-11

benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, mental anguish, embarrassment, emotional pain and damages to his reputation.

60.    Defendant's retaliation was willful, wanton and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

61.    The above-stated damages were not the result of any act or omission on the part of the Plaintiff.

**COUNT III**
**Breach of the Covenant of Good Faith and Fair Dealing**

62.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 61 of this Complaint by reference as though fully set forth at length herein.

63.    The actions of the Defendant constitute a violation of the Covenant of Good Faith and Fair Dealing implicit in every employment agreement.

64.    Defendant breached the Covenant of Good Faith and Fair Dealing to Plaintiff by failing to promote him and by discriminating against him based upon his race.

65.    Defendant's retaliation was willful, wanton, and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

66.    The above-stated damages were not the result of any act or omission on the part of Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Issue a judgment against the Defendant, City of Wilmington Department of Police, and in his favor to provide appropriate back pay with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief

B-12

necessary for damages suffered by Plaintiff and to eradicate the effects of Defendant's actions and unlawful employment practices;

(b) Issue a judgment against the Defendant, City of Wilmington Department of Police, and in his favor ordering Defendants to provide compensation for non-pecuniary losses, including pain, suffering, and humiliation, in amounts to be determined at trial, and other affirmative relief necessary for damages suffered by Plaintiff and to eradicate the effects of Defendant's actions and unlawful employment practices;

(c) Issue a judgment against Defendant, City of Wilmington Department of Police, and in his favor ordering Defendant to provide compensation for past and future pecuniary losses, in amounts to be determined at trial;

(d) Issue a judgment against Defendant, City of Wilmington Department of Police , and in his favor ordering Defendant to pay punitive damages for its malicious and/or reckless conduct in amounts to be determined at trial;

(e) Issue a judgment against City of Wilmington Department of Police, and in his favor ordering the Defendant to pay the costs of reasonable attorneys' fees and expenses; and,

(f) Issue a judgment against Defendant, City of Wilmington Department of Police, and in his favor for damages suffered by Plaintiff as a result of Defendant's actions, including, but not limited to, back pay, front pay, benefits (both retroactively and prospectively), advancement in rank, compensatory damages, punitive damages, attorneys' fees, the cost of this litigation, pre-judgment and

B–13

post-judgment interest and such other relief as this Honorable Court deems just

and proper.

MAROLIS EDELSTEIN

_Jeffrey K. Martin, Esquire (#2407)_
Lori A. Brewington, Esquire (#4522)
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680 phone
(302) 777-4682 facsimile
Attorneys for Plaintiff William P. Babby, III

Dated:  September 6, 2006

B-14

EXHIBIT A

STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS – DISCRIMINATION PROGRAM

State Case No.:05040145W

Mr. William P. Babby III
1613 N. Jackson Street
Wilmington, DE 19806
vs.
Wilmington Department of Police
800 N. French Street
Wilmington, DE 19801

## FINAL DETERMINATION AND RIGHT TO SUE NOTICE

Pursuant to 19 Del. C. § 710, *et seq.*, the parties in the above-captioned matter are hereby Noticed of the Department's Final Determination and Right to Sue Notice, as follows:

### *Reasonable Cause Determination and Notice of Mandatory Conciliation.*

In this case, the Department has completed its investigation and found that there is reasonable cause to believe that an unlawful employment practice has occurred. Under the provisions of the law, the parties are now required to engage in mandatory conciliation with Melinda Shelton. Please be prepared to appear for conciliation on the following date and time Monday, March 20, 2006 @ 10am at the location of 4425 N. Market Street Wilmington, DE 19802.

Your cooperation and good faith effort is anticipated. Your corresponding Delaware Right to Sue Notice will be effective one day after your compliance with the conciliation effort.

The reasonable cause finding is based primarily on the following facts:
In this discrimination case, Charging Party must show that Respondent discriminated against him by subjecting him to racial harassment because of his association in a protected class. Charging Party must further show that he filed a formal complaint of discrimination with Respondent and as a result Respondent took adverse employment action against Charging Party. Charging Party can show this by demonstrating that he was subjected to racial harassment and after reporting the harassment subjected to more severe treatment than his similarly situated coworkers. The evidence and information obtained during the investigation reveals that Charging Party did submit a written complaint of discrimination to Respondent and no immediate action was taken to address and/or eliminate the behavior. The evidence reveals that because of this delay in addressing the complaint of discrimination Charging Party felt forced to follow up on this complaint by meeting with a higher official of Respondent's organization. This resulted in Charging Party being reassigned to a much less desirable work assignment with a much less desirable work schedule. Finally, the evidence and information obtained reveals that the named comparators were assigned to more favorable work assignment and more desirable work schedules. Therefore, Charging Party has established that illegal discrimination and retaliation occurred.

This Final Determination is hereby issued on behalf of the Department of Labor, Division of Industrial Affairs, Discrimination Program. See the attached Notice of Rights.

*Julie K. Cutler*

2/27/06
Date issued

Julie Klein Cutler, Administrator

3/28/06
Date conciliation completed

*Julie Klein Cutler*

Julie Klein Cutler, Administrator

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

DOL Form C-12RC : 01/06

B–16

EXHIBIT B

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
3510   4679

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

June 5, 2006

Mr. William P. Babby, III
c/o Lori A. Brewington, Esquire
Law Offices of Margolis & Edelstein
Attorneys at Law
1509 Gilpin Ave.
Wilmington, DE  19806

RECEIVED

JUN 0 9 2006

BY:_____

Re:  EEOC Charge Against Wilmington Police Dept.
     No. 170200500306

Dear Mr. Babby, III:

Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since
the date the Commission assumed jurisdiction over the charge, and no
suit based thereon has been filed by this Department, and because
you through your attorney have specifically requested this Notice,
you are hereby notified that you have the right to institute a civil
action under Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

Sincerely,

Wan J. Kim
Assistant Attorney General
Civil Rights Division

by  *Karen L. Ferguson*

Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc:  Philadelphia District Office, EEOC
     Wilmington Police Dept.

B–18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WILLIAM P. BABBY, III,               :
                                     :
              Plaintiff,             :        C.A. No. 06-552 JJF
                                     :
        v.                           :        TRIAL BY JURY DEMANDED
                                     :
CITY OF WILMINGTON                   :
DEPARTMENT OF POLICE,                :
                                     :
              Defendant.             :

## ANSWER

## PARTIES

1.      Admitted in part.  Defendant admits Plaintiff's residence as stated therein; Defendant does not have sufficient information to admit or deny that Plaintiff is of Hispanic descent.

2.      Denied.  By way of further explanation, Defendant denies that the City of Wilmington Department of Police is a municipal corporation, and further denies that the Department of Police has the capacity to be sued.  By way of further explanation, because the City of Wilmington Police Department does not have the capacity to be sued, it does not have a registered agent for service of process.

3.      Admitted.

## JURISDICTION

4. Admitted that this Court has subject matter jurisdiction.  Denied that this Court has personal jurisdiction over Defendant, which does not have the capacity to be sued.

5.      Admitted.

6.      Denied as stated.  Defendant admits that the September 2004 evaluation may have

B–19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WILLIAM P. BABBY, III,                    :
                                          :
            Plaintiff,                     :
                                          :        C.A. No.  06-552 JJF
v.                                        :
                                          :        TRIAL BY JURY DEMANDED
CITY OF WILMINGTON                        :        ⎯⎯
DEPARTMENT OF POLICE,                     :
                                          :
            Defendant.                     :

## ANSWER

## PARTIES

    1.     Admitted in part.  Defendant admits Plaintiff's residence as stated therein;
Defendant does not have sufficient information to admit or deny that Plaintiff is of Hispanic
descent.

    2.     Denied.  By way of further explanation, Defendant denies that the City of
Wilmington Department of Police is a municipal corporation, and further denies that the
Department of Police has the capacity to be sued.  By way of further explanation, because the
City of Wilmington Police Department does not have the capacity to be sued, it does not have a
registered agent for service of process.

    3.     Admitted.

## JURISDICTION

    4. Admitted that this Court has subject matter jurisdiction.  Denied that this Court has
personal jurisdiction over Defendant, which does not have the capacity to be sued.

    5.     Admitted.

    6.     Denied as stated.  Defendant admits that the September 2004 evaluation may have

been favorable, but denies that Plaintiff received consistently standard to superior evaluations. By way of further explanation, Plaintiff has a disciplinary record with the Police Department's Office of Professional Standards.

7.     Admitted.

## FACTUAL BACKGROUND

8.     Defendant admits that Plaintiff temporarily filled John Lucey's job duties in the Human Resources Division while Lucey was out of work due to an injury. Defendant admits that Plaintiff's job performance in those capacities was adequate, but denies that Plaintiff was praised on a daily basis for his performance. Defendant admits that Plaintiff's written request for permanent transfers to these positions were denied because John Lucey returned to work after recovering from his injury and resumed the duties that Plaintiff filled in his absence.

9.     Denied as stated. By way of further explanation, Cummings did not ask Plaintiff to put in a transfer request to work in his division as a Crime Free Housing Officer. Cummings merely asked Plaintiff, Alfred Izquierdo and Tashawn Counts if they would be interested in working in his division as Crime Free Housing Officers.

10.     Denied as stated. Defendant denies that anyone requested Plaintiff to submit a transfer request.     Defendant admits that Plaintiff was accepted in Cummings' division. Defendant denies that written requests were "just a formality" to get Plaintiff into Cummings' division

11.     Admitted.

12.     Admitted in part; denied as stated. Defendant admits that said officers attended the conference described therein, and Defendant further admits that Lt. Wells made a singular comment about the habits of Hispanics. Defendant denies Plaintiff's characterization of this

## B-20

singular comment as "various", "racially insensitive", or "derogatory".

13.    Admitted.

14.    Admitted in part; denied in part. Defendant denies that Cummings tried to dissuaded anyone from filing a formal complaint against Sgt. Wells. Defendant admits that Cummings suggested that Plaintiff, Izquierdo and Counts all meet to discuss a resolution of this issue.

15.    Admitted in part; denied in part. Defendant admits that the meeting took place in May of 2001. Defendant denies that there was any "outcome" at this point in time, as the investigation was still on-going.

16.    Admitted.

17.    Admitted. By way of further explanation, the investigation was initially assigned to Cummings, but was reassigned to Lt. Henry while Cummings had to go on training at the FBI Academy in Quantico, Virginia. The investigation was assigned to Lt. Henry so that it could move forward in Cummings' absence. Upon Cummings' return from the FBI Academy, he concluded the investigation and made his final recommendation.

18.    Admitted in part; denied as stated. Admitted that the investigation spanned four months in duration. Denied that Plaintiff's or Izquierdo's complaints to the City's Personnel Department prompted the investigation to conclude.

19.    Admitted.

20.    Admitted.

21.    Admitted that Wells was transferred to the position of Public Information Officer. Admitted that Izquierdo and Babby were transferred to F squad, but denied that such transfer is a demotion.

22.    Admitted in part; denied in part. Defendant admits that Plaintiff approached Cummings and asked why Counts was chosen to remain in the Crime Free Housing Division. Defendant denies the quoted response that Plaintiff attributes to Cummings in this averment.

