**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

WILLIAM P. BABBY, III,

      v.

CITY OF WILMINGTON
DEPARTMENT OF POLICE,

      Defendant.

C.A. NO. 06-552 JJF

JURY TRIAL DEMANDED

## <u>AMENDED PROPOSED FINAL PRETRIAL ORDER</u>

      This matter comes before the Court at a final pretrial conference held pursuant to Rule 16, Federal Rules of Civil Procedure.

**Plaintiff's Counsel:**
Jeffrey K. Martin, Esquire
Timothy J. Wilson, Esquire
1508 Pennsylvania Ave
Wilmington, DE 19086
Telephone (302) 777-4681
Facsimile (302) 777-5803
jmartin@martinandwilson.com

**Defendant's Counsel**
Gary W. Lipkin, Esquire
Assistant City Solicitor
Louis L. Redding City / County Building
800 N. French St., 9th Floor
Wilmington, DE 19801
Telephone (302) 576-2175

-and-

Kathleen M. Jennings, Esquire
Chandra J. Rudloff, Esquire
Oberly, Jennings & Rhodunda, P.A.
1220 Market Street, Suite 710
Wilmington, DE 19801
Telephone (302) 576-2000
Facsimile (302) 576-2004
kjennings@ojlaw.com

I.      **Statement of the Nature of the Case:**

   **Plaintiff**:      This is a claim for injunctive relief and damages brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e *et seq*.  Plaintiff was retaliated against by Defendant after Plaintiff filed a complaint against his supervisor as a result of his supervisor's racially hostile and derogatory language.  Plaintiff suffered various adverse employment actions following his complaint about his supervisor's racially hostile behavior.

   **Defendant**:  This is an action alleging retaliation.  Plaintiff, a Wilmington Police Officer, claims that the City of Wilmington Police Department ("WPD") retaliated against him for providing a Departmental Information with respect to a complaint filed by another officer against a Sergeant of the Department.  Plaintiff was never terminated, demoted, reprimanded or denied promotion or transfer as a result of his involvement with the complaint.  Plaintiff did not receive the "cold shoulder treatment" by WPD as a result of his involvement with the complaint.  Plaintiff's own record caused his superiors to conclude he should not be transferred.  The issues are raised in the Complaint and the Answer thereto.  No counterclaims, cross-claims, etc., are involved.

II.     **Jurisdiction:**

   The jurisdiction of this Court is founded on the existence of a question arising under federal statutes.  In particular, this claim arises out of the anti-retaliation provisions of Title VII of the Civil Rights Act of 1991, 42 USC § 2000e.

III.    **Statement of Uncontroverted Facts:**

   1.      Plaintiff was hired as a recruit officer on or about January 9, 1989.

   2.      Plaintiff has been employed with Defendant, City of Wilmington Department of Police, for over eighteen years.

3.      In or around the year 2000, Plaintiff began working under the supervision of Lieutenant Bobby Cummings in the Human Resources Division after being placed on light duty while recovering from surgery.

4.      While working in the Human Resources Division, Plaintiff filled in for two different positions that were left vacant by other injured officers: the Extra-Duty Officer and the Training Officer.

5.      On or about March 27, 2001, Plaintiff was approached by Cummings who had recently been promoted to Captain and was assigned to the newly-formed Special Operations Division as commander.  Cummings asked Plaintiff to put in a transfer request to work in his division as a Crime Free Housing Officer.

6.      Plaintiff was transferred into the Special Operations Division along with two junior officers in or around April of 2001.

7.      Shortly thereafter, Plaintiff along with the two junior officers, Officer Izquierdo, a Hispanic officer, and Officer Tashawn Counts, an African-American officer, attended an Equal Housing Conference at the University of Delaware.

8.      While at this conference, Sergeant William Wells, a direct supervisor of the three officers made a remark about the habits of Hispanics.

9.      Plaintiff, along with Officers Izquierdo and Counts, approached Captain Cummings about this incident in or about May of 2001 and informed Captain Cummings that Sergeant Wells had made remarks they deemed offensive toward Puerto Ricans and Mexicans at the Equal Housing Conference.

10.     Officer Counts informed Plaintiff and Officer Izquierdo without any explanation that he no longer wanted to proceed with a Complaint against Sergeant Wells.

11.     Plaintiff and Officer Izquierdo filed the complaint against Sergeant Wells which was assigned to Lieutenant Carolyn Henry, a friend of Sergeant Wells, to investigate.

12.     The complaint was assigned to Lieutenant Carolyn Henry, a friend of Sergeant Wells, to investigate.

13.     The investigation of the complaint took more than four months to complete.

14.     Sergeant Wells received a written reprimand for his comments.

15.     Plaintiff and Officer Izquierdo learned that Sergeant Wells was disciplined for his comments.

16.     Sergeant Wells was subsequently transferred to a position in the Chief's office as the Department spokesperson.

17.     Officer Counts who opted not to file a complaint against Sergeant Wells remained in his position in the Crime Free Housing Division.

18.     Plaintiff approached Captain Cummings and asked him why Officer Counts was chosen to remain in the Crime Free Housing Division while Plaintiff was assigned to street patrol duty.

19.     In or around June of 2001, Plaintiff was officially assigned to F Platoon under the direction of Captain Marlyn Dietz and Lieutenant Mitchell Rock, both of whom are close friends of Sergeant Wells.

20.     F Platoon is a community policing platoon in the Patrol Division of the Wilmington Police Department.

21.     In or around the first week of September 2001, Plaintiff was called into Lieutenant Rock's office, along with Sergeant Corey Staats.  Rock asked Plaintiff what his problem was and why he had not made any arrests or given out any tickets all summer.

