IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM P. BABBY, III, | |
| v. | C.A. NO. 06-552 JJF |
| CITY OF WILMINGTON DEPARTMENT OF POLICE, | JURY TRIAL DEMANDED |
| Defendant. | |

**DEFENDANT'S MEMORANDUM IN LAW
REGARDING ANTICIPATED EVIDENTIARY OBJECTIONS**

Defendant City of Wilmington Department of Police (the "City") submits this memorandum of law to exclude certain testimony and to allow certain other testimony at the trial scheduled to begin on March 24, 2008 for the reasons stated her.[1] Plaintiff, William P. Babby, III, asserts a claim against the City for intentional retaliation. Plaintiff asserts that as a result of his involvement in an internal complaint against then Sgt. William Wells (now Lt. Wells) in 2001, he was moved from F-Platoon to E-Platoon, and was thereafter not transferred to a position of his liking. Plaintiff further alleges that he received the "cold shoulder treatment" and was, therefore, exposed to a hostile working environment. In addition, Plaintiff asserts that the City failed to promote him. Lastly, Plaintiff asserts that he was discriminated against because of his race. The City denies each of these allegations. The following evidence should be excluded or permitted for the reasons stated:

**I.    Exclusion of Evidence Relating to Transfers Prior to May 29, 2004**

Plaintiff filed a complaint of retaliation with the EEOC on March 25, 2005.[2] Title VII requires a charge with the EEOC to be filed within 300 days of any retaliatory or discriminatory

---

[1] Pursuant to D.Del. LR 7.1.2(a), the City waives its right to file an opening brief.
[2] The EEOC complaint has multiple dates throughout. Counsel used the oldest date, March 25, 2005, as the date of filing to ensure it encompasses the appropriate timeframe.

action. 42 U.S.C.A. § 2000e-5(e)(1). Thus, any retaliatory action alleged prior to May 29, 2004 (300 days prior to the date Plaintiff filed the EEOC charge) cannot be part of this cause of action since it is time-barred. As a result, any evidence relating to transfers prior to May 29, 2004 is irrelevant, unfairly prejudicial to the City and likely to confuse the issues for the jury with respect to the non time-barred evidence. Any evidence relating to actual transfers or transfer requests prior to May 29, 2004 must be barred pursuant to Rules 402 and 403 of the Federal Rules of Evidence.

A failure to promote claim (synonymous with a transfer claim) and a discrimination claim are two distinct claims. *See Rush v. Scott Specialty Gases, Inc*., 113 F.3d 476, 485 (3d. Cir. 1997). A failure to promote claim "cannot be saved by any of the alleged discrimination or harassment occurring within the limitations period." *Id*. Only if the plaintiff can establish a continuing pattern of discrimination can incidents prior to 300 days be considered. *Id*. at 481. The Third Circuit provided a framework for assessing whether a plaintiff has an ongoing claim:

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring … or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is the degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of a duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Id*. at 482.

"Not being promoted is like being fired, demoted, or receiving a retaliatory job transfer because they are all single events, not continuing acts, and the retaliatory character of those events should be apparent at the time of the decision." *Raymond v. City of Chicago*, 183 F. Supp. 2d 1060, 1068 (N.D. Ill. 2002), citing *Place v. Abbott Labs*., 215 F.3d 803, 808 (7th Cir.

2000). The continuous violation doctrine does not apply "where the plaintiff knew or 'with exercise of reasonable diligence would have known' about the discriminatory nature of the employer's actions." *Id*.

In this case, Plaintiff asserts a continuing violation in the nature of a hostile work environment because he was a witness to the internal complaint against Lt. Wells in 2001. But, for several reasons, this allegation does not save his time-barred charge against the City for failing to promote or transfer Plaintiff prior to May 29, 2004. First, generally, each transfer request was to a different department involving different captains, and as a result, the transfer requests were not of the same subject matter. Second, the transfer denials were not frequent and continuous. For instance, Plaintiff sought a transfer in February 2002 but did not seek transfer again for two years in May 2004.