23.    Admitted.

24.    Denied.

25.    Denied.

26.    Admitted in part; denied in part. Admitted that Plaintiff was called into Lt. Rock's office, along with Sergeant Corey Staats, to discuss Plaintiff's lack of arrests and tickets over the entire summer. Denied that Plaintiff said he was merely doing as instructed. Denied that Lt. Rock called Plaintiff a "liar" or "lazy". Admitted that Lt. Rock questioned Plaintiff about his bad attitude. Admitted that Lt. Rock told Plaintiff that his statistics would need to improve, or that he would be transferred.

27.    Admitted that Plaintiff and Izquierdo were assigned together for street duty. Defendant is without sufficient information to admit or deny that Plaintiff and Izquierdo were the top two producers of arrests and traffic tickets in their division.

28.    Defendant admits that Plaintiff was insubordinate to a higher ranking member of the Police Department as described in this averment, and in violation of the White Book.

29.    Admitted that Lt. Rock summoned Plaintiff to discuss his insubordination, which is described more fully in Paragraph 29 of Plaintiff's Complaint, and it is further admitted that Plaintiff attempted to make excuses for his insubordination, as described in this averment.

30.    Denied as stated. It is denied that Lt. Rock addressed Plaintiff in the manner described in averment. It is admitted that Lt. Rock discussed with Plaintiff his insubordination, and further discussed the range of disciplinary consequences for insubordination.

31.    Defendant does not have sufficient information to admit or deny this averment.

32.    Defendant does not have sufficient information to admit or deny this averment.

33.    Defendant does not have sufficient information to admit or deny whether Plaintiff was summoned to Lt. Rock's office for the discussion described in this averment. Defendant admits that it is a chargeable offense for Plaintiff to bypass the chain of command.

34.    Denied as stated. By way of further explanation, Captain Dietz, in his then-capacity as commanding officer of the patrol division, forwarded the transfer request to then-Inspector James Wright, who, in turn, forwarded it the Chief of Police for final approval.

35.    Plaintiff does not have sufficient information to admit or deny this averment.

36.    Admitted.

37.    Denied as stated. By way of further explanation, Director Mosley's open door policy requires the employee to notify his supervisors of his intent to meet with Director Mosley and explain the purpose of that meeting. In accordance with that policy, Captain Dietz asked Plaintiff the reason why he requested to meet with Director Mosley. Plaintiff responded that it was for a personal matter, and no further questions were asked.

38.    Admitted in part; denied in part. Defendant admits that Plaintiff was given permission to meet with the Director. Defendant admits that Plaintiff complained about his transfer, but Defendant does not have sufficient information to admit or deny whether Babby complained about retaliation. Defendant denies that the transfer is a demotion, and also denies that Plaintiff was the most qualified officer in his previous position.

39.    Admitted in part; denied in part. Defendant does not have sufficient information to admit or deny whether Plaintiff presented to the Director a copy of the Department's transfer policy. Defendant denies that Plaintiff was the most qualified individual for the position that he

B-23

sought, and further denies that the Department's transfer policy would allow Plaintiff to remain in the position that he sought.

40.    Defendant does not have sufficient information to admit or deny this averment. By way of further explanation, Director Mosley does not recall this conversation in his 2001 meeting with Plaintiff.

41.    Admitted that the Director advised that he would investigate the allegations. By way of further explanation, the Director's investigation did not corroborate any of Plaintiff's allegations.

42.    Admitted.

43.    Defendant does not have sufficient information to admit or deny this averment.

44.    Defendant does not have sufficient information to admit or deny this averment.

45.    Defendant does not have sufficient information to admit or deny what Plaintiff characterizes as "cold shoulder treatment". Defendant denies the balance of the averment.

46.    Admitted. By way of further explanation, there was no vacant position in the Special Operations Division at this time, and so Plaintiff could not be transferred to a job that did not exist.

47.    Admitted.

48.    Defendant admits that Plaintiff submitted transfer requests, but Defendant does not have sufficient information to confirm or deny the exact number of requests.

49.    Defendant does not have sufficient information to admit or deny this averment. It is not clear what immediate supervisor or transfer request Plaintiff is describing in this averment.

50.    Defendant admits that Plaintiff filed a discrimination complaint with the EEOC, but Defendant denies the substance of that complaint. The balance of the averment is denied.

B-24

51.    Admitted that the DDOL issued a reasonable cause finding; denied that there is reasonable cause in this matter.

52.    Admitted.

## COUNT I - Retaliation

53.    Denied in full and as to each sub-part.

   (a)    Denied.

   (b)    Denied. By way of further explanation, the Equal Housing Division was reduced in size due to external budgetary and operational constraints, therefore, Plaintiff could not remain in a job that no longer existed.

   (c)    Denied.

   (d)    Admitted that Plaintiff was transferred to street patrol; denied that this transfer constitutes a demotion.

   (e)    Denied. By way of further explanation, bypassing the chain of command is an offense for which discipline can be administered, and Director Mosley's written open door policy prescribed conferring with immediate supervisors prior to meeting with him.

   (f)    Denied.

54.    Denied.

55.    Denied.

## COUNT II - Retaliation - Failure to Promote

56.    Defendant incorporates its responses in Paragraphs 1 through 55 as if set forth herein at length.

57.    Denied.

B-25

58. Denied.

59. Denied.

60. Denied.

61. Denied.

## COUNT III - Breach of the Covenant of Good Faith and Fair Dealing

62. Defendant incorporates its responses in Paragraphs 1 through 61 as if set forth at length.

63. Denied.

64. Denied. By way of further explanation, Defendant's liability for such a breach would be barred by the exclusivity provision of 19 Del.C. §712(b).

65. Denied.

66. Denied.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

67. Plaintiff's Complaint fails to set forth a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

68. Defendant is not a juridical entity that has the capacity to be sued.

### THIRD AFFIRMATIVE DEFENSE

69. Plaintiff has failed to join all necessary parties, in contravention of Fed.R.Civ.P. 19(a).

### FOURTH AFFIRMATIVE DEFENSE

70. Insufficiency of service of process, in contravention of Fed.R.Civ.P. 4(j)(2).

### FIFTH AFFIRMATIVE DEFENSE

71. Lack of service of process, in contravention of Fed.R.Civ.P. 4(j)(2).

B-26

## SIXTH AFFIRMATIVE DEFENSE

72.    Plaintiff's state law claim for breach of the implied covenant of good faith and fair is barred by the exclusivity of 19 Del.C. §712(b).

## SEVENTH AFFIRMATIVE DEFENSE

73.    The actions and conduct of Defendant were undertaken without malice or discriminatory intent and in the good faith performance of its official duties.

## EIGHTH AFFIRMATIVE DEFENSE

74.    The actions and conduct of Defendant were consistent with the City of Wilmington's equal employment opportunity policy.

## NINTH AFFIRMATIVE DEFENSE

75.    Plaintiff is not entitled to punitive damages, nor is Defendant subject to an award of punitive damages.

## TENTH AFFIRMATIVE DEFENSE

76.    Defendant is not vicariously liable for any alleged acts of discrimination committed by any individuals named in the Complaint, even if proven.

## ELEVENTH AFFIRMATIVE DEFENSE

77.    None of the allegations set forth in Plaintiff's Complaint constitutes a "materially adverse change" in Plaintiff's employment.

## TWELFTH AFFIRMATIVE DEFENSE

78.    None of the allegations set forth in Plaintiff's Complaint constitutes a "tangible employment action."

## THIRTEENTH AFFIRMATIVE DEFENSE

79.  Plaintiff was not the most qualified candidate for any of the job positions that he seeks/sought.

## FOURTEENTH AFFIRMATIVE DEFENSE

80.  Plaintiff was not a member of a protected class.

## FIFTEENTH AFFIRMATIVE DEFENSE

81.  Plaintiff was treated similarly to police officers of different races and national origins.

## SIXTEENTH AFFIRMATIVE DEFENSE

82.  Plaintiff's race and/or national origin were not determining factors in any of the personnel decisions that form the basis of Plaintiff's Complaint.

## SEVENTEENTH AFFIRMATIVE DEFENSE

83.  All actions taken by Defendant were job related and consistent with a business necessity.

## EIGHTEENTH AFFIRMATIVE DEFENSE

84.  Defendant's liability, if any, is limited by 10 Del. C. §4013.

## NINETEENTH AFFIRMATIVE DEFENSE

85.  Plaintiff has failed to mitigate his damages, if any.

## TWENTIETH AFFIRMATIVE DEFENSE

86.  Plaintiff's state law claims, if any, are barred by 10 Del. C. §4011.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

87.  Lack of protected activity.

B-28

**WHEREFORE**, Defendant prays that this Honorable Court dismiss Plaintiff's Complaint, assess costs and reasonable attorney's fees against Plaintiff, and order such other relief as this Court deems appropriate.

        /s/ Alex J. Mili, Jr.
Alex J. Mili, Jr., Esquire (DE Bar I.D. #4125)
Senior Assistant City Solicitor
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
Attorney for Defendants

Dated: October 4, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WILLIAM P. BABBY, III,                    :
                                          :
                    Plaintiff,            :
                                          :        C.A. No. 06-552 JJF
                                          :        TRIAL BY JURY DEMANDED
v.                                        :
                                          :
CITY OF WILMINGTON                        :
DEPARTMENT OF POLICE,                     :
                                          :
                    Defendants.           :

## CERTIFICATE OF SERVICE

I, Alex J. Mili, Jr., Esquire, hereby certify that on this 4th day of October, 2006, I

electronically filed Defendant's Answer to the Complaint with the Clerk of Court using CM/ECF

which will send notification of such filing(s) to the following and that these documents are available

for viewing and downloading from CM/ECF:

> Jeffrey K. Martin, Esquire
> Lori A. Brewington, Esquire
> Margolis Edelstein
> 1509 Gilpin Avenue
> Wilmington, DE 19806

CITY OF WILMINGTON LAW DEPARTMENT


/s/ Alex J. Mili, Jr.
Alex J. Mili, Jr., Esquire (I.D. #4125)
Senior Assistant City Solicitor
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendants

B–30

OFFICE OF PUBLIC SAFETY

DEPARTMENT OF POLICE

WILMINGTON, DELAWARE

<u>DEPARTMENTAL INFORMATION</u>

TO:      Michael J. Szczerba
              Chief of Police

FROM:    Cpl. William P. Babby III
              Special Operations Division

DATE:     22 Aug 2001

RE:       Notification of Complaint

Sir:

    This departmental information is in regards to an incident that occurred in May 2001. The incident took place at the University of Delaware (Clayton Hall) while myself, Cpl Izqueirdo and Ptlm. Counts along with Sgt; Wells were attending a fair Housing Seminar. While we were waiting for the seminar to start, we were approached by Sgt. Wells who engaged us in general conversation. While conversing with Wells, he started to talk about the previous evening at Bernies Bar. He mentioned something about talking to a Spanish girl at the bar. Wells then apparently told the female that another off duty officer who was also at the bar said, "All Puerto Ricans have low riders and dice hanging from their mirrors." Wells then laughed briefly and then looked at Izqueird and stated, "Puerto Ricans and Mexicans are all alike."