4

22.     Shortly after the meeting, Plaintiff and Officer Izquierdo were assigned together for street duty.

23.     In October 2001, Lieutenant Rock approached Plaintiff's soon-to-be supervisor, Sergeant Morrissey, and advised him that he should watch out for Plaintiff because Plaintiff is a "no good piece of shit."

24.     In or around November 2001, Plaintiff was transferred back to the Patrol Division and assigned to street duties with E Platoon.

25.     After being transferred to the Patrol Division, Plaintiff submitted a request through the proper chain of command to meet with the Director of Public Safety, James N. Mosley, who maintained an open door policy.

26.     Plaintiff was given permission to meet with the Director of Public Safety; the meeting took place in or around mid-December of 2001.  In this meeting with Mr. Mosley, Plaintiff complained about his transfer.

27.     The Director of Public Safety advised Plaintiff that he would investigate his allegations.

28.     Plaintiff submitted a written request for a transfer out of the Patrol Division on or about February 21, 2002 and was once again denied without any supporting explanation.

**IV.     Statement of Facts That Remain at Issue:**

1.     Plaintiff has consistently received standard to superior performance evaluations during his entire time employed with Defendant, Wilmington Police Department, most recently receiving a superior evaluation on or about September 14, 2004.

2.     Plaintiff handled both the Extra Duty Officer position and the Training Officer position with virtually no training, and was praised numerous times, sometimes on a daily basis,

by Captain Maggitti and Lieutenant Cummings, for doing an exceptional job fulfilling the duties of these positions.  However, when Plaintiff submitted a written request for a permanent transfer to these positions, his request was denied.  Defendant denies that these positions were vacant when Plaintiff applied for them.

3.     Plaintiff complied with Capt. Cummings' request and submitted a one-line transfer request and was accepted into the division without listing any qualifications.  Plaintiff was advised that the paperwork was "just a formality" to get him into the division.

4.     While at the Equal Housing Conference a the University of Delaware, Sergeant William Wells, a direct supervisor of the three (3) officers, made various racially insensitive and derogatory comments about "Puerto Ricans" and "Mexicans" in the presence of Plaintiff and Officers Izquierdo and Counts.

5.     Captain Cummings attempted to dissuade Plaintiff and Officer Izquierdo from filing a formal complaint against Sergeant Wells, with respect to the alleged comments made by Sergeant Wells pertaining to Puerto Ricans and Mexicans, and suggested they all meet to discuss and attempt to resolve the issue.

6.     The meeting with Capt. Cummings took place later that month, but Plaintiff and Officer Izquierdo were dissatisfied with the outcome and they requested that charges be filed against Sergeant Wells and that he [Wells] be disciplined for his actions.

7.     The investigation was completed after Plaintiff and Izquierdo complained to City Personnel about the delay in the investigation.

8.     The Complaint that was investigated by Lieutenant Henry was filed by Officer Izquierdo.  Officers Babby and Counts were witnesses involved in connection with the facts of the Complaint.

9.      It is not normal protocol for an investigation to begin four months after a complaint is filed.

10.     Plaintiff and Officer Izquierdo were demoted and transferred to the Special Operations Division, F Platoon Squad, and assigned to street patrol duties.

11.     Shortly after this meeting, Plaintiff and Officer Izquierdo were assigned together for street duty.  At the end of that month, Plaintiff and Officer Izquierdo were the two (2) top producers of arrests and traffic tickets in their division.

12.     In the summer of 2001, Plaintiff was given an assignment by Lieutenant Rock wherein he was to park his patrol car in the 1200 block of West 6th Street, Wilmington, Delaware, and remain there for eight (8) hours every day with the exception of one (1) break. Plaintiff was advised that the purpose of the assignment was that his presence there would hopefully thwart and/or discourage the sale of drugs in that area by local drug dealers.

13.     Plaintiff was also instructed by Lieutenant Rock not to enforce any laws or make arrests while sitting in his patrol car in the 1200 block of W 6th St, Wilmington, Delaware; that his presence there alone would be enough to curb drug sales in that area.  Plaintiff was assigned to this duty for the entire summer of 2001.

14.     Upon his return from vacation in the summer of 2001, Plaintiff was once again assigned to the aforementioned task.

15.     Plaintiff reminded Lieutenant Rock in Lieutenant Rock's office in September of 2001, that he was merely doing as he was instructed by Rock; that he was not to enforce any laws or make any arrests, but was there to curb the drug sales in the area.  Rock called Plaintiff a "liar" and told him he had a "bad attitude."  Rock also called Plaintiff "lazy" and told him that if he "didn't start putting out some numbers, [Rock would] transfer [Plaintiff] back to patrol

[duty]."

16.    In or about October 2001, Plaintiff was once again called into Lieutenant Rock's office regarding an incident in the rear parking lot of the Department's gas station.

17.    While Plaintiff was fueling his vehicle, Lieutenant Rock walked past him approximately fifty-sixty feet away, and entered the Police Staff garage. Rock said something to Plaintiff, but Plaintiff could not hear him so Plaintiff waved to Rock.

18.    As Plaintiff was pulling out of the lot, Lieutenant Rock summoned him to his office on the police radio. When Plaintiff responded to Rock's office Rock asked Plaintiff what his problem was and why he "flipped [him] off." Plaintiff told Rock he did not flip him off; that he waved to him to acknowledge that he saw him, and told Rock that he could not hear what Rock had said to him.

19.    Rock began shouting at Plaintiff and told Plaintiff that he (Rock) was his (Plaintiff's) boss and a lieutenant and that he (Rock) was free to discipline Plaintiff as he saw fit. Plaintiff told Rock that he did not have a problem with being disciplined if he did something wrong. Rock then dismissed Plaintiff from his office.

20.    In or around October of 2001, Captain Dietz attended the daily roll call to discuss a new work schedule for F Platoon. Later that same day, Plaintiff and a few other officers were standing in the House Sergeant's office discussing the new schedule. Captain Dietz entered the room and joined in the discussion with the officers.