Third, each transfer or denial of transfer was an isolated incident which had a "degree of permanence." As a result, Plaintiff was on notice of his duty to assert his rights. Particularly, Plaintiff was on notice of any potentially retaliatory actions with respect to the transfer of Plaintiff from F-Platoon to E-Platoon in November 2001. This is clear from the Complaint wherein the Plaintiff states in ¶38 "In [the meeting with the Director of Public Safety], Plaintiff informed the Director that he had been retaliated against for making a complaint against a supervisor and was demoted (transferred back to patrol), despite the fact that he was the senior officer, and most qualified officer, in his previous position."

Pursuant to *Rush*, Plaintiff's current allegation of retaliation for failure to promote can only encompass those transfers he sought after May 29, 2004. Evidence of the time-barred claims will unfairly prejudice the City and will confuse the issues for the jury. Further, because Plaintiff cannot receive damages for time-barred claims, any evidence relating to those transfers

is irrelevant to the facts and issues which must be decided by the jury, and would ultimately be a waste of the Court's time. Accordingly, any evidence or testimony relating to any transfers or transfer requests prior to May 24, 2004 must be excluded pursuant to Rules 402 and 403.

## II. Exclusion of Evidence Relating to Transfer Request Submitted in 2007.

It is the City's belief that Plaintiff will submit evidence with respect to his request to be transferred to a Traffic Investigator in March 2007. In fact, on March 10, 2008, former Captain Michael Maggitti was deposed during which time he discussed the transfer request and which officer he chose for that position. Any testimony relating to Plaintiff's transfer request for Traffic Investigator must be excluded pursuant to Rules 402 and 403 as irrelevant to any material issue to be determined by the jury, and as evidence which will confuse the issues before the jury.

As is required under Title VII, Plaintiff first filed a complaint with the EEOC on March 25, 2005, and received the right to file a civil law suit on June 5, 2006. Thereafter, Plaintiff commenced this action. The courts have been clear that "a plaintiff must file charges with the EEOC and receive a right to sue letter before filing a complaint in federal court." *King v. M.R. Brown, Inc.*, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1977). Once a civil lawsuit is filed, claims that occurred after the EEOC complaint has been investigated must "describe the same conduct and implicate the same individuals" for the court to allow the after-EEOC-action to be included in the civil law suit. See *Raymond v. City of Chicago*, 183 F. Supp. 2d 1060, 1069 (N.D. Illl. 2002), quoting *Cheek v. W. & S. Life Ins., Co*., 31 F.3d 497, 501 (7th Cir. 1994); *see also King*, 911 F. Supp. at 164 ("In order to ensure that the EEOC has the first opportunity to address the allegations of discrimination, a district court may adjudicate only those claims that fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'").

4

As previously addressed, a continuous cause of action does not include specific and discrete instances of discrimination or harassment, such as failure to promote or transfer. Because Plaintiff has not provided the EEOC an opportunity to investigate the alleged retaliatory transfer denial of Plaintiff to Traffic Investigator, it is not a claim of retaliation before this Court. The jury need only to determine the intent of those captains in charge of any transfer requests submitted by Plaintiff between May 29, 2004 through June 5, 2006. Any testimony of the 2007 transfer request would be a waste of the Court's time and would likely confuse the jury with respect to the actual cause of action before the jury. The 2007 transfer request is therefore irrelevant to the issue before the jury, and any evidence or reference thereto must be excluded pursuant to Rules 402 and 403.