    After hearing this statement from Wells I had to take a step back and shake my head, because I could not believe that he would even repeat such a statement especially in front of a Puerto Rican officer. I then looked at Izqueirdo and could see a look of disbelief in his facial expression. I could tell that he was offended by the remark. We then had to sit down for the seminar and we did not get to discuss the matter to a break later in the day.

    When we had the first opportunity to discuss the remark, we were all shocked that not only is Wells a supervisor for our department, but he would have the gall to make such a statement at a fair housing seminar which specifically talks about discrimination against minorities. I was also offended by the remark, because not many people here are aware of the fact that I was adopted and my biological mother and grandmother are Spanish. I am proud of my culture and to hear someone who I'm suppose to respect make a statement like that is offensive and unprofessional.

    Officer Izqueirdo advised us that he was going to call a meeting with the Captain about this incident and he wanted us to be present to address the statement and some other concerns.

# B-31

We had the meeting in the special operations division with myself, Izqueirdo, Counts Wells and Captain Cummings. We were all given an opportunity to express are feelings toward the statement and the problems that we have with Sgt. Wells. I can only address the conflicts I have had with Sgt. Wells since I have worked under him. The first thing is I do not like the way Sgt. Wells would address me when he was talking to me. He would always address me as if I am beneath him. He would ask me to come in his office by saying, "Babby come in here!" Talking to me as if I'm a child. I am 33years old and I don't expect to be talked down to by Sgt. Wells or any other supervisor. If I do something wrong I will take a reprimand for my mistake.

On another occasion I was in the building and did not have my radio on, It happens to all of us. But when Sgt. Wells could not raise me and had to come down (tho) the roll call room, he threw the door open and yelled, "Babby do you have your radio on, I've been trying to call you!" "When you are in this building keep your radio on!" I am the first to admit, it was my mistake, but the room was filled with other officers and once again Wells managed to make me feel humiliated in front of my coworkers. It seems to me that Sgt. Wells has to make it clear to myself and co-workers that he is the boss. His demeanor and abrasive remarks when addressing myself and co-workers is unprofessional.

Since being moved to the frank unit for the summer, I have had very little contact with Sgt. Wells in the work place. I cannot say that my contact with him has been good or bad, it has been limited. In my opinion I feel that the statement that Sgt.Wells made that day in my presence was extremely inappropriate. I feel that by making this statement, he fosters a dislike for Puerto Ricans and Mexicans and as a supervisor and officer, he should have known that a statement like that was sure to offend someone who heard it.

B-32

| CHARGE OF DISCRIMINATION | ENTER CHARGE NUMBER |
|---|---|
| This form is affected by the Privacy Act of 1974 | ☐ FEPA<br>☐ EEOC |
| **Delaware Department of Labor** | and **EEOC** (if applicable) |

| NAME (Indicate Mr., Mrs., Ms) | HOME TELEPHONE NO. (Include Area Code) |
|---|---|
| William P. Babby III | 302 575-0274 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1613 north Jackson Street | Wilmington DE 19806   NCC | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one, list below.)*

| NAME | NO. OF EMPLOYEES OR | TELEPHONE NUMBER (Incl. Area Code) |
|---|---|---|
| Wilmington Department of Police | MEMBERS 100+ | 302 576-3670 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 800 north French Street Wilmington, DE 19801 | |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| | |

| ☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ AGE<br><br>☒ RETALIATION   ☐ DISABILITY ☐ OTHER (Specify) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST   5/1/2001<br>LATEST     4/13/2005<br>☒ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s):

Jurisdiction: Charging Party employed at Respondent's Delaware facility since 1/9/89 as a police officer

Charging Party's protected class: Retaliation, Race

Adverse employment action: Harassment, Denied promotion

Brief statement of allegations: Charging Party states that he has been discriminated against based on retaliation and Retaliated Against when after he complained about racial discrimination to the Respondent in year 2001, he has been continuously scrutinized and harassed by the Respondent. Specifically Charging Party states that he was retaliated against when he was transferred from special operations to patrol officer. More so, Charging Party states that he has been ostracized by the Respondent because of his previous complaints of racial discrimination.

Respondent's explanation: Charging Party was advised that the Director of public safety would look into the matter but no conclusion was ever established.

Applicable law(s): Title VII Of The Civil Rights Act Of 1964, As Amended and The Delaware Discrimination in Emploment Act

Comparator(s) or other specific reason(s) for alleging discrimination: Charging Party states that all current disciplinary actions are a result of his internal discrimination complaint. Charging Party states that his initial complaint was not addressed or investigated for (4) months.

Additional information and verification of these facts are provided by the attached Verification.

| ☒ | I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SIGNATURE OF COMPLAINANT<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|---|

DDOL FORM B-05
REV 01-05

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

# DATA FORM - CONFIDENTIAL

| | |
|---|---|
| Charge #: | Date: 4/13/05 |

## Charging Party Information

**Name:** William P. Babby III

**Street:** 1613 north Jackson Street **City:** Wilmington

**County:** NCC **State:** DE **Zip:** 19806

**Tel (H):** 302 575-0274 **Tel (W):** 302 576-3670

**DOB:** 4/16/1968 **Sex:** male **Race:** White

**Nat'l Origin:** U.S. **SSN:** 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

## Contact Person

**Name:** Bill Babby
**Tel (H):** 302 652-0805 **Tel (W):** 302 545-9762
**Address:** 1822 lovering Ave Wilmington DE 19806

## Employment Information

**Date of Hire:** 1/9/89
**Date of Termination:** N/A
**Date of Alleged Violation:** 3/9/05
**Relief Sought:** other damages
**Check One:** ☒ working ☐ not working ☐ sought employment at

## Respondent Information

**Name:** Wilmington Department of Police
**Address:** 800 north French Street Wilmington, DE 19801
**Type of Business:** Law Enforcement
**Size of Business:** 100+

## Basic Charge Data

| | |
|---|---|
| Receiving Office: 17C | Intake Unit: 1 |
| Accountable Office: 17C | Intake Officer: Trr |
| Initial Inquiry: 3/9/05 | Respondent Type: E |
| Received this Office: 4/13/05 | County: 003 |
| Source of Complaint: A | SMSA: 9160 |
| Federal Referral Transfer: | SIC: 810 |
| Alleged Basis: OR,RO | Federal Agency: |
| | Alleged Issues: T2,D3 H1 P3 A3 |

# B-34

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

WILLIAM P. BABBY, III                      :
                                :     C.A. NO.: 06-522 JJF
        Plaintiff,                        :
                                  :
      v.                                          :
                                  :
CITY OF WILMINGTON                    :
DEPARTMENT OF POLICE,               :
                                  :
        Defendant.                      :

## AFFIDAVIT OF MICHAEL J. MORRISSEY

STATE OF DELAWARE      :
                       :     SS.
NEW CASTLE COUNTY    :

I, MICHAEL J. MORRISSEY, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

1.     I have been employed as a law enforcement officer with the Wilmington Police Department since 1989.

2.     I currently hold the rank of Sergeant in the Wilmington Police Department.

3.     I supervised Plaintiff Officer William P. Babby, III ("Babby") while Babby worked patrol in E Platoon beginning in the fall of 2001 for a period of approximately two years.

4.     During this time of my supervision, I found that Babby was an excellent police officer and I nominated him for the Kiwanis Award for outstanding service as a

B-35

police officer.  A copy of my nomination of Babby for the Kiwanis Award is attached hereto as Exhibit 1.

5.     Based upon Babby's performance of his duties, I advised him that he should be considered for the position of Detective in the Wilmington Police Department.

6.     Shortly prior to becoming Babby's supervisor in the fall of 2001, I was approached by Lt. Mitchell Rock advising me that I should watch out for Babby because he is "no good"; because he is a "piece of shit" and because he is "lazy".  Lt. Rock told me this on at least a few occasions.

7.     I was questioned by Assistant City Solicitor Alex Mili about whether Lt. Rock had said to me the things stated in the previous paragraph about Babby.  I advised Mr. Mili that Lt. Rock had said these things on a few occasions.  Mili then instructed me that they would not be using me for anything in this case.


_____
MICHAEL J. MORRISSEY

SWORN AND SUBSCRIBED before me this _____ day of October, 2007.


_____
NOTARY PUBLIC


JEFFREY K. MARTIN, ESQ.
NOTARY PUBLIC
DELAWARE ATTORNEY
ID #2407
DELAWARE ATTORNEY AT LAW


B-36

CITY OF WILMINGTON
OFFICE OF PUBLIC SAFETY
DEPARTMENT OF POLICE
WILMINGTON, DELAWARE

DEPARTMENTAL INFORMATION                          ASSIGNMENT: Patrol-E

TO:        MICHAEL J. SZCZERBA
           CHIEF OF POLICE

FROM:      Master Sergeant Michael J Morrissey

DATE:      4 September 2002

RE:        Kiwanis Award Nomination (William Babby)

SIR:

I'm writing to nominate Corporal William Babby for the Kiwanis Award for Police Officer of the 3rd quarter of 2002. Corporal Babby is a dedicated, hard working police officer whose diligence, professionalism and basic concern for others have set him apart from the rest. Corporal Babby began his career with the Wilmington Department of Police in January of 1989. Since his graduation from the police academy Corporal Babby has served in the Uniform Services Division, and the Community Policing Division where he has performed at exemplary levels. Corporal Babby is currently assigned to the Uniformed Services Division E-Platoon.

During the past several months Corporal Babby has distinguished himself in many ways, which I feel reflect his outstanding qualities. Below is an outline.

On 20 February 2002 Corporal Babby responded to the area of the 600 Block of Hawley Street in reference to a man with a gun. Upon arrival in the area Corporal Babby stopped a subject in the area who fit the description of the wanted subject. A gun was located and the subject was taken into custody. While at central Corporal Babby noticed that the defendant had a piece of property in his possession that was from a city business that had been burglarized. Corporal Babby's suspicions were aroused and he notified on duty detectives. Follow up investigation was conducted and it was determined that the subject arrested had been involved in 5 burglaries in the City of Wilmington. Search warrants were then executed and several other subjects were implicated in the crimes. This led to a full recovery of the monies along with the arrests of several other subjects. Due to Corporal Babby's keen observations and diligence a burglary ring was cracked and full recovery of the monies was made.

On 13 June 2002 Officer's Vitale and Garcia responded to 1808 West 8th Street relative to a Burglary in progress. Upon arrival the officers spoke to the victim who stated that she awoke to noises on the first floor of her dwelling. She then observed a Hispanic male on the first floor of her dwelling. The subject fled when the resident confronted him. A description

B-37

P0064

was broadcast to units in the area, which met with negative results. On 14 June 2002 Corporal Babby observed a subject pushing a gas grill on the sidewalk in the area of Chestnut and South Union Streets. Corporal Babby feeling this was suspicious stopped the subject for questioning. He then noticed that the subject fit the description of the burglary suspect from the night before. The suspect was taken into custody and transported to central. Corporal Babby put together a photo lineup and contacted the victim. The suspect was positively and an arrest was made. It was also determined that the gas grill was stolen from 514 South Lincoln Street.