21.    Shortly thereafter, Plaintiff was in the roll call room reviewing the overtime book when he was approached by Captain Dietz. Dietz stated to Plaintiff, "I hear you don't like the new schedule," to which Plaintiff responded in the affirmative, advising Dietz that he and the other officers did not like the new schedule because it was not very convenient to him or the

other officers noting that the new schedule severely limited the amount of time they were going to be able to spend with their families. Dietz then left the room without comment.

22.    Plaintiff was called into Lieutenant Rock's office and accused of approaching Captain Dietz to discuss the new work schedule without going through proper chain of command.

23.    It was Captain Dietz who initiated this conversation about the new work schedule.

24.    Plaintiff was warned by Lieutenant Rock that the next time he spoke with Captain Dietz without going through the proper chain of command, Lieutenant Rock would write up charges against Plaintiff.

25.    Plaintiff was transferred to the patrol division in November and was told that Captain Dietz had made the final decision for this transfer.

26.    Near the end of October of 2001, Plaintiff was summoned by Captain Cummings and advised that he was being transferred back to the Patrol Division in November. When Plaintiff asked why he was being transferred back to this division, Cummings said that it was out of his hands and that Captain Dietz made the final decision.

27.    In or around December of 2001, Plaintiff was summoned by Captain Dietz who wanted to know why Plaintiff requested to meet with the Director of Public Safety. Plaintiff informed Captain Dietz that it was a personal matter that he only wanted to discuss with the Director of Public Safety.

28.    In the meeting with the Director of Public Safety, Plaintiff informed the Director that he had been retaliated against for making a complaint against a supervisor and was demoted (transferred back to patrol), despite the fact that he was the senior officer, and most qualified officer, in his previous position.

29.    Also during this meeting with the Director, Plaintiff presented a copy of the Department's transfer policy to demonstrate that he was the most qualified individual for the position and, according to policy, should have remained in that position.

30.    When Mr. Mosley was presented with a copy of the Department's transfer policy, Mr. Mosley told Plaintiff that he was not aware that such a policy existed.

31.    Mr. Mosley asked Plaintiff for other information supporting his allegations, and Plaintiff informed the Director that a fellow officer could support his claims.

32.    Plaintiff was told that Mr. Mosley would investigate the allegations and get back to Plaintiff.

33.    The Director also asked Plaintiff what other information he had to support his allegations. Plaintiff informed the Director that a fellow officer could support his claims.

34.    Plaintiff submitted a written request for a transfer out of the Patrol Division on or about February 21, 2002 and was once again denied.

35.    On or about May 10, 2004, Plaintiff again submitted a written request for a transfer out of the Patrol Division. Plaintiff specifically requested to be returned to his day work position in the Special Operations Division. Captain Cummings advised Plaintiff that he was aware of his request and that he would "see what [he could] do."

36.    Plaintiff requested another transfer in December 2005 to the position of Sector Specialist in F Platoon. However, his transfer request was subsequently denied.

37.    From the time Plaintiff initially filed his complaint about Sergeant Wells, Plaintiff has experienced the "cold shoulder treatment" from his superiors, and has virtually been ignored on a daily basis from the day he filed the complaint against Sergeant Wells to this present day. Plaintiff soon found himself shut out by his supervisors; he has been virtually ignored on a daily

basis.  Plaintiff's superiors have continuously refused to even acknowledge that he is in the room or say hello to him in an elevator.  In group conversations, Plaintiff is invariably not even recognized by his supervisors/superiors.  Plaintiff has been experiencing the "cold-shoulder-treatment" daily throughout the remainder of 2001, all of 2002, 2003, 2004, and 2005 and this practice continues as of the filing of this action.

38.    In total, Plaintiff submitted nine (9) transfer requests since 2002.

39.    The transfer to Spokesperson for the Chief's office was a promotion for Sergeant Wells.

40.    Plaintiff was demoted to F Platoon in retaliation for his complaint against Sergeant Wells.

41.    Plaintiff was demoted to E Platoon in retaliation for his complaint against Wells.

42.    Officer Counts would have been placed in F Platoon had he filed a complaint against Wells.

43.    According to Defendant's policy the discipline for use of racial and derogatory comments is more than just a written reprimand.

44.    It is not normal practice for an officer to be on the force for seventeen years and remain in patrol despite various requests to transfer to different positions.

45.    Whether other officers with more seniority than Plaintiff are working as patrol officers.

46.    Whether other officers also applied for each of the same transfers that Plaintiff applied for.

47.    Plaintiff has been disciplined by the Office of Professional Standards for performance deficiencies.

48.    The Extra Duty Officer position and the Training Officer position were not vacant when Plaintiff applied for them.

49.    That Plaintiff would have worked overtime had he been transferred to a different position.

50.    All of Plaintiff's transfer requests subsequent to the May of 2001 incident involving Lieutenant Wells were not casually connected to the incident in question.

51.    All the transfer decisions were based on the Division Commander's opinion regarding the best candidate(s) for the positions.

52.    WPD did not retaliate against Plaintiff as a result of his August 2001 memorandum to Chief Szczerba.

53.    When Plaintiff applied for a position in the Criminal Investigation Division in February 2002, no position was open or available.

54.    The Complaint took several months to investigate because it involved allegations of conduct by Lieutenant Wells against Officer Izquierdo that spanned several years.

55.    Plaintiff's transfer to E Platoon was occasioned by his poor performance in F Platoon.

56.    Plaintiff had and continues to have opportunities in patrol to work overtime and extra-duty jobs that would allow him to secure the same income as he claims he lost due to not being assigned to specialized units.