### III. Exclusion of Certain Testimony Relating to Sergeant Thomas Kane and Sergeant Ronald Fiorvanti

Plaintiff has indicated on the Amended Pretrial Stipulation that he intends to produce Sgt. Thomas Kane and Sgt. Ronald Fiorvanti as fact witnesses at trial. However, neither Sgt. Kane nor Sgt. Fiorvanti can provide testimony with respect to any decision relating to Plaintiff's transfers or transfer requests. Upon information and belief, the City expects Plaintiff to call both Sgt. Kane and Sgt. Fiorvanti to testify with respect to their own transfers from F-Platoon in 2003, believed to be two years after Plaintiff's transfer in November 2001. This testimony must be excluded pursuant to Rules 401 and 402 as collateral to the issue before the jury. Its introduction will merely result in an unnecessary mini-trial regarding why Sergeants Kane and Fiorvanti were transferred from F-Platoon years after the Plaintiff was transferred. In addition, pursuant to Fed. R. Evid. 404(b), the anticipated testimony from and about Sgt. Kane and Sgt. Fiorvanti's transfers from F-Platoon is impermissible character evidence and must be excluded.

In or about April 2001, Plaintiff was assigned to Special Operations in the Crime Free Housing Unit where he worked under then Sgt. William Wells and then Lt. Marlyn Dietz. In or around June 2001, Plaintiff was detailed to F-Platoon during which time he worked under Sgt. Corey Staats and Lt. Mitchell Rock. Typically, each platoon has three sergeants. Both Sgt. Fiorvanti and Sgt. Kane were sergeants in F-Platoon. At no point was Plaintiff working under Sgt. Kane or Sgt. Fiorvanti. Thus, neither Sgt. Kane nor Sgt. Fiorvanti has any information with respect to Plaintiff's performance during his detail to F-Platoon. Plaintiff was transferred from F-Platoon in November 2001.

In or around June 2003, Lt. Rock went to the FBI Academy for three months. While Lt. Rock was at the Academy, Sgt. Staats was acting Lieutenant of F-Platoon. During the same time, certain officers were absent from the police department due to military obligations. This caused the platoons to rotate from three sergeants to two sergeants. When Lt. Rock returned from the Academy, there were four sergeants in F-Platoon: Sgt. Staats, Sgt. Ciotti, Sgt. Kane and Sgt. Fiorvanti. Lt. Rock had to decide among the four which two sergeants would remain in F-Platoon. Sgt. Kane and Sgt. Fiorvanti were transferred.

It is the City's belief that Sgt. Kane will testify that Sgt. Kane was transferred from F-Platoon in late 2003 because Lt. Rock was unhappy with a decision Sgt. Kane made while Lt. Rock was away at the FBI Academy. More specifically, it is the City's belief that Sgt. Kane will state that Officer Donald Dempsey, who was an officer on F-Platoon, was a good friend of Lt. Rock. While Lt. Rock was at the FBI Academy, Officer Dempsey was transferred from F-Platoon for poor performance. It is the City's belief that Sgt. Kane will testify that Lt. Rock was upset that Officer Dempsey was transferred, and as a result Lt. Rock transferred Sgt. Kane from F-Platoon in retaliation for the transfer of Officer Dempsey. The City, on the other hand, will

6

present evidence to contradict Sgt. Kane's testimony and to support Lt. Rock's transfer decision as non-retaliatory. However, the testimony is impermissible character evidence.

Rule 404(b) states, in pertinent part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). The Third Circuit has articulated four points regarding the admissibility of 404(b) evidence:

> (1) the evidence must have a proper purpose; (2) it must be relevant under Rule 401 and 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it was admitted.

*See Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 520 (3d Cir. 2003) (citations omitted). The *Ansell* Court went on to state:

> We have held that "a court must be able to articulate a way in which the tendered evidence logically tends to establish or refute a material fact in issue, and that chain of logic must include no link involving an inference that a bad person is disposed to do bad acts."

*Id.* at 520-521. (citations omitted). The testimony relating to Sgt. Kane's transfer from F-Platoon and the testimony relating to Sgt. Fiorvanti's transfer from F-Platoon fails all three enumerated factors and does not relate to any material fact in issue in this case.