On 16 July 2002 Corporal Babby observed a subject pulling a trashcan down the sidewalk in the area of 4th and Jackson Streets. The subject was stopped and the subject could not adequately explain how he came by the items in his possession, which included a weed whacker, stereo speakers, and a bicycle. Corporal Babby feeling the items were freshly stolen took the subject into custody and took possession of the items. It was later determined that these items were taken in a burglary which occurred at 625 North Jackson Street. The suspect was charged with Burglary 2nd.

I have been Corporal Babby's supervisor for the past 8 months. I have found him to be a responsible, professional and very capable officer who is highly committed to his career in law enforcement. At this time I can think of no one more deserving of the honor of the Kiwanis Police Officer of the Quarter then Corporal William Babby.

Respectfully Submitted

Michael J Morrissey
Master Sergeant
Patrol -E

# WILMINGTON DEPARTMENT OF POLICE

## Office of Chief Michael J. Szczerba

| TO: *Sgt. Bobby* | DIVISION: *U.S.O* | DATE: *9-17-04* |
|---|---|---|

☐ Inspector/Investigative Operations  ☐ Inspector/Uniformed Operations

☐ Approved                    ☐ Investigate and Report
☐ Disapproved                 ☑ Noted
☐ Comment                     ☐ Recommendation
☐ File                        ☐ Return
☐ Commendation                ☐ See/Call me
☐ Handle

REMARKS: *Pat,*

*Congratulations on your "superior" performance evaluation. I extend to you a well deserved "job well done."*

*Sincerely,*

| Signature of Sender: *Chief Szczerba* | Return by: |
|---|---|

/wpc
Cc. 1/01
g:\admin\circulationshoot.frm

B-39

# CITY OF WILMINGTON
## PUBLIC SAFETY DEPARTMENT
### EMPLOYMENT PERFORMANCE EVALUATION

**PART I**

(Read instruction manual prior to completing this form)

**EMPLOYEE NAME**: William Babby    **RANK**: Senior Corporal

**CITY DEPARTMENT**: Police-Patrol    **SOC SECURITY NUMBER**: 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

**EVALUATION PERIOD**: 01/03-01/04    **DATE OF REVIEW**: 14 September 04

**PART II - Job Performance**

NOTE: In this section, assign each task a percentage based on the priority of the task. These percentages should total 100%. Each task should then be assigned a numerical performance rating based on the following scale:

(Superior-5)   (Above Average-4)   (Average-3)   (Needs Improvement-2)   (Unsatisfactory-1)

| JOB TASK AND RESPONSIBILITIES | COMMENTS |
|---|---|
| 1. Conducts preliminary investigations. Interviews victims, suspects, and witnesses; locates evidence, and completes the appropriate reports (arrests, A.O.'s, Crime, etc.) neatly and promptly. | Officer Babby conducts good investigations with the maximum efficiency.<br><br>Percentage - 30%                    Rating: 5 |
| 2. Investigates & identifies violations of the motor vehicle laws pertaining to traffic accidents and self-initiated motor vehicle stops. | Officer Babby has knowledge of the motor vehicle laws and properly applies them when necessary.<br>Percentage - 30%                    Rating: 5 |
| 3. Conducts preventive patrol techniques that deter crime including building checks, pedestrian stops, and special attention compliance. Collects intelligence information to disseminate throughout the department. Performs self initiated activities. | Officer Babby has demonstrated good patrol technique skills which is why his self initiated activities are high.<br><br>Percentage - 20%                    Rating: 5 |
| 4. Completes administrative paperwork such as car sheets, subpoenas, memo distribution form, etc., completely, neatly, and promptly. | Officer Babby presents his administrative work in a neat an accurate fashion.<br>Percentage - 10%                    Rating: 5 |
| 5. Identifies problems on district, and develops ideas to solve them. Works with members of the community and the department to assist in this endeavor. | Officer Babby has been able to interact in a professional manner with the community.<br>Percentage - 10% |

B–40

P0066

**PART III**

RELIABILITY AND ATTITUDE
(Answer all questions in this section)

| | |
|---|---|
| **1. Employee's Attendance**<br><br>What best describes employee:<br><br>☐ Completely dependable, never absent<br>☒ Dependable, absent occasionally<br>☐ Absent frequently<br>☐ Undependable | **5. Initiative**<br><br>What best describes employee:<br><br>☒ Always finds work to do; never needs to be told<br>☐ Needs to be "pushed" only on rare occasions<br>☐ Needs normal supervision<br>☐ Needs considerable supervision |
| **2. Employee's Punctuality**<br><br>What best describes employee:<br><br>☒ Always on time<br>☐ Occasionally late<br>☐ In need of occasional reminders<br>☐ Often late | **6. Judgement**<br><br>What best describes employees:<br><br>☒ Outstanding ability to make sound & logical decisions<br>☐ Decisions are generally acceptable<br>☐ Inclined to be impulsive or takes too much time to express opinion<br>☐ Shows poor judgement |
| **3. If late or absence occurs**<br><br>Does employee:<br><br>☒ Always notify supervisor when late or absent<br>☐ Usually notify supervisor when late or absent<br>☐ Usually forget to notify supervisor when late/absent<br>☐ Never notify supervisor when late or absent | **7. Adaptability**<br><br>What best describes employee:<br><br>☒ Is able to express himself and effectively deals with different situations and circumstances<br>☐ Can normally adapt to a situation<br>☐ Has difficulty adapting to a situation<br>☐ Completely inflexible |
| **4. Cooperation**<br><br>What best describes employee:<br><br>☒ Will express concerns, however, does promote cooperation in dealings with supervisors, co-workers, & the public<br>☐ Normally congenial and cooperative<br>☐ Does not seem interested in developing good working relations w/supervisors, co-workers & the public<br>☐ Often surly and uncooperative | **8. Performance/Accuracy**<br><br>What best describes employee:<br><br>☒ Rarely in need of correction - work of high quality<br>☐ Work has to be corrected<br>☐ Errors occur with some regularity<br>☐ Work is of haphazard & careless quality |

B–41

P0067

**PART III**
(continued)

| | |
|---|---|
| **9. Communications**<br><br>What best describes employee:<br><br>☑ Communicates well; clear and persuasive<br>☐ Communicates fairly well; generally accomplishes objective<br>☐ Communicates only at a minimum accepted level; sometimes misunderstood; misses point<br>☐ Ambiguous; too lengthy or too brief; often misunderstood | **13. Job Knowledge**<br><br>What best describes employee:<br><br>☑ Has thorough knowledge of nearly all requirements of job<br>☐ More than sufficient knowledge for performance of job<br>☐ Fair grasp of basic requirements<br>☐ Possesses little required knowledge of job |
| **10. Quantity**<br><br>What best describes employee:<br><br>☑ Usually high output - meets emergency demands well<br>☐ Consistently turns out more than average<br>☐ Finishes allotted amount<br>☐ Does not carry fair share | **14. Creativity**<br><br>What best describes employee:<br><br>☑ Thinks constructively; contributes practical and innovative suggestions<br>☐ Shows some originality and able to expand upon ideas of others<br>☐ Rarely contributes original ideas<br>☐ Inhibits the creative process in the workplace |
| **11. Completing Assignments**<br><br>What best describes employee:<br><br>☑ Always completes assignments on time<br>☐ Occasionally late completing an assignment<br>☐ Completes tasks, but frequently behind schedule<br>☐ Tasks are generally incomplete & behind schedule | **15. Deportment**<br><br>What best describes employee:<br><br>☑ Is self-assured, stable and able to work effectively under pressure<br>☐ Can be counted on in most situations to conduct one's self well while under pressure<br>☐ Occasionally has difficulty working under pressure<br>☐ Cannot be relied upon while under pressure |
| **12. Pride**<br><br>What best describes employee:<br><br>☑ Always takes pride in work product<br>☐ Usually conscientious<br>☐ Appears willing to sacrifice<br>☐ Apparently lacks sense of pride in work | **16. Neatness**<br><br>What best describes employee:<br><br>☑ Always maintains a neat appearance and is well groomed<br>☐ Usually is well groomed<br>☐ Seldom is well groomed<br>☐ Never is well groomed |

P0068

## PART IV - COMMENTS

**EVALUATOR'S COMMENTS:** (i.e., strong points, weak points. If the employee is a Supervisor, assess the employee's supervisory skills)

Officer Babby meets all emergency demands very well. Officer Babby's output is always high as well as his quality of work. Officer Babby has demonstrated on many occasions to have good decision making qualities. Officer Babby must realize that with his experience, he can set the example for younger and less experienced officers.

## EMPLOYEE'S COMMENTS:

## ADDITIONAL EVALUATOR'S COMMENTS:

EMPLOYEE'S SIGNATURE: _~~William Babby~~_  DATE: _11 Sep 04_

EVALUATOR'S SIGNATURE/TITLE: _~~Signature~~_  DATE: _14 Sep 04_

EVALUATOR'S SOCIAL SECURITY NUMBER: _____

DEPARTMENT HEAD'S SIGNATURE: _____  DATE: _____

Employee's signature only signifies that discussion and review was held with employee and that employee has read the above.

# OFFICE OF PUBLIC SAFETY

# DEPARTMENT OF POLICE

# WILMINGTON, DELAWARE

**TO:**      **All Personnel**

**FROM:**    **Michael J. Szczerba**     *Michael J. Szczerba*
             **Chief of Police**

**DATE:**    **3 April 2001**

**RE:**      **Transfers & Assignments**

Effective Tuesday, 17 April 2001, the following transfers and assignments will become effective:

## CAPTAINS

Captain Sean Finerty is transferred from the Criminal Investigations Division to the Drug, Organized Crime and Vice Division.

Captain Victor Ayala is transferred from the Support Services Division to the Communications Division.

Captain Bobby Cummings is transferred from the Human Resources Division to the Special Operations Division.

Captain Gilbert Howell is transferred from the Administrative Division to the Support Services Division.

Lieutenant Donald Bowman is transferred from the Uniformed Services Division to the Criminal Investigations Division.

MJS/pap

Page 1 of 8

B-44

Sergeant Gregory Ciotti is transferred from the Uniformed Services Division - A Platoon to the Uniformed Services Division - C Platoon.

Sergeant Mark Lemon is transferred from the Criminal Investigations Division to the Uniformed Services Division - B Platoon.

Sergeant Sherri Tull is transferred from the Administrative Division to the Uniformed Services Division - B Platoon.

Sergeant Mayna Santiago is transferred from the Criminal Investigations Division to the Uniformed Services Division - C Platoon.

Sergeant Walter Ferris is transferred from the Criminal Investigations Division to the Uniformed Services Division - A Platoon.

Sergeant Kyle Rogers is transferred from the Uniformed Services Division - B Platoon to Operations Sergeant in the Uniformed Services Division.

Sergeant Robert Transue is transferred from the Uniformed Services Division to the Special Operations Division.

## CORPORAL/PATROL OFFICERS

Corporal Ronnie Howell is transferred from the Uniformed Services Division to the Special Operations Division.

Corporal Diana Brown is transferred from the Uniformed Services Division to the Special Operations Division.

Corporal Maurice Thompson is transferred from the Uniformed Services Division to the Special Operations Division.

*17 Apr 01*

Corporal William Babby is transferred from the Uniformed Services Division to the Special Operations Division.

Corporal Kenneth Jackson is transferred from the Administrative Division to the Special Operations Division.