57.    Plaintiff has suffered no damages.

## VI.    Additional Matters with Respect to Statements of Fact

### A.    Defendant's Position with Respect to Certain Statements of Facts

The following factual matters are currently disputed with respect to the accuracy of the

statements, yet have been included within the "uncontroverted facts" section above because, in some instances, the incorrect facts may have been erroneously admitted by the Defendant. Defendant asserts the incorrect factual statements, whether favorable or unfavorable to the Defendant's position, must be deemed disputed facts based on the discovery and anticipated witness testimony, and therefore are not correctly placed in Section III above. These incorrect factual statements are listed below:

1.    Plaintiff and Officer Izquierdo filed the complaint against Sergeant Wells which was assigned to Lieutenant Carolyn Henry, a friend of Wells, to investigate.

2.    Sergeant Wells received Division Level Counseling for his comments.

3.    Officer Counts remained in F Platoon as the Crime Prevention Officer.

4.    Officer Counts who opted not to file a complaint against Sergeant Wells remained in his position in the Crime Free Housing Division.

5.    Plaintiff approached Cummings and asked him why Officer Counts was chosen to remain in the Crime Free Housing Division while Plaintiff was assigned to street patrol duty.

6.    In or around June of 2001, Plaintiff was officially assigned to F Platoon under the direction of Captain Marlyn Dietz and Lieutenant Mitchell Rock, both of whom are close friends of Sergeant Wells.

7.    In October 2001, Lieutenant Rock approached Plaintiff's soon-to-be supervisor, Sergeant Morrissey, and advised him that he should watch out for Plaintiff because Plaintiff is a "no good piece of shit."

**B.    Plaintiff's Response**

Each of these statements (except statement #2) has been admitted by way of Defendant's Answer to Complaint and/or Responses to Requests for Admission. Each of these issues was considered during the Summary Judgment proceedings. Indeed, Defendant's counsel changed

13

the City's response to statement #7 from "denied" to "admitted." Defendant's trial counsel, who have entered the case in the last month, are now seeking to amend their response to statement #7 by denying same. Plaintiff objects to this last hour attempt to change this statement that was admitted after further consideration and evaluation by defense counsel on October 29, 2007. Plaintiff similarly objects to changing any of the statements that were previously admitted by Defendant.

## VII.  Statements of Issues of Law:

1.  Whether, as a matter of law, the "cold shoulder" treatment is retaliatory conduct.

2.  Whether a claim for breach of the covenant of good faith and fair dealing is excluded by the Delaware Discrimination Employment Act, 19 Del. C. §701, *et. seq*.

3.  Whether the refusal to grant Plaintiff's transfer requests (to lateral positions) is an "adverse employment action."

4.  Whether Plaintiff's theory of damages is so speculative that it cannot be permitted under law.

## VIII.  List of Pre-marked Exhibits:

PX1.  Plaintiff's request for transfers to several positions submitted to Chief Szczerba.

PX2.  Responses from Chief Szczerba to Plaintiff's requests for transfer.

PX3.  Communications from Chief Szczerba to all Division of Commanders concerning the 2002-4 Eligibility Lists for Promotions in Sections 6.78 and 7.1 of the Wilmington and FOP Lodge Number 1 Bargaining Agreement.

PX4.  Copies of Wilmington FOP Lodge 1 Bargaining Agreement Section 6.78 and 7.1 on the harassment free work environment and conduct unbecoming an officer.

PX5.  Employment performance evaluations of Plaintiff from 1994, 1997, 1999 and

14

2000 through 2004.

PX6.   Article 17, Classification and Salaries.

PX7.   Plaintiff's tax returns and W-2's for years 2001 – 2007.

Defendant reserves the right to object to PX6 on the grounds that it is hearsay, if or when this document is identified with greater specificity.

PX8.   Directive 6.49 (Career Development Program)

DX1.   Plaintiff's discipline records.

A.   Wilmington Police Department – I.A.D. Penalty Log

B.   Supporting documents of I.A.D. Penalty Log, including but not limited to, Departmental Information, Memoranda and letters relating to the discipline of Plaintiff.

Plaintiff objects to the supporting documents as hearsay.

C.   Article 7 of the City of Police & FOP Lodge #1 Rank & File Bargaining Agreement.

D.   Directive 6.8 (Procedures for Responding to Emergency Calls, Making Vehicle Stops, and Conducting Pursuits).

E.   Directive 6.14 (Procedures for Appearing in Court and Felony Intake).

F.   Directive 6.33 (Traffic Accident Investigations).

G.   Directive 6.48 (Annual Firearms Training and Qualifications).

H.   Directive 7.1 (Conduct Unbecoming an Officer).

I.   Directive 7.2 (General Requirements).

J.   Directive 7.6 (Neglect of Duty).

K.   Directive 7.8 (Investigative Regulations).

L.  Directive 7.13 (Uniform, Equipment, and Dress Code).

M.  Directive 8.2 (Classification of Punishment).

N.  Directive 8.3 (Elevation of an Offense).

O.  Directive 8.8 (Appeal Board).

P.  Directive 7.8 (Investigative Regulations).

DX2.  Transfers Documents.

A.  Chart of transfers requested by Plaintiff.

B.  Plaintiff's transfer requests submitted from 1990 to 2001.

C.  Criminal Investigative Division position (2002)

    i.  Informational Bulletin from Chief Szczerba to All Personnel regarding Transfer Requests, dated January 22, 2002.

    ii.  Plaintiff's transfer request submitted February 21, 2002 for Criminal Investigative Division.

    iii.  Informational Bulletin from Chief Szczerba to All Personnel regarding Transfers & Assignments, dated February 20, 2003.

D.  Criminal Investigative Division position (2004)

    i.  Plaintiff's transfer request submitted May 10, 2004 for Criminal Investigation Division.

    ii.  Memorandum from Human Resources listing officers requesting transfer, dated June 1, 2004.