First, the testimony is being offered for an improper purpose. With respect to the purpose of Sgt. Kane and Sgt. Fiorvanti's testimony, the City concedes that an employer's conduct toward other employees is relevant and admissible if it is offered by the Plaintiff for the purpose of showing that the justification offered for the alleged retaliatory act is a pretext or if it is offered to show a person's intent or motive for an alleged retaliatory act. *Id.*, see also *Bell v. Gonzales*, 2005 WL 3555490 (D.D.C.). In this instance, however, the testimony is being offered for the purpose of showing that Lt. Rock had Sgt. Kane transferred from F-Platoon as

punishment, therefore Lt. Rock is the type of person who transfers people from F-Platoon for improper reasons. This testimony regarding an "other act" of Lt. Rock must be excluded under 404(b). See *Kanida v. Gulf Coast Medical Personnel LP*, 363 F.3d 568, 581-1 (5th Cir. 2004) (upholding exclusion of employee's testimony that her supervisor threatened her in an incident similar to plaintiffs' but unrelated and reasoning that she would not be testifying regarding any "retaliatory animus" the supervisor could have had against plaintiff so her testimony was impermissible under 404(b)).

Second, the testimony regarding Sergeants Kane and Fiorvanti is irrelevant under Rule 401 and 402. In retaliation cases, "other acts" must be similar to the events at issue to be relevant. *See Bell*, 2005 WL 3555490, at *2, see also *Kanida*, 363 F.3d at 581-2; *Welzel v. Bernstein*, 2005 WL 1983798 (D.D.C.). In this instance, neither Sgt. Fiorvanti nor Sgt. Kane, both Caucasian males, participated as witnesses or complainants in the disciplinary process relating to the complaint filed by Officer Izquierdo in 2001 against Lt. Wells. Further, pursuant to the City's knowledge and belief, neither Sgt. Kane nor Sgt. Fiorvanti has filed or participated in any other complaint against Lt. Wells or Lt. Rock. Neither Sgt. Fiorvanti nor Sgt. Kane has participated in any protected First Amendment action, nor are they part of a special class of protected individuals. Lastly, both sergeants were transferred years after Plaintiff's transfer from F-Platoon. On the other hand, Plaintiff, a Hispanic male and a corporal within the Department, participated in the complaint process against Lt. Wells, which is the underlying event in Plaintiff's retaliation claim. As a result, it is clear that Sgt. Kane and Sgt. Fiorvanti were not similarly situated to Plaintiff at the time the decision was made by Lt. Rock to transfer them from F-Platoon in 2003. Because Lt. Rock could not have the same motive or intent, retaliatory or otherwise, when Plaintiff was transferred years prior, the evidence is irrelevant.

8

Moreover, even if it were relevant, the testimony relating to Sgt. Kane's transfer must be excluded under Rule 403 because the probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issue. The accusation by Plaintiff is that Lt. Rock transferred Plaintiff from F-Platoon to E-Platoon because Plaintiff participated in a complaint filed against Lt. Wells. It is the City's belief that Sgt. Kane's testimony will relate to Lt. Rock transferring Sgt. Kane for retaliatory purposes that are not protected under the First Amendment. As indicated above, Sgt. Kane's testimony would be offered to show that Lt. Rock transferred Sgt. Kane for unfair reasons; therefore he must have transferred Plaintiff for unfair reasons. This testimony is unfairly prejudicial to the City. And, in fact, this testimony would confuse the issues for the jury since Lt. Rock has not been accused of transferring Sgt. Kane due to First Amendment retaliation. As a result, the testimony of Sgt. Kane, and any testimony by other witnesses, relating to Sgt. Kane's transfer from F-Platoon is impermissible character evidence under Rule 404(b) and must be excluded.