Corporal Phyllis Johnson is transferred from the Administrative Division to the Uniformed Services Division - B Platoon.

Corporal Karen Buhrman is transferred from the Criminal Investigations Division to the Uniformed Services Division - D Platoon.

Corporal Donald Bluestein is transferred from the Uniformed Services Division Riverfront to the Uniformed Services Division - D Platoon.

## B–45

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

WILLIAM P. BABBY, III           :

                               :        C.A. NO.: 06-522 JJF

       Plaintiff,          :

                               :

     v.                       :

                               :

CITY OF WILMINGTON       :

DEPARTMENT OF POLICE,   :

                               :

       Defendant.         :

### AFFIDAVIT OF WILLIAM P. BABBY, III

STATE OF DELAWARE   :

                    :    SS.

NEW CASTLE COUNTY  :

    I, WILLIAM P. BABBY, III, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

    1.     I am the Plaintiff in the above-captioned action.

    2.     I am currently employed by the Wilmington Police Department as a Master Corporal assigned to street patrol duties.

    3.     I believe that my transfer from Special Operations to Patrol Duty in 2001 was a demotion inasmuch as the work hours are much less favorable, I am unable to earn as much in overtime compensation and because patrol duty fails to provide me with more diverse experience that would increase my opportunities for advancement within the Wilmington Police Department.

    4.     It is believed by me and my police colleagues that street patrol is the least desired position in the police department.

# B–46

5.     Sgt. Wells was transferred in 2001 after a written reprimand to the Chief's office to a position of prestige within the Department serving as the Departmental spokesperson.

6.     The Departmental Information – Notification of Complaint found in Plaintiff's Appendix at B-31, 32 is a true and accurate copy of the document I submitted to Chief Szczerba on August 22, 2001.

7.     The allegations in the Complaint are true to the best of my knowledge and belief.

WILLIAM P. BABBY, III

SWORN AND SUBSCRIBED before me this __2nd__ day of November, 2007.

NOTARY PUBLIC

JEFFREY K. MARTIN, ESQ.
NOTARY PUBLIC
DELAWARE ATTORNEY
ID #2407
DELAWARE ATTORNEY AT LAW

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

WILLIAM P. BABBY, III        :
                          :    C.A. NO.: 06-522 JJF

         Plaintiff,         :

                         :

   v.                         :

                         :

CITY OF WILMINGTON       :

DEPARTMENT OF POLICE,    :

                         :

         Defendant.         :

## AFFIDAVIT OF JEFFREY K. MARTIN

STATE OF DELAWARE     :
                       :    SS.

NEW CASTLE COUNTY    :

      I, JEFFREY K. MARTIN, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

      1.      I am the attorney for the Plaintiff in the above-captioned matter.

      2.      In preparation for filing this Answering Brief, I carefully studied the answers to pleadings and discovery filed by Defendant in this matter. I reviewed Defendant's Answer to Paragraph 35 of the Complaint wherein Plaintiff alleged that a verbal conversation occurred between Lt. Rock and Sgt. Morrissey, both of whom were superior officers in Plaintiff's chain of command and wherein Lt. Rock was alleged to have made various derogatory comments about Plaintiff. Because at the time of the filing of the Answer by Defendant both Lt. Rock and Sgt Morrissey were still employed by the Wilmington Police Department, Defendant's Answer professing not to have sufficient information to admit or deny this averment seemed to be incorrect.

# B-48

3.    I contacted Sgt. Michael Morrissey by telephone and he corroborated the allegations in Paragraph 35 of the Complaint.

4.    Upon a further discussion with Sgt. Morrissey, Sgt. Morrissey advised me that he had indeed met with Senior Assistant City Solicitor Alex Mili early in this case and advised Mr. Mili that this conversation had taken place wherein these derogatory terms were used by Lt. Rock against Cpl. Babby on a few occasions. Sgt. Morrissey reported, as his Affidavit reflects, that upon advising Mr. Mili about the conversation he had with Lt. Rock, Mr. Mili told Sgt. Morrissey that Sgt. Morrissey would not be used by the City for anything in this case.

5.    After speaking with Sgt. Morrissey, I advised Mr. Mili that the Answer to Paragraph 35 of the Complaint was incorrect.

6.    Mr. Mili responded to my inquiry by acknowledging that, "it looks like Sgt. Morrissey recalls the comment, but Lt. Rock does not." Mr. Mili's suggested revision was that the City "admit" Request for Admission No. 23 which recited the allegations in Paragraph 35 of the Complaint. The Request for Admissions had been answered by Defendant and each request had been answered with the exception of Request for Admission No. 23. A copy of the Responses to Request for Admissions is attached hereto as Exhibit 1.

7.    In response to Mr. Mili's proposal to amend the Responses to the Requests for Admissions by admitting No. 23 (attached hereto as Exhibit 2), Mr. Mili suggested that it would be simpler to amend the response to the Request for Admission than amending the Answer to Complaint.

8.    Subsequent to the various interactions with Mr. Mili with regard to the admission as to the allegation in Paragraph 35, I examined Defendant's Answers to Plaintiff's First Set of Interrogatories. In particular, in light of the above, I believe that the response to No. 6 is in error (this document is attached hereto in Exhibit 3) wherein Defendant was asked to identify each person with whom there was a discussion of the "facts and circumstances surrounding the Complaint." Defendant acknowledged that "various personnel of the entity defendant have discussed this matter with undersigned counsel, but all such communications are protected from disclosure by the attorney client privilege."

9.    Although Sgt. Michael Morrissey testified that he spoke with defense counsel specifically about the allegations in the Complaint and that he had knowledge as to Paragraph 35 of the Complaint, Defendant did not identify Sgt. Morrissey as a person with knowledge in its Initial Disclosures filed pursuant to Federal Rule of Civil Procedure 26(a). Initial Disclosures are attached in Plaintiff's Appendix.

10.    In addition, at the very conclusion of Plaintiff's deposition, Mr. Mili asked Cpl. Babby about the allegation in Paragraph 35. In his question to Cpl. Babby, Mr. Mili stated as follows: "Having trouble tracking down Sgt. Morrissey lately" (referring to Mili's professed inability to contact Sgt. Morrissey). To the best of my knowledge, information and belief, this was not an accurate statement and did not reflect the fact that Mr. Mili had a previous conversation with Sgt. Morrissey following the filing of the Complaint in this matter.

B-50

_____
JEFFREY K. MARTIN

SWORN AND SUBSCRIBED before me this 2ᴺᴰ day of November, 2007.

_____
NOTARY PUBLIC

TIMOTHY J. WILSON, ESQ.
NOTARY PUBLIC
DELAWARE ATTORNEY
ID # 4323
DELAWARE ATTORNEY AT LAW

B–51

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

WILLIAM P. BABBY, III,                )
                                       )    **C.A. NO. 06-552 JJF**
        Plaintiff,                     )
                                       )    **JURY TRIAL DEMANDED**
        v.                             )
                                       )
CITY OF WILMINGTON                     )
DEPARTMENT OF POLICE,                  )
                                       )
        Defendants                     )

## DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST REQUEST
## FOR ADMISSIONS DIRECTED TO DEFENDANT

1.    Plaintiff has been employed by the City of Wilmington Police Department since January 9, 1989.

**ANSWER:**    Admitted.

2.    Plaintiff has submitted nine (9) transfer requests since 2002, of which none have been honored.

**ANSWER:**    Denied. Plaintiff has submitted 9 transfer requests but only two of those 9 were submitted after 2002. See Bates Stamp 4462-4475.

3.    Plaintiff has routinely received standard to superior performance evaluations during his career with the City of Wilmington Police Department.

**ANSWER:**    Denied. Plaintiff has a history of discipline, a record of which is attached hereto at Bates Stamp 5052.

4.    At one time, Plaintiff filled in for two (2) different positions that were left vacant by other injured officers and was praised numerous times for doing an excellent job by Captain Maggitti and Lieutenant Cummings.

**ANSWER:**    Admitted.

## B-52

5.    Plaintiff was transferred into the Special Operations Division along with two (2) junior officers in or around April 2001.

**ANSWER:**    Admitted.

6.    Sergeant William Wells made various racially insensitive and derogatory comments about "Puerto Ricans" and "Mexicans" at the Equal Housing Conference held at the University of Delaware in 2001.

**ANSWER:**    Denied. Sergeant Wells made one comment about Hispanics at the said time and place.

7.    Captain Cummings tried to dissuade Plaintiff and Officer Izquierdo from filing a formal complaint against Sergeant Wells with respect to the alleged comments made by Sergeant Wells pertaining to Puerto Ricans and Mexicans.

**ANSWER:**    Denied. See report dated May 18, 2001 at Bates Stamp 5053.

8.    The complaint about Sergeant Wells filed by Plaintiff was investigated by Carolyn Henry, a friend of Wells.

**ANSWER:**    Denied. The complaint was investigated by Bobby Cummings. Carolyn Henry took over the investigation while Cummings went to the FBI academy, but Cummings resumed and concluded the investigation himself upon his return from the FBI academy.

9.    Plaintiff and Izquierdo complained to City Personnel about the delay in investigating the complaint against Sergeant Wells, in order for the investigation to proceed.

**ANSWER:**    Admitted that Izquierdo complained to City Personnel. Defendant has no information to admit or deny whether Plaintiff was also a party to that complaint.

**B–53**

10.     Sergeant Wells received a written reprimand concerning the complaint filed by Plaintiff and Officer Izquierdo.

**ANSWER:**    Admitted.

11.     Sergeant Wells was transferred to a position in the Chief's office as Department spokesperson after the complaint against him by Plaintiff was investigated.

**ANSWER:**    Admitted.

12.     The transfer to Spokesperson for Chief's office was a promotion for Sergeant Wells.

**ANSWER:**    Denied. Sgt. Wells held the same rank (Sergeant) after the transfer.

13.     Plaintiff and Officer Izquierdo were demoted and transferred to the Special Operations Division, F Platoon Squad, and assigned to street patrol duties because they filed a complaint against Sergeant Wells.

**ANSWER:**    Denied. According to Captain Cummings, they were transferred due to re-deployment.

14.     In the summer of 2001, Plaintiff was given an assignment by Lieutenant Rock to simply sit in his patrol car in the 1200 block of West 6th Street, Wilmington, Delaware, and remain there for eight (8) hours every day with the exception of one (1) break.

**ANSWER:**    Denied.

15.     Plaintiff was instructed by Lt. Rock not to enforce any laws or make arrests while sitting in his patrol car in the 1200 block of West 6th Street, Wilmington, Delaware.

**ANSWER:**    Denied.

B-54

16.    During the first week of September 2001, Plaintiff was called into Lieutenant Rock's office, and asked why he had not made any arrests or given out any tickets all summer.

**ANSWER:**    Admitted.

17.    Rock called Plaintiff a "liar" and told him he had a "bad attitude." Rock also called Plaintiff "lazy" and told him that if he "didn't start putting out some numbers, [Rock would] transfer [Plaintiff] back to patrol [duty]."