E.  Special Operations Division position (2004)

    i.  Plaintiff's transfer request submitted May 10, 2004 for Special Operations Division.

    ii.   Memorandum from Human Resources listing officers requesting transfer, dated June 1, 2004.

F.    Support Services as Evidence Storage Officer / Evidence Room Clerk position (2005)

    i.   Informational Bulletin from Chief Szczerba to All Personnel regarding Transfer Requests, dated May 13, 2005.

    ii.   Plaintiff's transfer request submitted May 15, 2005 for Evidence Storage Officer.

    iii.   Memorandum from Human Resources listing officers requesting transfer, dated May 26, 2005.

G.    Forensic Services Unit position (2005)

    i.   Informational Bulletin from Chief Szczerba to All Personnel regarding Transfer Requests, dated April 15, 2005 and April 29, 2005.

    ii.   Plaintiff's transfer request submitted July 4, 2005 for Forensic Services Unit.

    iii.   Memorandum from Human Resources listing officers requesting transfer, dated July 15, 2005.

    iv.   Informational Bulletin from Chief Szczerba to All Personnel regarding Transfers & Assignments, dated August 4, 2005.

H.    School Resource Officer position (2005)

    i.   Informational Bulletin from Chief Szczerba to All Personnel regarding Transfer Requests, dated August 10, 2005.

    ii.   Plaintiff's transfer request submitted August 21, 2005 for School

Resources Officer.

    iii.  Memorandum from Human Resources listing officers requesting transfer, dated September 8, 2005.

I.    Evidence Detection Officer position (2005)

    i.  Informational Bulletin from Chief Szczerba to All Personnel regarding Transfer Requests, dated September 13, 2005.

    ii.  Plaintiff's transfer request submitted September 19, 2005 for Evidence Detection Officer.

    iii.  Memorandum from Human Resources listing officers requesting transfer, dated October 6, 2005.

    iv.  Informational Bulletin from Chief Szczerba to All Personnel regarding Transfers & Assignments, dated October 17, 2005.

J.    Sector Specialist (Community Policing) position (2005)

    i.  Plaintiff's transfer request submitted December 1, 2005 for Sector Specialist.

    ii.  Informational Bulletin from Chief Szczerba to All Personnel regarding Transfers & Assignments, dated December 9, 2005.

K.    Traffic Investigator position (2007)

    i.  Plaintiff's transfer request submitted March 10, 2007 for Traffic Investigator.

    ii.  Memorandum from Human Resources listing officers requesting transfer, dated March 19, 2007.

    iii.  Informational Bulletin from Chief Szczerba to All Personnel regarding

Transfers & Assignments, dated April 9, 2007.

DX3.   Employee evaluations of Plaintiff.

    A.  Evaluation Period January 2000 through January 2001.

    B.  Evaluation Period January 2001 through January 2002.

    C.  Evaluation Period January 2003 through January 2004.

    D.  Information Bulletin from Chief Szczerba dated March 7, 2003.

DX4.   Promotion Lists.

    A.  Promotion list for 2000 through 2002.

    B.  Promotion list for 2002 through 2004.

    C.  Promotion list for 2004 through 2006.

    D.  Seniority List dated March 22, 2007.

Plaintiff objects to the promotion lists on the grounds of relevance.

DX5.   Directive 6.49 (Career Development Program).

DX6.   Directive 1.0 (The Organization)

DX7.   Statistics with respect to overtime hours worked by Plaintiff and other officers similarly situated.

Plaintiff reserves his right to object to these documents as not produced in the ordinary course of business.

DX8.   Plaintiff's sick or leave time.

    A.  Chart summarizing sick/leave time used by Plaintiff.

    B.  Memo from Chief Szczerba to All Division Commanders and Lieutenants regarding Sick and Vacation Totals, dated February 15, 2007.

**IX.    List of Witnesses:**

**A.    List of witnesses the plaintiff expects to call, including experts:**

      1.    Expert witnesses:  None.

      2.    Non-expert witnesses.

          a.    James M. Mosley, Director of Public Safety City of Wilmington, 300 N Walnut St., Wilmington, DE 19801.

          b.    Captain Bobby Cummings, Wilmington Police Department, 300 N. Walnut Street, Wilmington, DE 19801.

          c.    Lieutenant Faheem Akil, Wilmington Police Department, 300 N. Walnut Street, Wilmington, DE 19801.

          d.    Mitchell Rock, former Lieutenant, Wilmington Police Department, 300 N. Walnut Street, Wilmington, DE 19801.

          e.    Lieutenant William Wells, Wilmington Police Department, 300 N. Walnut Street, Wilmington, DE 19801.

          f.    Sergeant Michael Morrissey, Wilmington Police Department, 300 N. Walnut Street, Wilmington, DE 19801.

          g.    Corporal Alfred Izquierdo, Wilmington Police Department, 300 N. Walnut Street, Wilmington, DE 19801.

          h.    Sergeant Tashawn Counts, Wilmington Police Department, 300 N. Walnut Street, Wilmington, DE 19801.

          i.    Karen Babby, wife of Plaintiff, 2107 Lindell Blvd., Wilmington, DE 19808.

          j.    Sergeant Fiorvante; Wilmington Police Department, 300 N. Walnut Street; Wilmington, DE 19801.

    k.  Sergeant Thomas Kane; Wilmington Police Department; 300 N. Walnut Street; Wilmington, DE 19801.