There is no dispute in this case that Plaintiff was transferred from F-Platoon in 2001. The only question which remains for the jury with respect to Plaintiff's transfer from F-Platoon is the intent or motive of Lt. Rock when Plaintiff was transferred. Neither Sgt. Fiorvanti nor Sgt. Kane can provide testimony relating to that issue, and their respective transfers years later will not assist the jury in that determination. Their testimony relating to their transfer would be impermissible character evidence pursuant to Rule 404(b). And, if the testimony is offered to show Lt. Rock's intent when he transferred Sgt. Fiorvanti or Sgt. Kane, Lt. Rock's decision-making process, his intent and/or motive with respect to the decision to transfer the sergeants is irrelevant to the Plaintiff's case for several reasons. Not only was the Plaintiff transferred two years prior to Sgt. Fiorvanti and Sgt. Kane, but Plaintiff is not a sergeant and neither Sgt.

Fiorvanti nor Sgt. Kane was involved in a complaint against Sgt. Wells. And while the City is prepared to present evidence regarding Lt. Rock's non-retaliatory decisions, these two decisions are collateral to Plaintiff's transfer and irrelevant to this case.

The testimony relating to Sergeants Fiorvanti and Kane's transfer from F-Platoon does not logically relate to any material fact in issue in this case as required by the courts. *See Ansell*, 347 F.3d 515, 520. Because the testimony is being offered as impermissible character evidence pursuant to the test articulated in *Ansell* with respect to Rule 404(b), it must be excluded.

If the Court is inclined to allow the testimony relating to Sgt. Kane pt Sgt. Fiorvanti's transfer, the City hereby requests a limiting jury instruction.

### IV. Exclusion of Certain Testimony Relating to Complaint filed by Officer Izquierdo against Lt. Wells

Plaintiff has asserted a retaliation claim. The underlying complaint, to which Plaintiff was a witness, was against Lt. Wells. The complaint was investigated by the City and Lt. Wells was ordered to participate in Department Level Counseling. Plaintiff has asserted that the City took too long to investigate the complaint and that the conclusion the City reached was too lenient. The nature of the complaint against Lt. Wells, and most particularly how the complaint was handled by the City, is irrelevant to this case and should be excluded pursuant to Rules 401 and 402. Further, the nature of the complaint and how it was handled by the City is not probative to the issue of whether Plaintiff was retaliated against, and is unfairly prejudicial to the City. As a result, the underlying complaint and how the City handled the complaint against Lt. Wells must be excluded pursuant to Rule 403.

In assessing whether a plaintiff was in fact retaliated against, the Supreme Court of the United States has concluded that the context of a retaliation claim is relevant, but what facts are relevant must be determined on a case-by-case basis. *Burlington Northern & Santa Fe Railway*

*Co. v. White*, 126 S. Ct. 2405, 2415-6 (2006) ("[A] legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an 'act that would be immaterial in some situations is material in others.'") (citations omitted). The Court specifically noted:

> [T]his standard *does not* require a reviewing court or jury to consider "the nature of the discrimination that led to the filing of the charge." Rather, the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint. By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination.

*Id.* at 2416. (Internal citations omitted) (emphasis in original). See also, *Coles v. Perry*, 217 F.R.D. 1, 10 (D.D.C. 2003) (holding that evidence relating to the employer's reaction to a discrimination claim is not relevant or probative of the employer's response to a retaliation claim).

In this case, there is no dispute that a complaint was filed against Lt. Wells, the City investigated the complaint, and discipline was imposed. However, it is irrelevant how the underlying complaint against Lt. Wells was handled by the City because Plaintiff is asserting a retaliation claim and has not asserted any injury from the handling of the underlying complaint. Any testimony relating to how the City handled the complaint will be collateral to the issue of whether Plaintiff was retaliated against when he was denied promotion or transfer, and will cause unnecessary mini-trials within the trial. Not only will this result in a waste of time, but it will confuse the issues for the jury. Allowing the collateral evidence relating to the underlying complaint will likely cause the jury to believe this case is related to how the City handled the original complaint filed by Officer Izquierdo, rather than whether Plaintiff was retaliated against by the City.

As such, any testimony or evidence relating to the underlying complaint against Lt. Wells, the investigation thereof and any discipline imposed should be inadmissible pursuant to Rules 402 and 403.