**ANSWER:**    Defendant is unable to admit or deny on behalf of Lt. Rock, as he is no longer an agent of Defendant.

18.    Plaintiff was called into Lieutenant Rock's office in October 2001 and questioned about his failure to acknowledge the Lieutenant at the police department's gas station. At this meeting, Lt. Rock yelled at Plaintiff stating that as a lieutenant, he was free to discipline Plaintiff as he saw fit. Rock then dismissed Plaintiff from his office.

**ANSWER:**    Defendant is unable to admit or deny on behalf of Lt. Rock, as he is no longer an agent of Defendant.

19.    Plaintiff was called into Lieutenant Rock's office and accused of approaching Dietz to discuss the new work schedule without going through the proper chain of command.

**ANSWER:**    Defendant is unable to admit or deny on behalf of Lt. Rock, as he is no longer an agent of Defendant.

20.    It was Captain Dietz who initiated this conversation about the new work schedule.

**ANSWER:**    Defendant cannot admit or deny this statement because Captain Dietz does not recall who initiated this conversation.

21.    Plaintiff was warned by Lt. Rock that the next time he spoke with Captain Dietz without going through the proper chain of command, Rock would write charges up against Plaintiff.

**ANSWER:**    Defendant is unable to admit or deny on behalf of Lt. Rock, as he is no longer an agent of Defendant.

22.    Plaintiff was transferred back to the Patrol Division in November and was told that Captain Dietz had made the final decision.

**ANSWER:**    Admitted that Plaintiff was transferred to the Patrol Division.  Defendant cannot admit or deny what some unspecified person told Babby about Captain Dietz making the final decision.

23.    In October of 2001, Lieutenant Rock told Sergeant Morrissey that he should watch out for Plaintiff because Plaintiff is a "no good piece of shit."

**ANSWER:**

24.    Plaintiff was transferred back to the Patrol Division and assigned to street duties with E Platoon in November 2001.

**ANSWER:**    Admitted.

25.    Plaintiff submitted a request through the proper chain of command to meet with the Director of Public Safety, James N. Mosely in December 2001.

**ANSWER:**    Director Mosley does not recall Plaintiff making such a request.  Director Mosley does admit to meeting with Officer Babby, but does not recall the date or time.

# B–56

26.    In December of 2001, Plaintiff was summoned by Captain Dietz who wanted to know why Plaintiff requested to meet with the Director of Public Safety.

**ANSWER:**    Admitted.

27.    In his meeting with the Mr. Mosely, Plaintiff stated that he had been retaliated against for making a complaint against a supervisor and had been demoted for this.

**ANSWER:**    Admitted.

28.    When Mr. Mosely was presented with a copy of the Department's transfer policy, Mr. Mosely told Plaintiff that he was not even aware that such a policy existed.

**ANSWER:**    Defendant cannot admit or deny this statement because Director Mosley has no recollection of this exchange.

29.    Mr. Mosely asked Plaintiff for other information to support his allegations, and Plaintiff informed the Director that a fellow officer could support his claims.

**ANSWER:**    Defendant cannot admit or deny this statement because Director Mosley has no recollection of this exchange.

30.    Plaintiff was told that Mr. Mosely would investigate the allegations and get back to him.

**ANSWER:**    Denied. Director Mosley only advised that he would look into the matter.

31.    Mr. Mosely has yet to response to Plaintiff.

**ANSWER:**    Denied. Director Mosley did not respond directly to Plaintiff, but allowed the matter to be handled through the chain of command.

32.    Plaintiff has experienced "the cold-shoulder-treatment" from his superiors, and has been virtually ignored on a daily basis from the day he filed the complaint against Sergeant Wells to this present day.

**ANSWER:**    Defendant has no information to admit or deny any such treatment by these unspecified peers.

33.    Plaintiff was demoted to Platoon F in retaliation for his complaint against Wells.

**ANSWER:**    Denied. Plaintiff was transferred to Platoon F as part of a redeployment. This transfer was not a demotion, nor was it in retaliation for his complaint against Wells.

34.    Plaintiff was demoted to Platoon E in retaliation for his complaint against Wells.

**ANSWER:**    Denied. Plaintiff was transferred to Platoon E as part of a redeployment. This transfer was not a demotion, nor was it in retaliation for his complaint against Wells.

35.    Officer Counts would have also been placed in Platoon F had she filed a complaint against Wells.

**ANSWER:**    Denied.

36.    According to Defendant's policy, the discipline for use of racial and derogatory comments is more than a written reprimand.

**ANSWER:**    Denied. See attached policy excerpt at Bates Stamp 5114.


37.    It is not normal protocol for an investigation to begin four months after a complaint is filed.

**ANSWER:**    Denied. There is no normal protocol. Each investigation will be tailored

B-58

to the compliant.  In this case, the investigator was in the FBI academy for a portion of the time that the complaint was being investigated.

38.    Officer Cummings tried to persuade Plaintiff from filing a complaint against Wells.

**ANSWER:**    Denied.

39.    It is not normal practice for an officer to be on the force for 17 years and remain in patrol, despite various request to transfer to a different position(s)

**ANSWER:**    Denied.  There are many officers with 17 or more years of seniority, some of whom are in patrol including Alvin Boardley who has been employed by WPD since 1978.  See attached seniority list at Bates Stamp 5074 to 5080.

_____
Alex J. Mili, Jr., Esquire (#4125)
City of Wilmington Law Department
Louis L. Redding City/County Bldg.
800 N. French Street, 9th Floor
Wilmington, DE 19801
Attorneys for Defendant

Dated: May 3, 2007

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

RECEIVED

OCT 3 1 2007

| | | |
|---|---|---|
| WILLIAM P. BABBY, III, | ) | C.A. NO. 06-552 JJF |
| Plaintiff, | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| CITY OF WILMINGTON DEPARTMENT OF POLICE, | ) | |
| Defendants | ) | |

**DEFENDANT'S SUPPLEMENTAL ANSWER TO PLAINTIFF'S
FIRST REQUEST FOR ADMISSIONS DIRECTED TO DEFENDANT**

23.    In October of 2001, Lieutenant Rock told Sergeant Morrissey that he should watch out for Plaintiff because Plaintiff is a "no good piece of shit."

**ANSWER:**    Admitted.

_____
Alex J. Mili, Jr., Esquire (#4125)
City of Wilmington Law Department
Louis L. Redding City/County Bldg.
800 N. French Street, 9th Floor
Wilmington, DE 19801
Attorneys for Defendant

Dated:    October 30, 2007

B-60

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WILLIAM P. BABBY, III,                    :

       Plaintiff,                          :

                                           :          C.A. No.  06-552 JJF

v.                                         :          TRIAL BY JURY DEMANDED

                                           :

CITY OF WILMINGTON                         :
DEPARTMENT OF POLICE,                      :

                                           :

       Defendants.                         :

### CERTIFICATE OF SERVICE

I, Alex J. Mili, Jr., Esquire, hereby certify that on this 30th day of October, 2007,  a copy of

the Defendant's Supplemental Answer to Plaintiff's First Request for Admissions Directed to

Defendant was served via U.S. Mail, postage prepaid to the following listed below with notice of

said filing made to the Clerk of Court using CM/ECF:


                Jeffrey K. Martin, Esquire
                Martin & Wilson
                1508 Pennsylvania Avenue
                Wilmington, DE 19806


                CITY OF WILMINGTON LAW DEPARTMENT


                /s/ Alex J. Mili, Jr.
                Alex J. Mili, Jr., Esquire (I.D. #4125)
                Senior Assistant City Solicitor
                Louis L. Redding City/County Building
                800 N. French Street, 9th Floor
                Wilmington, DE 19801
                (302) 576-2175
                Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

WILLIAM P. BABBY, III,                    )
                                          )    C.A. NO. 06-552 JJF
    Plaintiff,                         )
                                          )    JURY TRIAL DEMANDED
        v.                          )
                                          )
CITY OF WILMINGTON                        )
DEPARTMENT OF POLICE,                     )
                                          )
    Defendant                          )

### DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANT

### INTERROGATORIES

1.     Identify each person from whom you have obtained or will obtain a written or oral report, statement, memorandum, affidavit, declaration or testimony regarding the allegations of Plaintiff's Complaint, contrary or otherwise, state the date that such written or oral report, statement, memoranda, affidavit, declaration or testimony was taken, and the nature and content of such written or oral report, statement, memoranda, affidavit, declaration or testimony.

**ANSWER:**  Defendants have not taken any statements in relation to this lawsuit. Various personnel have been interviewed by the Law Department, but the contents of such interviews are protected by the Attorney Client Privilege and the work product doctrine.

2.     Identify each expert you have reason to believe you will call to testify at trial, and as to each such expert provide the information required by Rule 26(a)(3).

**ANSWER:**  Defendants have not retained any experts to date, but anticipate retaining rebuttal experts in response to any experts that Plaintiff may identify.

## B-62

3.    Identify each consulting expert you have retained in this action who you do not intend to call to testify at trial, and for each such expert identify the individual's professional area of expertise and the date on which you first retained him or her.

**ANSWER:**    Defendants have not retained any experts to date, but anticipate retaining rebuttal experts in response to any experts that Plaintiff may identify.

4.    Identify any person, including yourself, who you know or believe has any knowledge of the allegation in the Complaint.  With respect to each person identified, describe in detail the factual knowledge you believe each person has and state how you became aware that each identified person has such knowledge.

**ANSWER:**    All persons listed in Defendant's Rule 26 disclosures.

Chief Michael Szczzerba has final approval on all transfer decisions.

James Mosely has information on Babby's meeting with him through his (Mosley's) open door policy.

Captain Bobby Cummings has information on his decision to select Tashawn Counts for the division that Cummings was overseeing in 2001.

Captain Marlyn Dietz was in charge of patrol division at the time.

Lt. Henry took over Cummings's investigation of the complaint against Wells while Cummings was away at the FBI academy.

Officer Alfred Izquierdo lodged the complaint about William Wells.

Mitchell Rock was the head of Babby's platoon in 2001.

5.    Identify each person whom you know or believe has knowledge or information concerning any defenses in your Answer to Plaintiff's Complaint, and for each

# B-63

such person, describe in detail the nature of his or her knowledge and information and state how you became aware of that person's knowledge.

**ANSWER:**    All persons listed in Defendant's Rule 26 disclosures.  See response #4 above for details of each person's knowledge.

6.    Identify each person with whom you have discussed the facts and circumstances surrounding the Complaint filed in the above-captioned matter, and as to each person so identified, provide the date(s) the discussion(s) occurred, who initiated the discussion(s), and a brief summary of the discussion(s).

**ANSWER:**    Various personnel of the entity defendant have discussed this matter with undersigned counsel, but all such communications are protected from disclosure by the attorney client privilege.

7.    If you, your attorney, or any other person acting on your behalf inquired of any present or former employee of the Defendant as to whether he or she believes that he or she has been harassed or discriminated against during his or her employment with the Defendant, please identify the following information: the person to whom the inquiry was made; any notes, memoranda, correspondence or tape recordings of, or relating to, the inquiry; and the information communicated from the person, or to the person, as part of the injury.

**ANSWER:**    Defendant has not made such an inquiry of any present or former employee.

8.    Identify any individual(s) who you believe may testify at trial.

**ANSWER:**    Defendant reserves the right to call all persons listed in Defendants' Rule 26 disclosures.

# B-64

3

9.    How many grievances have been filed by any present or previous employee(s) against the Defendant or any specific employee of the Defendant in the past five (5) years? Please list the nature, circumstances, individual(s) involved, and the outcome(s) of each such grievance.