**B.  List of witnesses defendant expects to call, including experts:**

1. Expert witnesses:  None.

2. Non-Expert witnesses.

    a.  James M. Mosley, Director of Public Safety City of Wilmington, 300 N Walnut St., Wilmington, DE 19801.

    b.  Captain Bobby Cummings, Wilmington Police Department, 300 N. Walnut Street, Wilmington, DE 19801.

    c.  Mitchell Rock, former Lieutenant, Wilmington Police Department, 300 N. Walnut Street, Wilmington, DE 19801.

    d.  Lieutenant William Wells, Wilmington Police Department, 300 N. Walnut Street, Wilmington, DE 19801.

    e.  Sergeant Tashawn Counts, Wilmington Police Department, 300 N. Walnut Street, Wilmington, DE 19801.

    f.  Chief Michael Szczerba, Wilmington Police Department, 300 N. Walnut St., Wilmington, DE 19801.

    g.  Captain Michael Maggitti, Wilmington Police Department, 300 N. Walnut St., Wilmington, DE 19801.

    h.  Captain Marlyn Dietz, Wilmington Police Department, 300 N. Walnut St., Wilmington, DE 19801.

    i.  Lieutenant Carolyn Henry, Wilmington Police Department, 300 N. Walnut St., Wilmington, DE 19801.

    j.   Sergeant Corey Staats, Wilmington Police Department, 300 N. Walnut St., Wilmington, DE 19801.

    k.   Inspector Martin Donahue, Wilmington Police Department, 300 N. Walnut St., Wilmington, DE 19801.

    l.   Captain Nancy Dietz, Wilmington Police Department, 300 N. Walnut St., Wilmington, DE 19801.

    m.   Captain James Jubb, Wilmington Police Department, 300 N. Walnut St., Wilmington, DE 19801.

    n.   Captain Victor Ayala, Wilmington Police Department, 300 N. Walnut St., Wilmington, DE 19801.

    o.   Captain Jerry L. Custis, Wilmington Police Department, 300 N. Walnut St., Wilmington, DE 19801.

    p.   Defendant reserves the right to call any witnesses on Plaintiff's witness list not called by Plaintiff.

**C.  Rebuttal Witnesses**.  Each of the parties may call rebuttal witnesses only in the event of "true surprise."

**X.     Statement of What Plaintiff Intends to Prove at Trial and Damages:**

A.  Plaintiff will prove that he was retaliated against when he filed a complaint against Sergeant Wells for his racially insensitive and derogatory comments regarding Hispanic Americans.  Plaintiff will show that he was demoted to street patrol following that and despite many requests to transfer from street patrol he remains in street patrol as a means of retaliation.

B.  Damages:    Plaintiff will testify about his economic losses as a result of his limited

ability to work overtime due to a rotating shift that he has been working on for years. Plaintiff will also testify along with his physicians about the physical manifestations that have been caused by the work-induced stress as a result of defendants' retaliatory conduct.

**XI.    Statement of What Defendants Intends to Prove as Defense:**

Defendant will prove that it did not retaliate against Plaintiff, that Plaintiff's transfer from one patrol assignment to another is not a demotion, and that denial of Plaintiff's transfer requests was not causally connected to his complaint about then-Sergeant Wells.

Defendant will prove that Plaintiff has not lost any income, economic opportunities nor has he incurred any compensable stress as a result of rotation from one patrol assignment to another and/or not being given the transfer assignment of his choice.

**XII.    Statements by Counterclaimants or Cross-claimants:**

Not applicable.

**XIII.    Amendments to Pleadings:**

The Defendant makes the following amendments with respect to its Answer to the Complaint:

17.    Denied that Plaintiff filed the complaint against Sergeant Wells.  Admitted that Officer Izquierdo filed a complaint against Sergeant Wells.  By way of further explanation, the investigation with respect to Officer Izquierdo's complaint was initially assigned to Capt. Cummings, but was reassigned to Lt. Henry while Capt. Cummings was training at the FBI Academy in Quantico, Virginia.  The investigation was assigned to Lt. Henry so that it could move forward in Capt. Cummings' absence.  Upon Capt. Cummings' return from the FBI Academy, he concluded the investigation and made his final recommendation.

20.  Denied.  Sergeant Wells received Division Level Counseling as a result of the investigation into the complaint filed by Officer Izquierdo.

Plaintiff objects to these amendments for the reasons cited in Section VI above.

## XIV.    Certification of Two-Way Communication:

The parties, by and through their undersigned counsel, have conferred and have participated in mediation with Magistrate Judge Leonard P. Stark, but have been unable to resolve this matter through settlement.

## XV.    Other Matters:

Defendant objects to the introduction of any testimony with respect to the amount of income Plaintiff may have earned had he been transferred to a specialized unit.  Plaintiff has no basis for nor no knowledge of the amount of income he may have earned in any particular unit.  Without a foundation to show otherwise, Plaintiff would simply be speculating regarding his potential income.

Plaintiff disagrees with Defendant's objection as being inaccurate and late.

## XVI. Conclusion:

This order shall control the subsequent course of action unless modified by the Court to prevent manifest injustice.


DATED: _____


_____
UNITED STATES DISTRICT JUDGE


APPROVED AS TO FORM AND SUBSTANCE:


 /s/ Jeffrey K. Martin_____
Jeffrey K. Martin, Esquire
Martin & Wilson, P.A.
1508 Pennsylvania Ave.
Wilmington, DE 19806
(302) 777-4681
*Attorney for Plaintiff*

 /s/  Chandra J. Rudloff_____
Kathleen M. Jennings, Esquire
Chandra J. Rudloff, Esquire
Oberly, Jennings & Rhodunda, P.A.
1220 Market Street, Suite 710
Wilmington, DE 19801
(302) 576-2000

-and-

Gary W. Lipkin, Esq. (I.D. No. 4044)
City of Wilmington Law Department
800 N. French St., 9th Floor
Wilmington, DE 19801
(302) 576-2175
*Attorneys for Defendant*