### V. Allowance of Testimony Relating to the Decision-Making Process of the Captains of each Unit Plaintiff Sought to be Transferred.

Plaintiff has asserted claims of retaliation based on the failure of Plaintiff to be promoted and/or transferred to a different unit. The City is offering non-retaliatory reasons for the failure to transfer Plaintiff. In doing so, the City will present the commanding captains of each of the units to which Plaintiff applied for transfer. The captains will testify with respect to their methods used in determining which candidates to transfer. The methods employed by some of the captains involve input from lieutenants and sergeants of the unit in assessing the applicants. Some of the captains request the lieutenants and sergeants to choose their top choices, and from those names the captain makes a final decision. Plaintiff has objected to this testimony as hearsay.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted*." Fed. R. Evid. 801(c). (emphasis added). In this instance, the statements from the lieutenants and/or sergeants are not being offered for the truth of the matter asserted, but are being offered to show the statement that was made had an effect on the decision-making process of the captains. In other words, the statements are being offered to show a neutral, non-retaliatory reason a transfer.

For instance, former Captain Michael Maggitti was deposed for this trial on March 10, 2008.[3] During his deposition, counsel for the City asked Maggitti about his method in choosing

---

[3] Counsel notes that Maggitti's testimony with respect to the 2007 transfer request may not be heard by the jury since it is the City's contention that his testimony regarding the 2007 transfer is irrelevant. However, this issue will continue to appear with respect to other relevant transfer requests.

12

an officer to be transferred to his unit. He explained that he requests three names each from his lieutenant and sergeant. In the instance relating to Plaintiff's attempted transfer to Traffic Investigator, Maggitti testified that both his lieutenant and sergeant selected Cpl. Pfeiffer as their number one choice. Plaintiff objected to this statement as hearsay. Similarly, Captain James Jubb was deposed for trial on March 19, 2008. Within his deposition, Capt. Jubb stated that his typical method of reviewing the officers requesting transfers involves discussions with his lieutenant and sergeants.

  Plaintiff has asserted that he was not transferred or promoted for retaliatory reasons. As a result of this assertion, Plaintiff has placed the motive, intent and state of mind of each captain making a transfer decision into question. *See United States v. Khalil*, 279 F.3d 358 (6th Cir. 2002) (allowing an out-of-court statement made to an agent to show that the agent had a good reason for his actions because the defendant "opened the door" by placing the agent's mind directly at issue); *see also Brown v. D.O.C. PA*, 2007 WL 2022071 (W.D.Pa.) (admitting statements to show the state of mind of the hearer of a statement, and the effect those statements had on the hearer.). The methodology employed by Maggitti, Capt. Jubb and any other captains, is relevant to show a non-retaliatory purpose for not choosing Plaintiff for the positions he requested. The statements are not offered to prove the truth of the matter asserted; that is, that the number one, two or three choice was in fact the best, second best or third best candidate. They are offered to establish that the captains used a neutral, non-retaliatory methodology in determining which applicant to choose for the position. In other words, the statements are being offered for the effect they had on each captain. The motive or intent of the captain is what is at issue in this case, and the captain's intent or motive is partly derived from the fact that the

sergeants or lieutenants identified their preferences. The statements are not hearsay pursuant to Rule 801 and should be admitted accordingly.

Dated: March 20, 2008    **OBERLY, JENNINGS & RHODUNDA, P.A.**

   /s/ Kathleen M. Jennings
Kathleen M. Jennings (No. 913)
Chandra J. Rudloff (No. 4907)
1220 Market Street, Suite 710
P.O. Box 2054
Wilmington, DE 19899
(302) 576-2000

- and -

Gary W. Lipkin, Esquire
Assistant City Solicitor
Louis L. Redding City / County Building
800 N. French St., 9th Floor
Wilmington, DE 19801
Telephone (302) 576-2175
*Attorneys for Defendant, City of Wilmington Department of Police*