**ANSWER:**    Objection. A request for information about other claims and lawsuits by other employees is not reasonably calculated to lead to the discovery of admissible evidence for Babby's complaint.

10.    Identify each and every litigation, charge, complaint or action (collectively, "complaint") brought against you before any federal, state or local agency or court by any of your past, present or prospective employees, or by any other entity, which in any way relates to employment or job, termination of employment or job, rejection for employment or job, suspension of employment or job, any transfer, lack of promotion or demotion of employment or job, any grievances related to employment or job, and/or retaliation, harassment and/or discrimination in employment or job. For each such complaint, identify by whom the complaint was made, to whom the complaint was addressed, the date on which the complaint was made, the charge, case or docket number associated with the complaint, any person(s) who would have witnessed the complaint, whether the complaint was reduced to writing, the substance of the complaint any response received and the outcome of each complaint.

**ANSWER:**    Objection. A request for information about other claims and lawsuits by other employees is not reasonably calculated to lead to the discovery of admissable evidence for Babby's complaint.

# B-65

11.    Please list Plaintiff's employment history with Defendant, including, but not limited to, all employment positions held, including a description of the job duties/responsibilities, from hiring to the present, salary information for each position, raises given, benefits other than wages offered. Layoff and rehire information, if applicable, and any awards or commendations given to Plaintiff while employed with Defendant.

**ANSWER:**    See Plaintiff's entire personnel file at Bates Stamp 1 to 690.

12.    Were any disciplinary actions ever taken against Plaintiff during his employment with Defendant?  If answered in the affirmative, please state the date(s) of the occurrence(s) which gave rise to the action(s), the event(s) which gave rise to the action(s), the specific nature of the action(s) taken against Plaintiff, the date(s) of the disciplinary action(s), the name(s), address(es) and title(s)/rank(s) of each person involved in the issuance of the disciplinary action(s), whether the disciplinary action(s) were contested by Plaintiff, and provide copies of all disciplinary notices given to Plaintiff.

**ANSWER:**    Yes, Plaintiff was disciplined 18 times during his tenure with the WPD. See IAB penalty log at Bate Stamp 5052 for details.

13.    Please discuss all complaints of harassment and/or discrimination from Plaintiff, up to the present time, including the nature of the complaint(s), the date each complaint was made, to whom each complaint was made, the action(s) taken regarding each complaint made, and the final outcome of each complaint made.

**ANSWER:**    See Bates Stamp documents 4405 to 4440, 5053 & 5054.

B-66

14.    Please discuss, in detail, Defendant's policy, if any, on retaliation and/or discrimination.

**ANSWER:**    See White Book Directive 6.78, included at Bate Stamp Documents 5115.

15.    Please discuss, in detail, Defendant's policy or policies, if any, on promotion, transfer, and advancement.

**ANSWER:**    See Management Scientists criteria and Police Chief's accompanying memorandum, included at Bates Stamp Documents 5055-5073.

16.    Please discuss, in detail, the criterion considered when making the decision to promote an officer and how each criterion is weighted.

**ANSWER:**    See attached report dated November 13, 2001, included at Bates Stamp Documents 5055.

17.    Please discuss, in detail, the reason(s) and circumstance(s) why Plaintiff's requests for transfers were not honored from May 2001 to the present.

**ANSWER:**    Captain Cummings does not know why the requests were not honored but each Division Commander can choose from the candidates that have applied

18.    Why was Plaintiff's request for a permanent transfer to the Human Resources Division denied?

**ANSWER:**    He was filling in for a temporary vacancy while a co-worker was out on injury. Once the co-worker returned to his position in HRD, Plaintiff was no longer needed to fill that temporary vacancy.

19.    What were the reasons surrounding the decision to transfer Plaintiff and Officer Izquierdo to street patrol in or around May of 2001?

**ANSWER:**    According to Paragraphs 4 and 5 of Bobby Cumming's EEOC Affidavit,

# B-67

funding for the CFMH unit was not passed by City Council, and so the officers assigned to that unit (including Plaintiff) were sent back to patrol.

20.   What instructions concerning arrests were given to Plaintiff by Lt. Rock with respect to Plaintiff's assignment to the 1200 block of West 6th Street in the summer of 2001?

**ANSWER:**   Lt. Rock is no longer an agent of Defendant, and therefore, Defendant cannot respond to this inquiry.

21.   If an officer would like to appeal a newly assigned schedule, what procedures must he or she follow in order for his or her complaint to be heard?

**ANSWER:**   See grievance procedures set forth in FOP Contract at Bates Stamp 5081 to 5113.

22.   What were the circumstances surrounding the decision to transfer Plaintiff to the Patrol Division in November 2001?

**ANSWER:**   Capt. M. Dietz does not recall the reason for the transfer.

23.   With respect to each transfer requested by Plaintiff, please identify:

    a)   the job title of the transferred position requested by Plaintiff;

    b)   the date of the posting of the transfer position;

    c)   the officer who received the transfer which Plaintiff sought including his rank, title and credentials;

    d)   the salary of the transferred position requested by Plaintiff.

**ANSWER:**   See Bates Stamp documents 4461 to 4475. Defendant is only aware of eight transfer requests: (1) Special Operations Division on 5/10/04, (2) Criminal Investigation Division on 2/21/02; (3) Special Operations Division on 3/21/01, (4) Criminal Investigation Division on 8/21/00, **(5)** Criminal Investigation Division on 1/25/00, (6) Evidence Detection

# B-68

Unit on 6/22/99, (7) Detectives Division on 2/7/99, and (8) Detectives Division on 3/20/99. Defendant objects to any interrogatories about transfers occuring prior to May of 2001, on the grounds that any information about transfer prior to May of 2001 is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, given that this retaliation suit only alleges that Plaintiff was retaliated against based on a complaint about William Wells in May of 2001.

24.    Identify each document that you have, or which you are aware, or which you intend to use, which relates to any defenses of any or all of the claims alleged in Plaintiff's Complaint.

**ANSWER:** See documents in response to Request for Production and Bates Stamp Index identifying those documents.

25.    Please identify all employees in the Crime Free Housing Division since May 2001. Please indicate the race, age, seniority and credentials of each individual.

**ANSWER:**    According to Captain Cummings, the Crime Free Housing Division never became operational because City Council did not authorize the funding.

26.    Please identify all employees in the Special Operations Division, F Platoon since May 2001. Please indicate the race, age, seniority and credentials of each individual.

**ANSWER:**    See F Platoon Assignment Sheets for 2001 at Bates Stamp 4476 to 4489. Defendant objects to the inquiry of the age, race, seniority and credentials of these individuals, as irrelevant not reasonably calculated to lead to the discovery of admissible evidence.

## B-69

27.    Please explain why Plaintiff was transferred from the Crime Free Housing Division. Please identify who was involved in making this decision, when the decision was made and what the decision was based upon.

**ANSWER:**    According to Captain Cummings, the Chief called for re-deployment to put non-uniform officers on the street. Cummings received two new K-9 officers. The CFHU was disbanded due to lack of funding. Cummings made the decision to keep officer Counts and send back Plaintiff along with Izquierdo.

28.    Please explain why Plaintiff was transferred from the Patrol Division, Platoon E. Please identify who was involved in making this decision, when the decision was made and what the decision was based upon.

**ANSWER:**    The decision-making chain of command for Platoon E at that time was as follows: Sergeant Corey Staats was the direct supervisor, Lt. Rock was the intermediate supervisor of the Platoon, and Captain Marlyn Dietz was the commanding officer of the patrol division. Transfer decisions are based on performance.

29.    For each of the transfers Plaintiff applied for, please identify who was chosen. Please indicate race, age, seniority and credentials. Also for each person, please indicate who made the decision.

**ANSWER:**    Defendant is only aware of eight transfer requests: (1) Special Operations Division on 5/10/04, (2) Criminal Investigation Division on 2/21/02; (3) Special Operations Division on 3/21/01, (4)    Criminal Investigation Division on 8/21/00, **(5)** Criminal Investigation Division on 1/25/00, (6) Evidence Detection Unit on 6/22/99, (7) Detectives Division on 2/7/99, and (8) Detectives Division on 3/20/99. Defendant objects to any interrogatories about transfers occuring prior to May of 2001, on the grounds that any

# B-70

information about transfer prior to May of 2001 is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, given that this retaliation suit only alleges that Plaintiff was retaliated against based on a complaint about William Wells in May of 2001. As for the 5/10/04 transfer request, _____ was chosen. As for the 2/21/02 transfer request, _____ was chosen.

30.    Identify all officers in F Platoon in or around June 2001 to December 2001. Please include each officer's name, title, seniority date and traffic and arrest record for each month in 2001.

**ANSWER:**    See F Platoon Assignment Sheets for 2001 at Bates Stamp 4476 to 4489.

31.    Identify all officers who have been with the Department since on or before January 1989 who are currently working on patrol. Please include each officer's name, title, seniority date, number of transfer(s) requested and any reason for transfer(s) denials.

**ANSWER:**    See seniority list at Bates Stamp 5074 to 5080.

32.    Please explain the circumstances surrounding the decision to transfer Plaintiff into the Special Operations division in or around April 2001.

**ANSWER:**    Wilmington Police Department was starting a new unit, CFMH, and Cummings thought Babby could be good for that unit of Special Operations.

33.    Explain what if any discipline was given to Sergeant Wells with respect to Plaintiff's complaint that Wells made racially insensitive and derogatory comments about Puerto Ricans and Mexicans.

**ANSWER:**    Defendants are not aware that Plaintiff ever made this complaint about Wells. It was Alfred Izquierdo who made this complaint about Wells' comments

# B-71

about Puerto Ricans and Mexicans. As for Officer Izquierdo's complaint about Wells, Wells was given a written reprimand.

34.    With respect to disciplinary actions taken against Plaintiff, please identify all officers who have been found "guilty" of the same infraction(s) as Plaintiff.  Of these officers, please identify what, if any, disciplinary action(s) were taken against those officers.

**ANSWER:**    **Objection.**  This request, as it relates to other officers, is overly broad and not reasonably calculated to lead to the discovery of admissible, and disclosure of disciplinary information about other officers would violate the Law Enforcement Officers Bill of Rights, 11 Del.C. § 9200.

35.    Explain whether or not Director Mosley conducted any investigation of Plaintiff's complaints of retaliation.

**ANSWER:**    Yes, Director Mosley discussed/investigated with staff.

36.    Explain the results, if any, of the investigation conducted by Director Mosley with respect to Plaintiff's complaints.

**ANSWER:**    Director Mosley found the complaint to be unsubstantiated.

37.    Was there an investigation into comments made by Sergeant Wells in or around 2001 during an Equal Housing Conference attended by Plaintiff?  If yes, please identify:

   a)    comments made by Sergeant Wells;

   b)    date investigation began;

   c)    date investigation concluded;

   d)    results of the investigation;

   e)    individuals involved in the investigation;

# B-72

11

          f)      individuals interviewed.

**ANSWER:**    See reports dated May 18, 2001 and October 3, 2001, and the OPS

investigative report at Bates Stamps 5053 & 5054.