**Schedule (2)(c)(1)**
**Plaintiff's Exhibits**

| Plaintiff's Exhibit No. | Description | Defendant's Basis For Objection | Plaintiff's Response To Objection |
|---|---|---|---|
| P1 | Babby's Complaint about Sgt. Wells dated August 22, 2001 Bates No. P0113 | | |
| P2 | Transfer Request Special Operations Division dated March 27, 2001 Bates No. P0056 | | |
| P3 | Transfer Request Criminal Investigative Division (Detective) dated February 21, 2002 Bates No. P0052-P0053 | | |
| P4 | Transfer Request Special Operations Division dated May 10, 2004 Bates No. P0032 | | |
| P5 | Transfer Request Criminal Investigation Division dated May 10, 2004 Bates No. P0033 | | |
| P6 | Transfer Request Evidence Storage Officer dated May 15, 2005 Bates No. P0025 | | |
| P7 | Transfer Request Forensics Services Unit dated July 4, 2005 | | |
| P8 | Transfer Request School Resource Officer dated August 21, 2005 Bates No. P0023 | | |
| P9 | Transfer Request Evidence Detection Officer dated September 19, 2005 | | |
| P10 | Transfer Request Sector Specialist dated December 1, 2005 | | |
| P11 | Transfer Request Traffic Investigator dated 03/10/07 | | |
| P12 | Performance Evaluation for 2000 Bates No. P0044-P0047 Bates No. P0034-P0037 | | |

**Schedule (2)(c)(1)**
**Plaintiff's Exhibits**

| | |
|---|---|
| P13 | Performance Evaluation for 2001 Bates No. P0034-P0037 |
| P14 | Performance Evaluation for 2003 Bates No. P0066-P0069 |
| P15 | Wilmington Police Department Penalty Log for Babby Bates No. 005052 |
| P16 | Letter to Cpl. Babby from Chief Szczerba dated September 17, 2004 Bates No. P0001 |
| P17 | Harassment Free Work Environment Directive 6.78 dated December 7, 2004 Bates No. P0027-P0028, P0072 |
| P18 | Memorandum from Sgt. Michael J. Morrissey to Michael J. Szczerba re: Kiwanis Award Nomination (William Babby) dated September 4, 2002 Bates No. P0064-P0065 |
| P19 | Commendations for Cpl. Babby Bates. No. 000253 and 000252 |
| P20 | Certificates and Letters dated May 16, 1989, May 25, 1990, May 27, 1993, June 23, 1995, September 20, 1998, February 3, 1999, March 19, 1999, April 14, 2000, May 9, 2001, July 7, 2001, undated, May 10, 2002 and November 21, 2002 |
| P21 | Education, Training, and Certifications dated June 8, 1987, January 1, 1989, February 8, 1989, November 23, 1992, April 1994, June 4-10, 1994, October 27, 1994, May – October 1995, November 21-22, 1995, 1996, July 25, 1997, October 28, 1997, November |

**Schedule (2)(c)(1)**
**Plaintiff's Exhibits**

| | | |
|---|---|---|
| P22 | 1995 – March 1998, January 6, 1999, September 1998 – March 1999, April 26-30, 1999, September 9-10, 1999, December 15, 1999, September 27,- 29, 2000, March 1-2, 2000, March 9, 2000, January 22-23, 2001, January 29-30, 2001, March 1-2, 2001, March 20, 2001, June 2001, February 12, 2002, September 16-20, 2002, September 2, 2003, undated, August 27, 2005 | |
| P23 | Article 17, Classification and Salaries | |
| P24 | Cpl. Babby's Federal Tax Returns for 2002-2007 | |
| | Directive 6.49 (Career Development Program) | |

## Schedule (2)(e)(1)
### Defendant's Exhibits

| Defendant's Exhibit No. | Description | Plaintiff's Basis for Objection | Defendant's Response to Objection |
|---|---|---|---|
| DX1 | Plaintiff's discipline records | | |
| DX1A | Wilmington Police Department – I.A.D. Penalty Log | | |
| DX1B | Supporting documents of I.A.D. Penalty Log, including but not limited to, Department Information, Memoranda and letters relating to the discipline of Plaintiff | Hearsay | Business Records. |
| DX1C | Article 7 of the City of Police & FOP Lodge #1 Rank and File Bargaining Agreement | | |
| DX1D | Directive 6.8 (Procedures for Responding to Emergency Calls, Making Vehicle Stops, and Conducting Pursuits) | | |
| DX1E | Directive 6.14 (Procedures for Appearing in Court and Felony Intake | | |
| DX1F | Directive 6.33 (Traffic Accident Investigations) | | |
| DX1G | Directive 6.48 (Annual Firearms Training and Qualifications) | | |
| DX1H | Directive 7.1 (Conduct Unbecoming an Officer) | | |
| DX1I | Directive 7.2 (General Requirements) | | |
| DX1J | Directive 7.6 (Neglect of Duty) | | |
| DX1K | Directive 7.8 (Investigation Regulations) | | |
| DX1L | Directive 7.13 (Uniform, Equipment, and Dress Code) | | |
| DX1M | Directive 8.2 (Classification of Punishment) | | |
| DX1N | Directive 8.3 (Elevation of an Offense) | | |
| DX1O | Directive 8.8 (Appeal Board) | | |
| DX1P | Directive 7.8 (Investigation Regulations) | | |
| DX2 | Transfer Documents | | |