    38.    Was Wells disciplined in any way as a result of the investigation of his

comments about Puerto Ricans and Mexicans? If yes, what disciplinary action(s) was taken.

**ANSWER:**    Yes, he received a written reprimand.

    39.    Explain the reason(s) and/or circumstances surrounding the decision to

transfer Wells to a position in the Chief's office as the Department Spokesperson in 2001.

**ANSWER:**    **Objection.** The reasons for Wells's transfer are not reasonably calculated to

lead to the discovery of admissible evidence for Babby's retaliation claim.

Alex J. Mili, Jr., Esquire (#4125)
City of Wilmington Law Department
Louis L. Redding City/County Bldg.
800 N. French Street, 9th Floor
Wilmington, DE 19801
Attorney for Defendant

Dated: May 3, 2007

# B-73

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM P. BABBY, III, | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. 06-552 JJF |
| v. | : | |
| | : | TRIAL BY JURY DEMANDED |
| CITY OF WILMINGTON | : | |
| DEPARTMENT OF POLICE, | : | |
| | : | |
| Defendant. | : | |

### DEFENDANTS' DISCLOSURES
### PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendants submit these initial disclosures based on information reasonably available at the time of submission. Defendants reserve the right to supplement these disclosures and the right to object to any disclosures based on appropriate grounds.

**1.    Names of individuals likely to have discoverable information:**

Chief Michael Szczzerba, WPD, 300 N. Walnut Street, Wilmington, DE 19801
James Mosely, Director, WPD, 300 N. Walnut Street, Wilmington, DE 19801
Captain Bobby Cummings, WPD, 300 N. Walnut Street, Wilmington, DE 19801
Captain Marlyn Dietz, WPD, 300 N. Walnut Street, Wilmington, DE 19801
Lt. Carolyn Henry, WPD, 300 N. Walnut Street, Wilmington, DE 19801
Officer Alfred Izquierdo, WPD, 300 N. Walnut Street, Wilmington, DE 19801
Mitchell Rock, 14 Westwood Blvd., Hockessin, DE 19707

**2.    Documents:**

The EEOC file, which consists of more than two thousand pages which are available to Plaintiff upon request.

**3.    Identification of Experts:**

Defendants have not retained any experts to date, but reserve the right to retain experts and supplement this response accordingly.

# B-74

**4.   Insurance Coverage:**

The City is self-insured.

CITY OF WILMINGTON LAW DEPARTMENT

/s/ Alex J. Mili, Jr., Esquire
Alex J. Mili, Jr., Esquire (DE Bar Id. No. 4125)
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendants

Dated:  January 16, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WILLIAM P. BABBY, III,                    :
                                          :
                Plaintiff,                :
                                          :        C.A. No.  06-552 JJF
v.                                        :
                                          :        TRIAL BY JURY DEMANDED
CITY OF WILMINGTON                        :
DEPARTMENT OF POLICE,                     :
                                          :
                Defendant.                :

### CERTIFICATE OF SERVICE

I, Alex J. Mili, Jr., Esquire, hereby certify that on this 16th day of January, 2007, I filed the

Defendants' Disclosures Pursuant to Federal Rule of Civil Procedure 26 with the Clerk of Court

using CM/ECF which will send notification of such filing(s) that this document is available for

viewing and downloading from CM/ECF to the following:

> Jeffrey K. Martin, Esquire
> Lori A. Brewington, Esquire
> Margolis Edelstein
> 1509 Gilpin Avenue
> Wilmington, DE 19806


> /s/ Alex J. Mili, Jr.
> Alex J. Mili, Jr., Esquire (DE Bar I.D. #4125)
> Assistant City Solicitor
> City of Wilmington Law Department
> Louis L. Redding City/County Building
> 800 N. French Street, 9th Floor
> Wilmington, DE 19801
> (302) 576-2175
> Attorney for Defendants

**Discovery Documents**
1:06-cv-00552-JJF Babby v. City of Wilmington Department of Police

### U.S. District Court

### District of Delaware

**Notice of Electronic Filing**

The following transaction was entered by Mili, Alex on 1/16/2007 at 2:32 PM EST and filed on 1/16/2007

**Case Name:**      Babby v. City of Wilmington Department of Police
**Case Number:**    1:06-cv-552
**Filer:**          City of Wilmington Department of Police
**Document Number:** 12

**Docket Text:**
NOTICE OF SERVICE of Defendant's Disclosures Pursuant to Federal Rule of Civil Procedure 26 by City of Wilmington Department of Police.(Mili, Alex)


**1:06-cv-552 Notice has been electronically mailed to:**

Lori Ann Brewington    lbrewington@margolisedelstein.com, dlohinetz@margolisedelstein.com, rtaylor@margolisedelstein.com

Alex J. Mili , Jr    amili@ci.wilmington.de.us, dkellam@ci.wilmington.de.us

**1:06-cv-552 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=1/16/2007] [FileNumber=328165-0]
[4bc65be38e90a5c034006a692cb3f6c898acfdcde1cdf11efd8abfdb148b42a2ac89
697dffe983263e9c165bbb3e66636e309d1702e9150f58814cc5895469e1]]

# B-77

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KENNETH A. BOYD,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )      Civil Action No. 05-178-KAJ
                                    )
WILMINGTON POLICE DEPARTMENT,       )
                                    )
            Defendant.              )


## MEMORANDUM ORDER

### I.    INTRODUCTION

Presently before me is a Motion for Summary Judgment (Docket Item ["D.I."] 42;

the "Motion") filed by defendant, the Wilmington Police Department (the "WPD").  The

complaint by plaintiff, Kenneth Boyd ("Boyd"), alleges that the WPD discriminated

against him on the basis of his race, in violation of 42 U.S.C. § 1981 and Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII").  (D.I. 1 at ¶3.)  Boyd

also alleges a violation of the "equal opportunity in employment" provision of the City

Code of Wilmington, § 35-111,[1] and a violation of the covenant of good faith and fair

dealing.  (*Id.* at ¶¶ 55-65.)  Jurisdiction over the claims is appropriate under 28 U.S.C.

§§ 1331 and 1367.  For the reasons that follow, the Motion will be granted as to Boyd's

claims under City Code § 35-111, and denied in all other respects.

---

[1] The WPD notes (D.I. 43 at 38) that Boyd incorrectly cites to § 35-111 of the
City "Charter," when in fact he appears to mean the City Code.  (*See* D.I. 1 at ¶¶ 56-
57.)

## II.     STANDARD OF REVIEW

Summary Judgment shall be granted where "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a

genuine issue of material fact, a court must review the evidence and construe all

inferences in the light most favorable to the non-moving party. *Goodman v. Mead*

*Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make

credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 150 (2000). To defeat a motion for summary judgment, the

non-moving party must "do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 586-87 (1986) (internal citation omitted). The non-moving party "must

set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.

56(c). "Where the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at

587 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of

the non-moving party is insufficient for a court to deny summary judgment. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.    DISCUSSION

### A.     § 35-111 Claim

Section 35-111 of the City Code of Wilmington sets forth the City's policy and

2

B-79

goals with respect to providing equal opportunity in employment for city employees. *See* Wilmington City Code § 35-111. As the WPD points out (D.I. 43 at 38-40), nothing in this section provides for a private cause of action if the policy is violated. Boyd makes no argument to the contrary in his brief. (*See* D.I. 51.) Therefore, the Motion is granted as to Boyd's claims under § 35-111 of the City Code of Wilmington.

### B.    Remaining Claims

There are genuine issues of material fact at least as to whether WPD Chief Michael Szczerba made promotion decisions based on seniority. Boyd, an African-American, asserts that he was discriminated against because, although he was the most senior corporal eligible for promotion to sergeant, a Hispanic male[2] was promoted instead. (D.I. 1 at ¶ 11.) For promotions to sergeant and lieutenant, the WPD utilizes a promotional examination procedure. (*See* D.I. 47 at A-777-81.) Based on the results of the examination, which is given every two years, candidates for promotion are placed in promotional "bands." (*See id.*) Candidates within a band are, according to Boyd, all considered equal. (*See* Boyd Deposition, D.I. 48 at A-942.)

Boyd asserts that Chief Szczerba maintained a policy of promoting candidates within a band based on their seniority. (*See* D.I. 1 at 9, 12, 16; D.I. 48 at A-942-43.) In support of this assertion, Boyd cites the testimony of Sergeant Deborah Donohue, who testified that her promotion had been made based on seniority (D.I. 48 at A-1022), and

---

[2] Boyd identifies the promoted officer as a "Caucasian" (D.I. 1 at ¶ 11), but the record demonstrates that he is, more particularly, of Hispanic descent. (D.I. 44 at A-204-05.)

3

**B-80**

the testimony of Inspector Gilbert Howell, who testified that Chief Szczerba had stated

on at least two occasions that he was making promotion decisions based on seniority

(*id.* at A-1032). The WPD, on the other hand, cites to approximately eleven examples

of times when Chief Szczerba did not make promotion decisions based on seniority.

(*See* D.I. 43 at 6-9.) Thus, there are genuine issues of material fact at least with

respect to whether Chief Szczerba made promotion decisions using seniority in the

manner alleged by Boyd. As a result, the Motion must be denied.[3]

## III.    CONCLUSION

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that the

Motion (D.I. 42) is GRANTED as to Boyd's claim under § 35-111 of the Wilmington City

Code, and DENIED in all other respects.

UNITED STATES DISTRICT JUDGE

July 27, 2006
Wilmington, Delaware

---

[3] The WPD has also moved for summary judgment on the grounds that the City
of Wilmington, not the WPD, is the proper party in interest. While this appears to be an
accurate statement, *see Thomas v. Wilmington Police Dept.*, No. 92C-03-244, 1994 WL
315232, at *2-3 (Del. Super. 1994) ("the Wilmington Police Department may not be
sued as a separate entity"); *Washington v. Wilmington Police Dept.*, Civ.A. No.
92C-05-159, 1995 WL 654158, *3 (Del. Super. 1995) (same), it is also clear that the
City of Wilmington has been involved in this case from the outset, as evidenced by the
fact that the City Solicitor's office is defending the WPD. Thus, I will allow Boyd leave
to amend his complaint to substitute the proper party, and will deny the WPD's motion
for summary judgment on this issue.

4

B-81

## CERTIFICATE OF SERVICE

I, Jeffrey K. Martin, the undersigned counsel for Plaintiff in the above-captioned case, hereby certify that the foregoing *Appendix to Plaintiff's Response to Defendant's Opening Brief in Support of It's Motion for Summary Judgment* was filed via CM/EMF on November 2, 2007 to the following:

> Alex Mili, Esquire
> Assistant City Solicitor
> City of Wilmington
> City/County Building
> 800 North French Street
> Wilmington, DE 19801

**MARTIN & WILSON, P.A.**

**JEFFREY K. MARTIN, ESQ. (#2407)**
**TIMOTHY J. WILSON, ESQ. (#4323)**
1508 Pennsylvania Avenue
Wilmington, DE 19806
(302) 777-4681
jmartin@martinandwilson.com
twilson@martinandwilson.com
*Attorneys for Plaintiff*

DATED:     November 2, 2007