Schedule (2)(c)(1)
Defendant's Exhibits

| Defendant's Exhibit No. | Description | Plaintiff's Basis for Objection | Defendant's Response to Objection |
|---|---|---|---|
| DX2A | Chart of transfers requested by Plaintiff | | |
| DX2B | Plaintiff's transfer requests submitted from 1990 to 2001 | | |
| DX2C | Criminal Investigative Division position (2002) | | |
| DX2Ci | Information Bulletin from Chief Szczerba to All Personnel regarding Transfer Requests, dated January 22, 2002 | | |
| DX2Cii | Plaintiff's transfer request submitted February 21, 2002 for Criminal Investigative Division | | |
| DX2Ciii | Information Bulletin from Chief Szczerba to All Personnel regarding Transfer & Assignments, dated February 20, 2003 | | |
| DX2D | Criminal Investigative Division position (2004) | | |
| DX2Di | Plaintiff's transfer request submitted May 10, 2004 for Criminal Investigation Division | | |
| DX2Dii | Memorandum from Human Resources listing officers requesting transfer, dated June 1, 2004 | | |
| DX2E | Special Operations Division position (2004) | | |
| DX2Ei | Plaintiff's transfer request submitted May 10, 2004 for Special Operations Division | | |
| DX2Eii | Memorandum from Human Resources listing officers requesting transfer, dated June 1, 2004 | | |
| DX2F | Support Services as Evidence Storage Officer / Evidence Room Clerk position (2005) | | |

2

Schedule (2)(e)(1)
Defendant's Exhibits

| Defendant's Exhibit No. | Description | Plaintiff's Basis for Objection | Defendant's Response to Objection |
|---|---|---|---|
| DX2Fi | Informational Bulletin from Chief Szczerba to All Personnel regarding Transfer Requests, dated May 13, 2005 | | |
| DX2Fii | Plaintiff's transfer request submitted May 15, 2005 for Evidence Storage Officer | | |
| DX2Fiii | Memorandum from Human Resources listing officers requesting transfer, dated May 26, 2005 | | |
| DX2G | Forensic Services Unit position (2005) | | |
| DX2Gi | Information Bulletin from Chief Szczerba to All Personnel regarding Transfer Requests, dated April 15, 2005 and April 29, 2005 | | |
| DX2Gii | Plaintiff's transfer request submitted July 4, 2005 for Forensic Services Unit | | |
| DX2Giii | Memorandum from Human Resources listing officers requesting transfer, dated July 15, 2005 | | |
| DX2Giv | Informational Bulletin from Chief Szczerba to All Personnel regarding Transfers and Assignments, dated August 4, 2005 | | |
| DX2H | School Resource Officer position (2005) | | |
| DX2Hi | Informational Bulletin from Chief Szczerba to All Personnel regarding Transfer Requests, dated August 10, 2005 | | |
| DX2Hii | Plaintiff's transfer request submitted August 21, 2005 for School Resources Officer | | |
| DX2Hiii | Memorandum from Human Resources listing officers requesting transfer, dated September 8, 2005 | | |

3

Schedule (2)(e)(1)
Defendant's Exhibits

| Defendant's Exhibit No. | Description | Plaintiff's Basis for Objection | Defendant's Response to Objection |
|---|---|---|---|
| DX2I | Evidence Detection Officer position (2005) | | |
| DX2ii | Informational Bulletin from Chief Szczerba to All Personnel regarding Transfer Requests, dated September 13, 2005 | | |
| DX3A | Evaluation Period January 2000 through January 2001 | | |
| DX3B | Evaluation Period January 2001 through January 2002 | | |
| DX3C | Evaluation Period January 2003 through January 2004 | | |
| DX3D | Information Bulletin from Chief Szczerba dated March 7, 2003 | | |
| DX4 | Promotions Lists | Relevance | Count II of Complaint alleges Plaintiff was not promoted due to retaliation. |
| DX4A | Promotion list for 2000 through 2002 | | |
| DX4B | Promotion list for 2002 through 2004 | | |
| DX4C | Promotion list for 2004 through 2006 | | |
| DX4D | Promotion list for 2004 through 2006 | | |
| DX5 | Seniority List dated March 22, 2007 | | |
| DX6 | Directive 6.49 (Career Development Program | | |
| DX7 | Directive 1.0 (The Organization) | | |
| DX8 | Statistics with respect to overtime hours worked by Plaintiff and other officers similarly situation | Not produced in the ordinary course of business. | Business Records. |
| DX8A | Plaintiff's sick or leave time | | |
| | Chart summarizing sick/leave time used by Plaintiff | | |

4

Schedule (2)(e)(1)
Defendant's Exhibits

| Defendant's Exhibit No. | Description | Plaintiff's Basis for Objection | Defendant's Response to Objection |
|---|---|---|---|
| DX8B | Memo from Chief Szczerba to All Division Commanders and Lieutenants regarding Sick and Vacation Totals, dated February 15, 2007 | | |

# OBERLY, JENNINGS & RHODUNDA, P.A.

### 1220 Market Street - Suite 710
### P. O. Box 2054
### Wilmington, Delaware 19899

Charles M. Oberly, III
Kathleen M. Jennings
William J. Rhodunda, Jr.
  ------------
Karen V. Sullivan
Chandra J. Rudloff

(302) 576-2000
Fax (302) 576-2004
E.I.No. 51-0364261
Writer's e-mail crudloff@ojlaw.com

March 6, 2008

**Via CM/ECF & Hand Delivery**
The Honorable Joseph J. Farnan, Jr.
U.S. District Court
844 King Street
Wilmington, DE 19801

> Re:  **William P. Babby v. City of Wilmington Department of Police
> C.A. No. 06-552 JJF**

Dear Judge Farnan:

As Your Honor is aware, the final pretrial conference in the above-referenced matter is scheduled for Monday, March 10, 2008 at 10:00 a.m.  Enclosed please find a courtesy copy of the Amended Proposed Final Pretrial Order.

As always, counsel is available at the convenience of the Court to discuss this matter.

> **Respectfully submitted,**
>
> **/s/ Chandra J. Rudloff**
>
> **CHANDRA J. RUDLOFF (No. 4907)**

/cjr
Enclosure
cc:    Mr. Jeffrey K. Martin, Esquire (via CM/ECF & email)
         Mr. Gary W. Lipkin, Esquire (via CM/ECF)